UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TOWN OF ISLIP,

|  |  |
|---|---|
| Plaintiff, | **Index No.:** 16-CV-2156 |
| -against- | <u>**COMPLAINT**</u> |

THOMAS DATRE JR., THOMAS DATRE SR., CLARA
DATRE, RICHARD DATRE JR., CHRISTOPHER GRABE,
GIA GATIEN, RONALD CIANCIULLI, JOSEPH
MONTUORI, BRETT ROBINSON, IGLESIA DE
JESUCRISTO PALABRA MIEL, MARCO LOPEZ, NANCY
ALVAREZ, WILLIAM CARILLO, RAUL PACHECHO,
WALTER CASASOLA, 5 BROTHERS FARMING CORP.,
DFF FARM CORP., DATRE TRUCKING & FARMING
INC., DATRE AUTO & EQUIPMENT SALES INC.,
DAYTREE AT CORTLAND SQUARE INC., DAYTREE
CUSTOM BUILDERS INC., DATRE FAMILY FARMS
INC., DATRE FARMS REALTY CO. INC., ISLANDIA
RECYCLING INC., C.J. SITE DEVELOPMENT INC.,
ATLAS HOME IMPROVEMENT CORP. OF LONG
ISLAND d/b/a ATLAS ASPHALT, IEV TRUCKING CORP,
COD SERVICES CORP., and John Doe No. 1 through John
Doe No 10.,

Defendants.

The TOWN OF ISLIP, by and through its attorneys, Germano & Cahill, P.C., for its

Complaint against Thomas Datre Jr., Thomas Datre Sr., Clara Datre, Richard Datre Jr., Christopher

Grabe, Gia Gatien, Ronald Cianciulli, Joseph Montuori, Brett Robinson, Iglesia De Jesucristo

Palabra Miel, Marco Lopez, Nancy Alvarez, William Carrillo, Raul Pachecho, Walter Casasola, 5

Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc., Datre Auto &

Equipment Sales Inc., Daytree At Cortland Square Inc., Daytree Custom Builders Inc., Datre

Family Farms Inc., Datre Farms Realty Co. Inc., Islandia Recycling Inc., C.J. Site Development Inc., Atlas Home Improvement Corp. of Long Island (d/b/a Atlas Asphalt), IEV Trucking Corp., and COD Services Corp., allege on information and belief as follows:

## I.

## <u>PRELIMINARY STATEMENT</u>

1.      This is a civil action for the recovery of money damages, fees and costs, and special damages pursuant to the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962, 1964, et al.), the Comprehensive Environmental Response, Compensation and Recovery Act (42 U.S.C. § 9601, et seq.) and the laws of the State of New York and common law.  Plaintiff seeks to recover costs that it has incurred and will incur to remediate property in response to the unlawful dumping of construction and demolition debris (C&D) and fill contaminated with hazardous substances, as defined in 42 U.S.C. § 9601(14), in Roberto Clemente Park, located in the Town of Islip, County of Suffolk, State of New York (hereinafter the "Park" or the "Site").  Plaintiff also seeks a judgment declaring each defendant's liability for future response costs regarding the Park, pursuant to 28 USC § 2201 and § 3001 of the Civil Practice Laws and Rules of the State of New York.

2.      The within action is brought by the Town of Islip pursuant to New York Town Law § 65, authorizing the Town Board for the Town of Islip to bring an action or special proceeding for the Town's benefit or protection of the Town, to enforce any liability created, or to recover damages for any injury to property or rights for which defendants are liable.

3.      Roberto Clemente Park is located at 400 Broadway Avenue, Brentwood, New York, and is owned by the Town of Islip.  Commencing in or about May 2013, and continuing through on or about May 2014, the named defendants engaged in a course of conduct to obtain, transport, deliver and unlawfully dispose of approximately 38,000 tons of construction and

demolition (C&D) debris, contaminated fill and other solid wastes at Roberto Clemente Park.  The course of conduct engaged in by defendants gives rise to liability under the various counts set forth below.  Each of the named defendants played a role in the dumping activity, through gaining or granting access to the Park, conducting and facilitating the dumping activity, obtaining and transporting the materials, concealing the nature of the activity from Town officers and supplying the materials disposed of at the Park.  As a result of the defendants' course of conduct, the plaintiff Town incurred over $4 million in costs to remove the material and will incur additional expense to restore and repair the damage done to the Park.  As a result of defendants' activity, the Park has been closed and its use denied to the public for a period of more than two (2) years.

4.      The Town now seeks to recover its costs to remove contaminated materials from the Park, remediate environmental injuries caused by defendants, repair damage to the Park caused by defendants and to restore the Park to its previous condition pursuant to the statutory and common law claims described below.

## II.
## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b).

6.      Plaintiff further invokes supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a) to hear and decide any and all related claims arising under State law.

7.      Venue in the Eastern District of New York is proper because the real property is located within this district and the acts alleged occurred within this district.

8.      The claims for violations of 18 U.S.C. §§ 1961-1965 arose within this district, in that, among other things, defendants conspired to act and acted in this district, causing injury to plaintiff.

9.      A copy of this complaint has been provided to the Attorney General of the United States and to the Administrator of the United States Environmental Protection Agency (EPA), pursuant to 42 U.S.C. § 9613(1).

## III.

## PARTIES

10.      Plaintiff Town of Islip was and is a municipal corporation duly organized under the laws of the State of New York.  The Town of Islip owns the subject parklands known as Roberto Clemente Park, located at 400 Broadway Avenue, Brentwood, NY 11717.

11.      Defendant Thomas Datre Jr. was and is, upon information and belief, an officer and owner of 5 Brothers Farming Corp., Datre Auto & Equipment Sales Inc., Datre Trucking & Farming Inc. and DFF Farm Corp.  He resides, upon information and belief, at 168 Jefferson Avenue, Saint James, NY 11780.

12.      Defendant Thomas Datre Sr. was and is, upon information and belief, an officer and owner of 5 Brothers Farming Corp., Datre Farms Realty Co. Inc., Daytree Custom Builders Inc., DFF Farm Corp. and Daytree At Cortland Square Inc.  He resides, upon information and belief, at 3 Gianna Court, Hauppauge, NY 11788.

13.      Defendant Clara Datre was and is, upon information and belief, an officer and owner of Datre Farms Realty Co. Inc., DFF Farm Corp., Daytree Custom Builders Inc. and Daytree At Cortland Square Inc.  She resides, upon information and belief, at 3 Gianna Court, Hauppauge, NY 11788.

14.      Defendant Richard Datre Jr. resides, upon information and belief, at 186 Islip Blvd., Islip Terrace, NY 11752, and is a nephew of Thomas Datre Sr. and Clara Datre, and an employee of one (1) or more of the companies owned or controlled by Thomas Datre Sr., Thomas Datre Jr. and Clara Datre.

15.     Defendant Christopher Grabe was and is, upon information and belief, an officer and owner of Islandia Recycling Inc. and C.J. Site Development Inc.  He resides, upon information and belief, at 28 Howard Drive, Coram, NY 11727.

16.     Defendant Gia Gatien was and is, upon information and belief, an officer and employee of Daytree At Cortland Square Inc.  The location of her residence is not yet known.

17.     Defendant Ronald Cianciulli was and is, upon information and belief, an officer and owner of Atlas Home Improvement Corp. of Long Island d/b/a Atlas Asphalt.  He resides, upon information and belief, at 453 Potter Blvd., Brightwaters, NY 11718.

18.     Defendant Joseph Montuori was the Commissioner of the Department of Parks, Recreation and Cultural Affairs at the Town of Islip, and an employee of the Town of Islip during the period in which the unlawful dumping of C&D debris, contaminated fill and other solid waste took place at Roberto Clemente Park. He resides, upon information and belief, at 3 Rose Court, East Islip, NY 11730.

19.     Defendant Brett Robinson was Secretary to the Commissioner of the Department of Parks, Recreation and Cultural Affairs at the Town of Islip, and an employee of the Town of Islip during the period in which the unlawful dumping of C&D debris, contaminated fill and other solid waste took place at Roberto Clemente Park. He resides, upon information and belief, at 301 Sunrise Drive, Sayville, NY 11782.

20.     Defendants Joseph Montuori and Brett Robinson each acted in concert with each other and with other defendants herein to unlawfully dispose, or cause or permit the unlawful disposal of C&D debris, contaminated fill and other solid wastes at Roberto Clemente Park, as more fully set forth below.

21.     Defendant Iglesia De Jesucristo Palabra Miel is, upon information and belief, a non-profit entity and religious organization located at 155 Alkier Street, Brentwood, NY 11717, whose officers, members and representatives include defendants Nancy Alvarez, William Carillo, Raul Pachecho, Walter Casasola and Marco Lopez.

22.     Defendant Marco Lopez was and is, upon information and belief, the pastor for Iglesia De Jesucristo Palabra Miel.  Defendant Lopez resides at 11 Cinnamon Street, Central Islip, NY 11722.

23.     Defendant Nancy Alvarez was and is, upon information and belief, an officer, representative and/or member of the congregation of defendant Iglesia De Jesucristo Palabra Miel. Defendant Alvarez resides at 3 Prospect Street, Central Islip, NY 11722.

24.     Defendant William Carillo was and is, upon information and belief, an officer, representative and/or member of the congregation of defendant Iglesia De Jesucristo Palabra Miel. Defendant Carillo resides at 4405 Expressway Drive N., Ronkonkoma, NY 11779.

25.     Defendant Raul Pachecho was and is, upon information and belief, an officer, representative and/or member of the congregation of defendant Iglesia De Jesucristo Palabra Miel. The location of his residence is not yet known.

26.     Defendant Walter Casasola was and is, upon information and belief, an officer, representative and/or member of the congregation of defendant Iglesia De Jesucristo Palabra Miel. The location of his residence is not yet known.

27.     Defendants Iglesia De Jesucristo Palabra Miel, Nancy Alvarez, Raul Pachecho, William Carillo, Walter Casasola and Marco Lopez (hereinafter referred to collectively as the "Church Defendants" each acted in concert with each other and with other defendants herein to

unlawfully dispose, or cause or permit the unlawful disposal of, C&D debris, contaminated fill and other solid wastes at Roberto Clemente Park, as more fully set forth below.

28.     Defendant 5 Brothers Farming Corp. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 1442 Clauverie Road, Middleburgh, NY 12122.

29.     Defendant DFF Farm Corp. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 1442 Clauverie Road, Middleburgh, NY 12122.

30.     Defendant Datre Trucking & Farming Inc. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 1442 Clauverie Road, Middleburgh, NY 12122.

31.     Defendant Datre Auto & Equipment Sales Inc. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 1442 Clauverie Road, Middleburgh, NY 12122.

32.     Defendant Daytree At Cortland Square Inc. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 2150 5th Avenue, Suite C, Ronkonkoma, NY 11779.

33.     Defendant Daytree Custom Builders Inc. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 2150 5th Avenue, Suite C, Ronkonkoma, NY 11779.

34.     Defendant Datre Family Farms Inc. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 2459 Ocean Avenue, Suite B, Ronkonkoma, NY 11779.

35.     Defendant Datre Farms Realty Co. Inc. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 2459 Ocean Avenue, Suite B, Ronkonkoma, NY 11779.

36.     Defendants 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc., Datre Auto & Equipment Sales Inc., Daytree At Cortland Square Inc., Daytree Custom Builders Inc., Datre Farms Realty Co. Inc., Thomas Datre Jr., Thomas Datre Sr., Clara Datre, Richard Datre Jr. and Gia Gatien (hereinafter referred to collectively as the "Datre Defendants") each acted in concert with each other and with other defendants herein to unlawfully dispose, or cause or permit the unlawful disposal of, C&D debris, contaminated fill and other solid wastes at Roberto Clemente Park, as more fully set forth below.

37.     Defendant Islandia Recycling Inc. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 161 Grand Boulevard, Brentwood, NY 11717.  Islandia Recycling Inc. is owned or controlled by defendant Christopher Grabe.

38.     Defendant C.J. Site Development Inc. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 28 Howard Drive, Coram, NY 11727.

39.     Defendants Islandia Recycling Inc., C.J. Site Development Inc. and Christopher Grabe (hereinafter collectively referred to as the "Grabe Defendants") each acted in concert with each other and with other defendants herein to unlawfully dispose, or cause or permit the unlawful disposal of, C&D debris, contaminated fill and other solid wastes at Roberto Clemente Park, as more fully set forth below.

40.     Defendant Atlas Home Improvement Corp. of Long Island is, upon information and belief, a corporation organized under the laws of the State of New York and doing business under the name Atlas Asphalt with an office located at 117 Brook Avenue, Deer Park, NY 11729 (hereinafter "Atlas Asphalt").

41.     Defendants Atlas Asphalt and Ronald Cianciulli, acting in concert with other defendants herein, dumped, or caused, or permitted, or assisted in the dumping of, C&D debris, contaminated fill and other solid wastes at Roberto Clemente Park, in violation of the law.

42.     Defendant IEV Trucking Corp. is, on information and belief, a New York corporation with offices located at 14 Jackson Avenue, Brentwood, NY 11717, and additionally maintained offices at 36-2 Rice Court, Medford, NY 11763, during the time period relevant to this action.

43.     Defendant COD Services Corp. is, on information and belief, a New York corporation with offices at 21 Claridge Circle, Manhasset, NY 11030.

44.     Defendants IEV Trucking Corp. and COD Services Corp. acted in concert with defendants Christopher Grabe, Thomas Datre Jr. and the other defendants named herein to procure and arrange for the delivery of contaminated fill, C&D and other solid wastes from construction sites, demolition sites and transfer stations in Kings, Queens, Nassau and Suffolk counties to Roberto Clemente Park.

45.     Defendants John Doe No. 1 through John Doe No. 10 are entities or individuals whose identities are currently unknown to plaintiff, but on information and belief, are known to defendants, who knowingly, negligently or otherwise generated and provided all or part of the C&D debris, contaminated fill or other solid wastes to the other defendants for unlawful disposal at Roberto Clemente Park, or arranged, aided or assisted the other defendants in the unlawful

disposal of contaminated fill, C&D and other solid wastes at Roberto Clemente Park.  The actual number of entities or individuals constituting the "John Doe" defendants is unknown at this time.

## IV.

## CRIMINAL CHARGES FILED

46.     In April 2014, a criminal investigation was commenced by the Suffolk County District Attorney's Office into the unlawful disposal of fill at Roberto Clemente Park and other locations within Suffolk County.  On or about December 8, 2014, a Suffolk County Grand Jury returned indictments (Suffolk County Court Case Numbers I-2708A-2014 through I-2708J-2014) charging defendants 5 Brothers Farming Corp., Daytree At Cortland Square Inc., Datre Family Farms Inc., DFF Farms Corporation, Thomas Datre Jr., Thomas Datre Sr., Christopher Grabe, Ronald Cianciulli, Joseph Montuori and Brett Robinson with a variety of criminal offenses.

47.     Defendants 5 Brothers Farming Corp. and Daytree at Cortland Square, Inc. were each charged with 27 different crimes, including five (5) counts of Criminal Mischief in the Third Degree (NYS Penal Law § 145.10), a Class D Felony for damage to Roberto Clemente Park (2 counts), and damage to property located at 1625 Islip Avenue, Central Islip, New York, property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York, and property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York; 14 counts of Endangering Public Health Safety or the Environment in the Third Degree (NYS ECL § 71-2712), a Class E Felony for release to the environment of an acutely hazardous substance at Roberto Clemente Park (5 counts) and similar releases at property located at 1625 Islip Avenue, Central Islip, New York (3 counts), property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York (3 counts) and property known to the Grand Jury as the "Veteran's Way Property" located in the

Village of Islandia, Town of Islip, New York (3 counts); four (4) counts of Endangering Public Health Safety or the Environment in the Fourth Degree (NYS ECL § 71-2711), a Class A Misdemeanor for release to the environment of an acutely hazardous substance at Roberto Clemente Park (2 counts), and similar releases at property located at 1625 Islip Avenue, Central Islip, New York (1 count), and property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York (1 count); four (4) counts of Operating An Illegal Solid Waste Management Facility Without a Permit (NYS ECL § 71-2703(2)(c)(i), a Class A Misdemeanor at Roberto Clemente Park and property located at 1625 Islip Avenue, Central Islip, New York, property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York, and property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York.

48.     Defendant Thomas Datre Jr. was charged with 29 different crimes, including five (5) counts of Criminal Mischief in the Third Degree (NYS Penal Law § 145.10), a Class D Felony for damage to Roberto Clemente Park (2 counts), and damage to property located at 1625 Islip Avenue, Central Islip New York (1 count), property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York (1 count), and property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York (1 count); 14 counts of Endangering Public Health Safety or the Environment in the Third Degree (NYS ECL § 71-2712), a Class E Felony for release to the environment of an acutely hazardous substance at Roberto Clemente Park (5 counts), and property located at 1625 Islip Avenue, Central Islip, New York (3 counts), property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York (3 counts), and property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York (3 counts);

four (4) counts of Endangering Public Health Safety or the Environment in the Fourth Degree (NYS ECL § 71-2711), a Class A Misdemeanor for release to the environment of an acutely hazardous substance at Roberto Clemente Park (2 counts), and property located at 1625 Islip Avenue, Central Islip, New York (1 count), property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York (1 count); four (4) counts of Operating An Illegal Solid Waste Management Facility Without a Permit (NYS ECL § 71-2703(2)(c)(i), a Class A Misdemeanor at Roberto Clemente Park (2 counts) and property located at 1625 Islip Avenue, Central Islip, New York (1 count), property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York (1 count), and property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York (1 count); and one (1) count of engaging in regulated activity without a fresh water wetlands permit in violation of NYS ECL § 71-2303(2), a violation if a first offense, at property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York.

49.     Defendant Christopher Grabe was charged with 17 different crimes, including three (3) counts of Criminal Mischief in the Third Degree (NYS Penal Law § 145.10), a Class D Felony for damage to Roberto Clemente Park (2 counts), and damage to property at property located at 1625 Islip Avenue, Central Islip, New York;  eight (8) counts of Endangering Public Health Safety or the Environment in the Third Degree (NYS ECL § 71-2712), a Class E Felony for release to the environment of an acutely hazardous substance at Roberto Clemente Park (5 counts), and similar releases at property located at 1625 Islip Avenue, Central Islip, New York (3 counts); three (3) counts of Endangering Public Health Safety or the Environment in the Fourth Degree (NYS ECL § 71-2711), a Class A Misdemeanor for release to the environment of an acutely hazardous substance at Roberto Clemente Park (2 counts), and a similar release at property located at 1625

Islip Avenue, Central Islip, New York; three (3) counts of Operating An Illegal Solid Waste Management Facility Without a Permit (NYS ECL § 71-2703(2)(c)(i), a Class A Misdemeanor at Roberto Clemente Park (2 counts) and property located at 1625 Islip Avenue, Central Islip, New York (1 count).

50.     Defendant Datre Family Farms Inc. was charged with 11 different crimes, including two (2) counts of Criminal Mischief in the Third Degree (NYS Penal Law § 145.10), a Class D Felony for damage to Roberto Clemente Park; five (5) counts of Endangering Public Health Safety or the Environment in the Third Degree (NYS ECL § 71-2712), a Class E Felony for release to the environment of an acutely hazardous substance at Roberto Clemente Park; two (2) counts of Endangering Public Health Safety or the Environment in the Fourth Degree (NYS ECL § 71-2711), a Class A Misdemeanor for release to the environment of an acutely hazardous substance at Roberto Clemente Park; and two (2) counts of Operating An Illegal Solid Waste Management Facility Without a Permit (NYS ECL § 71-2703(2)(c)(i), a Class A Misdemeanor at Roberto Clement Park.

51.     Defendant DFF Farms Corporation was charged with six (6) different crimes, including one (1) count of Criminal Mischief in the Third Degree (NYS Penal Law § 145.10), a Class D Felony, for damage to property located at 1625 Islip Avenue, Central Islip, New York; three (3) counts of Endangering Public Health Safety or the Environment in the Third Degree (NYS ECL § 71-2712), a Class E Felony for release to the environment of an acutely hazardous substance at property located at 1625 Islip Avenue, Central Islip, New York; one (1) count of Endangering Public Health Safety or the Environment in the Fourth Degree (NYS ECL § 71-2711), a Class A Misdemeanor for release to the environment of an acutely hazardous substance at property located at 1625 Islip Avenue, Central Islip, New York; and one (1) count of Operating

An Illegal Solid Waste Management Facility Without a Permit (NYS ECL § 71-2703(2)(c)(i), a Class A Misdemeanor at property located at 1625 Islip Avenue, Central Islip, New York.

52.     Defendant Thomas Datre Sr. was charged with five (5 ) crimes, including one (1) count of Criminal Mischief in the Third Degree (NYS Penal Law §145.10), a Class D Felony for damage to property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York; three (3) counts of Endangering Public Health Safety or the Environment in the Third Degree (NYS ECL § 71-2712), a Class E Felony for release to the environment of an acutely hazardous substance at property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York; one (1) count of Endangering Public Health Safety or the Environment in the Fourth Degree (NYS ECL § 71-2711), a Class A Misdemeanor for release to the environment of an acutely hazardous substance at property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York; and one (1) count of Operating An Illegal Solid Waste Management Facility Without a Permit (NYS ECL § 71-2703(2)(c)(i)), a Class A Misdemeanor at property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York.

53.     Defendant Ronald Cianciulli was charged with a total of seven (7) crimes, including one (1) count of Criminal Mischief in the Third Degree (NYS Penal Law § 145.10), a Class D Felony for damage to property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York; three (3) counts of Endangering Public Health Safety or the Environment in the Third Degree (NYS ECL § 71-2712), a Class E Felony for release to the environment of an acutely hazardous substance at property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York; one (1) count of Endangering Public Health

Safety or the Environment in the Fourth Degree (NYS ECL § 71-2711), a Class A Misdemeanor for release to the environment of an acutely hazardous substance at property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York; and one (1) count of Operating An Illegal Solid Waste Management Facility Without a Permit (NYS ECL § 71-2703(2)(c)(i), a Class A Misdemeanor at property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York.

54.     Defendants Joseph Montuori, former Town of Islip Commissioner of the Department of Parks Recreation and Cultural Affairs, and defendant Brett Robinson, former Secretary to the Town of Islip Commissioner of the Department of Parks Recreation and Cultural Affairs, were each indicted and charged with 12 crimes, including  five (5) counts of Endangering Public Health Safety or the Environment in the Third Degree (NYS ECL § 71-2712), a Class E Felony for release to the environment of an acutely hazardous substance at Roberto Clemente Park; two (2) counts of Endangering Public Health Safety or the Environment in the Fourth Degree (NYS ECL § 71-2711), a Class A Misdemeanor for release to the environment of an acutely hazardous substance at Roberto Clemente Park; two (2) counts of Operating An Illegal Solid Waste Management Facility Without a Permit (NYS ECL § 71-2703(2)(c)(i), a Class A Misdemeanor at Roberto Clemente Park; two (2) counts of Official Misconduct in violation of N.Y.S Penal Law § 195.00 in unlawfully permitting, attempting to conceal and failing to take action to stop the unlawful disposal of solid waste and unsuitable materials in Roberto Clemente Park; and one (1) count of Conspiracy in the Sixth Degree in violation of NYS Penal Law § 105.00, a Class B Misdemeanor,  in conspiring, each with the other, to conceal their commission of the offense of Official Misconduct in connection with the disposal of contaminated fill materials and C&D Debris at Roberto Clemente Park.

55.     In addition, individual defendants Thomas Datre Sr., Clara Datre, Christopher Grabe and other corporate defendants were indicted and charged in December 2014 with a variety of financial crimes such as failure to pay prevailing wages and income tax offenses not directly related to the dumping of contaminated fill at Roberto Clemente Park.

56.     Following arraignment of the defendants under Indictment No. 2708A-J-2014 before the Hon. Fernando Camacho in the County Court of Suffolk County, New York, Criminal Term on December 8, 2014, separate trials were ordered for different defendants.  On February 10, 2016, a jury trial was commenced on the charges against defendants Thomas Datre Sr., Thomas Datre Jr., 5 Brothers Farming Corporation., Daytree At Cortland Square Inc., Datre Family Farms Inc. and DFF Farms Corporation.

57.     On March 30, 2016, trial proceedings were halted and a disposition was reached.

58.     Defendant Thomas Datre Jr. pleaded guilty to four (4) Class E Felony counts and four (4) Class A Misdemeanor counts contained in Indictment No. 2708A-2014, specifically:

a.     to Count 6 of Indictment 2708A-2014, Endangering Public Health Safety and the Environment in the Third Degree, in violation of Environmental Conservation Law § 71-2712, a Class E Felony, in that, acting in concert with others, between May 2013 and April 2014, he recklessly disposed of more than 2,000 pounds of aggregate weight of a hazardous substance that he trucked to and deposited in the soccer field area at Roberto Clemente Park;

b.     to Count 10 of Indictment 2708A-2014, in violation of Environmental Conservation Law § 71-2703(2)(c)(i), a Class A Misdemeanor, that acting in concert with others, between May 2013 and April 2014, he commenced operation of a solid waste management facility in the soccer field area  at Roberto Clemente Park, without obtaining

a permit for such facility from the New York State Department of Environmental Conservation, which activity resulted in the release of more than 70 cubic yards of solid waste into the environment;

c.      to Count 18 of Indictment 2708A-2014, Endangering Public Health Safety and the Environment in the Third Degree, in violation of Environmental Conservation Law § 71-2712, a Class E Felony, in that, acting in concert with others, between April 2013 and April 2014, he recklessly disposed of more than 2,000 pounds of aggregate weight of a hazardous substance that he trucked to and deposited in a property located at 1625 Islip Avenue, Central Islip, New York;

d.      to Count 20 of Indictment 2708A-2014, in violation of Environmental Conservation Law § 71-2703(2)(c)(i), a Class A Misdemeanor, that acting in concert with others, between April 2013 and April 2014, he commenced operation of a solid waste management facility a property located at 1625 Islip Avenue, Central Islip New York without obtaining a permit for such facility from the New York State Department of Environmental Conservation, which activity resulted in the release of more than 70 cubic yards of solid waste into the environment;

e.      to Count 24 of Indictment 2708A-2014, Endangering Public Health Safety and the Environment in the Third Degree, in violation of Environmental Conservation Law § 71-2712, a Class E Felony, in that, acting in concert with others, specifically with defendant Ronald Cianciulli, between March 2014 and April 2014, he recklessly disposed of more than 2,000 pounds of aggregate weight of a hazardous substance that he trucked to and deposited at a property known as the "Masie Property" located in the Town of Babylon, Suffolk County, New York;

   f.  to Count 26 of Indictment 2708A-2014, in violation of Environmental Conservation Law § 71-2703(2)(c)(i), a Class A Misdemeanor, that acting in concert with others, specifically with defendant Ronald Cianciulli, between March 2014 and April 2014, he commenced operation of a solid waste management facility a property known as the "Masie Property" located in the Town of Babylon, Suffolk County, New York, without obtaining a permit for such facility from the New York State Department of Environmental Conservation, which activity resulted in the release of more than 70 cubic yards of solid waste into the environment;

   g.  to Count 29 of Indictment 2708A-2014, Endangering Public Health Safety and the Environment in the Third Degree, in violation of Environmental Conservation Law § 71-2712, a Class E Felony, in that, acting in concert with others, between July 2013 and December 2013, he recklessly disposed of more than 2,000 pounds of aggregate weight of a hazardous substance that he trucked to and deposited at a property known as the "Veteran's Way Property" located in the Town of Islip, Suffolk County, New York; and

   h.  to Count 32 of Indictment 2708A-2014, in violation of Environmental Conservation Law § 71-2703(2)(c)(i), a Class A Misdemeanor, that acting in concert with others,  between July 2013 and December 2013, he commenced operation of a solid waste management facility a property known as the "Veteran's Way Property" located in the Town of Islip, Suffolk County, New York, without obtaining a permit for such facility from the New York State Department of Environmental Conservation, which activity resulted in the release of more than 70 cubic yards of solid waste into the environment.

59.     Defendant 5 Brothers Farming Corp. entered pleas of guilty, through its counsel to counts 6, 8, 18, 24 and 31 of Indictment 2708G-2014.  These pleas were to four (4) counts (6, 18, 24 and 31) of Endangering Public Health Safety and the Environment in the Third Degree, in violation of Environmental Conservation Law §71-2712, each Class E Felonies, for reckless disposal of more than 2,000 pounds of aggregate weight of a hazardous substance at Roberto Clemente Park, 1625 Islip Avenue, Central Islip, the "Maisie Property" in the Town of Babylon and the "Veteran's Way Property" in the Town of Islip, and one (1) count of Endangering Public Health Safety and the Environment in the Fourth Degree, in violation of Environmental Conservation Law § 71-2711, a Class A Misdemeanor, for reckless disposal of a hazardous substance, asbestos, at Roberto Clemente Park.  At the plea, defendant Thomas Datre Jr. identified himself as a principal of 5 Brothers Farming Corp.

60.     Defendant Christopher Grabe appeared in this disposition and entered pleas of guilty:

a.      to Count 6 of Indictment 2708B-2014, Endangering Public Health Safety and the Environment in the Third Degree, in violation of Environmental Conservation Law § 71-2712, a Class E Felony, in that, acting in concert with others, between May 2013 and April 2014, he recklessly disposed of more than 2,000 pounds of aggregate weight of a hazardous substance that he trucked to and deposited in the soccer field area at Roberto Clemente Park;

b.      to Count 18 of Indictment 2708B-2014, Endangering Public Health Safety and the Environment in the Third Degree, in violation of Environmental Conservation Law § 71-2712, a Class E Felony, in that, acting in concert with others, between April 2013 and April 2014, he recklessly disposed of more than 2,000 pounds of aggregate weight of a

hazardous substance that he trucked to and deposited at 1625 Islip Avenue, Central Islip, New York.

61.     Defendant Grabe also entered a plea of guilty at this time to Criminal Tax Fraud in the Fourth Degree under Indictment No 1300-2015.

62.     Defendant corporation Daytree At Cortland Square Inc. entered a plea of guilty to a charge in count 46 of Indictment 2716-2014 of willful failure to pay prevailing wage to workers in a contract unrelated to the dumping at Roberto Clemente Park.

63.     In entering pleas under Indictment 2708A and B-2014, counsel for defendants stipulated to the laboratory reports indicating the presence of hazardous substances in the materials dumped at Roberto Clemente Park, and the other locations identified in the indictment.

64.     Sentencing of defendants was deferred and has not taken place as of the date of this complaint.  In remarks to the court, the District Attorney stated that under the terms of the dispositions, the People would move to dismiss the remaining charges against these defendants and the other defendants named in Indictment 2708-2014 at sentencing, in satisfaction of the guilty pleas.

## V.
## FACTUAL ALLEGATIONS

**A.     Sources of Factual Allegations Alleged on Information and Belief**

65.     In the course of the investigation by the Office of the Suffolk County, New York, District Attorney, into illegal dumping at Roberto Clemente Park, the District Attorney executed search warrants and seized a variety of business records from the office of defendants named in the indictment described above.  In addition, the District Attorney obtained, via judicial subpoena, records and logs of telephone calls made and received on specific telephone numbers used by

defendants Thomas Datre Jr., Christopher Grabe, Joseph Montuori and Brett Robinson. Copies of some or all of these records were provided to defendants in the criminal case described above.

66. On April 22, 2015, defendants Thomas Datre Sr., Clara Datre and Daytree At Cortland Square Inc. filed an action in the United States District Court for the Eastern District of New York against the Town of Islip and individual officers and employees of the Town, for deprivation of civil rights under color of state law, pursuant to 42 U.SC. §1983, case number CV-15 2298.

67. In the course of discovery in that matter, the plaintiffs responded to the Town defendants' document requests by providing materials, including business records, phone logs and statements of individual criminal defendants, that had been provided to them as defendants in the criminal case by the Suffolk County District Attorney. The records so provided are the basis, among other sources, for the factual allegations contained herein. Other sources of factual allegations herein are statements and interviews with Town employees and other individuals, laboratory test results, reports and information of consulting engineers and the public records of the State of New York, the County of Suffolk and the Town of Islip.

68. Additional sources of information herein are the plea allocutions of defendants Thomas Datre Jr. and Christopher Grabe, and the trial testimony of witnesses who were called at the trial of defendants Thomas Datre Jr., Thomas Datre Sr., 5 Brothers Farming Corporation, Daytree At Cortland Square Inc., DFF Farms Inc. and Datre Family Farms Inc.

69.     Notwithstanding the substantial amount of information acquired in the preparation of this complaint, other information relevant and supportive of the allegations contained herein remains exclusively within the control and custody of defendants, or within the custody of the Suffolk County District Attorney, but is expected to be produced in discovery or upon the conclusion of the criminal proceedings now underway.

**B.      Factual Allegations**

70.     Roberto Clemente Park, formerly known as Timberline Park, is designated parkland owned by the Town of Islip in Brentwood, New York.

71.     For several years prior to May 2013, the Town of Islip had granted permission to various persons and organizations to host soccer games on weekends at a field located in the northwest quadrant of Roberto Clemente Park.  These games were popular in the local community, and drew significant numbers of spectators and participants.  As a result, the condition of the field deteriorated due to regular use and resultant wear and tear.

72.     In or around April of 2013, Iglesia De Jesucristo Palabra Miel (the "Church"), through defendants Nancy Alvarez and Marco Lopez, reached out to the Town of Islip (the "Town") and requested permission to rehabilitate the soccer fields on in the northwest quadrant of Roberto Clemente Park through placement of topsoil and grass seed on the existing surface.  At that time, the Church Defendants represented that the rehabilitation would be performed by volunteer members of the Church congregation and users of the field.

73.     Acting on the ostensible representations of the Church defendants, defendant Joseph Montuori, then Commissioner of the Town of Islip Department of Parks, Recreation and Cultural Affairs (hereinafter "Parks Department"), permitted the Church to begin work in or around May of 2013 at the Church's sole cost and expense.  This permission was granted without

a written agreement, schedule, plans and specifications, insurance, performance bond or Town Board authorization.  In May 2013, individuals were observed at the soccer field spreading topsoil and grass seed over approximately two-thirds of the field.  On May 13, 2013, defendant Nancy Alvarez sent a communication via email to defendant Brett Robinson, Secretary to Parks Commissioner Joseph Montuori, stating that the Church had run out of topsoil, and asked if the Town could contribute approximately 60 cubic yards of topsoil to complete the project.  Robinson responded that he would inquire.

74.    Upon information and belief, in the period between May and July of 2013, Thomas Datre Jr. and Christopher Grabe enlisted the Church defendants in a scheme to unlawfully dispose of C&D debris, contaminated fill and other solid wastes at Roberto Clemente Park.  In the period June-August 2013, the Datre and Grabe defendants began trucking in thousands of tons of fill material to the Park, dumping and spreading said material over the topsoil and seed previously deposited by Church volunteers in May.

75.    Upon information and belief, in the period between May and September of 2013, defendants Montuori and Robinson became aware that the Church defendants and the Datre defendants were acting in concert to deliver thousands of tons of fill material to Roberto Clemente Park.  Montuori and Robinson were, or should have been, aware that the Church and Datre defendants were no longer engaged in the repair and re-seeding of the former soccer field, but took no action to halt the activity, or to test or evaluate the material being delivered.

76.    On August 24, 2013, a press conference was held by the Parks Department and other Town officials to provide information to the public about the renovations being prepared for the Roberto Clemente Park Pool.  During the press conference, recorded through photographs and

noted by the media, trucks marked "Datre" were observed delivering fill to the site of the soccer field at Roberto Clemente Park.

77.     Following the press conference and the observation of vehicles delivering fill, Town Board members and officers other than those employed by the Parks Department, made inquiries regarding the activity and were informed by defendants Montuori and Robinson that a church group was volunteering to repair the soccer field at the Park.  It was determined by the Town Attorney and Planning Director that a permit was required for clearing and grading at the Park, and that the consent and approval of the Town Board would be necessary to accept any improvements to the Park performed by the church group.  Defendants Montuori and Robinson, acting at the direction of the Town Attorney, requested the Church, though not the Datre defendants, to provide information for a land clearing permit, together with a letter from the Church offering its services and describing the work to be done at the site.

78.     Following the Parks Department request to the Church for information in support of a land clearing permit, defendant Christopher Grabe contacted Jose Tavares, an architect, by telephone, and requested that Mr. Tavares prepare a site drawing of the soccer fields to submit to the Town with the land clearing permit information.

79.     In making the request for a site drawing, Mr. Grabe advised Mr. Tavares that he was doing *pro bono* work at Roberto Clemente Park on behalf of the Church, and that the Town needed a "layout" of the proposed soccer fields.

80.     On or about August 26, 2013, Mr. Tavares met with Mr. Grabe at Roberto Clemente Park and subsequently prepared a site drawing, dated August 30, 2013, indicating the proposed location of the soccer fields within the Park, as described by Mr. Grabe.  The drawing prepared by Mr. Tavares described an "adult" and a smaller "youth" soccer field in the northwest quadrant of

Roberto Clemente Park.  The drawing did not indicate grades of elevation, specifications of fill material or stormwater drainage features.  Mr. Grabe paid Mr. Tavares $500.00 for the site drawing, which Mr. Tavares gave to Mr. Grabe, with the understanding that it would be submitted to the Town of Islip.

81.     On August 29, 2013, the Church transmitted to the Parks Department, by telephone facsimile (fax), a letter signed by defendant Marco Lopez and addressed to Town of Islip Parks Commissioner Joseph Montuori.  The letter was dated August 10, 2013.  The letter stated that the congregation of Iglesia De Jesucristo Palabra Miel has been working on the "Ball Field" at Roberto Clemente Park, without pay, since April 2013, and appreciated the opportunity to do so as an improvement to the community.  Defendants Montuori and Robinson circulated this letter to the Office of the Town Attorney and other officials of the Town.

82.     The contents of the letter signed by defendant Marco Lopez dated August 10, 2013 and transmitted by fax to the Town on August 29, 2013 were false, and intended to mislead the Town into an assumption that improvements at the Park were being contributed solely by members of the Church congregation, and to conceal the involvement of the Datre, Grabe, and John Doe defendants.  In fact, any contribution of labor or materials by members of the Church congregation had ceased in May 2013.  By August 2013, the Datre and Grabe defendants had taken control of the purported soccer field project and, acting in concert with the IEV, COD, John Doe and Church defendants, were in the process of unlawfully delivering several thousand tons of contaminated fill, C&D debris and other solid wastes to Roberto Clemente Park.

83.     On August 30, 2013, Mr. Grabe submitted, on behalf of the Church, the site drawing prepared by Mr. Tavares to the Town, where it was circulated to the Planning Department and the Parks Department for use in the preparation of an application for a land clearing and grading

permit.  The site drawing depicting future soccer fields as submitted by Mr. Grabe was false, and was intended by Mr. Grabe and the other defendants herein to mislead and induce the Town into accepting a purported gift of services from the Church for the rehabilitation of soccer fields at Roberto Clemente Park.  In fact, the site drawing was intended and used to conceal the continued and future use of the Park as an illegal dumping ground for contaminated fill, C&D debris and other solid wastes delivered by or on behalf of defendants.

84.     On September 10, 2013, in reliance upon the letter of defendant Marco Lopez dated August 10, 2013 and transmitted August 29, 2013, and upon the site drawing prepared by Jose Tavares and submitted by defendant Christopher Grabe on August 30, 2013, and upon the representations of defendants Montuori and Robinson that the project was under the direction of the Church, the Town Board of the Town of Islip passed a Resolution permitting the Church to perform rehabilitation of the deteriorating soccer fields at Roberto Clemente Park.

85.     The Town Board Resolution limited the scope of work to spreading topsoil and re-seeding the adult and youth soccer fields, and accepted a donation from the Church consisting of labor and materials for the rehabilitations of the fields.

86.     On September 6, 2013, at the direction of defendants Montuori and Robinson, in reliance upon the letter of defendant Marco Lopez dated August 10, 2013 and transmitted August 29, 2013, and upon the site drawing prepared by Jose Tavares and submitted by defendant Christopher Grabe on August 30, 2013, the Town of Islip Department of Parks, Recreation and Cultural Affairs submitted an application for a Land Clearing and Grading permit to the Town of Islip Planning Department.

87.     On September 12, 2013, the Planning Department for the Town of Islip, in reliance upon the application submitted by the Department of Parks, Recreation and Cultural Affairs, and upon the site drawing prepared by Jose Tavares and submitted by defendant Christopher Grabe, issued a Land Clearing and Grading Permit for work at Roberto Clemente Park to the Town Department of Parks, Recreation and Cultural Affairs.

88.     On September 6, 2013, defendant Christopher Grabe was photographed by Newsday photographer Joseph D. Sullivan, standing directly next to the soccer fields at Roberto Clemente Park.  In the background are a bulldozer, pay loader and tractor, all located upon the Roberto Clemente Park soccer fields.  According to the Newsday article, Christopher Grabe was quoted as having donated approximately $70,000.00 in labor and materials to assist a local church (defendant Iglesia de Jesucristo Palabra Miel) in leveling and seeding the field.

89.     At or about the time of the Town Board's Resolution of September 10, 2013, and the Planning Department's issuance of a Land Clearing and Grading permit on September 12, 2013, deliveries of fill material to the Park temporarily ceased.  As of September 13, 2013, as seen in an aerial photograph taken on that date and posted on the Google Earth website, the entire area of the soccer field is buried under a layer of new fill material, and this fill material is extended into the wooded areas bordering the soccer field to the north and west.  No work was performed to seed or otherwise restore the area for use as a soccer field.

90.     Defendant Nancy Alvarez testified at the criminal trial of defendants Thomas Datre Sr. and Thomas Datre Jr. on February 26, 2016, that she and another Church member named "Roberto" met with defendants Joseph Montuori and Brett Robinson of the Town Parks Department in October 2013.  The subject of the meeting was the work at the soccer field at Roberto Clemente Park.  Defendant Alvarez testified that a problem with the work was a lack of

irrigation to allow grass to grow on the field, but that she was "shocked' at the materials placed on the field by Christopher Grabe and that no work had been performed since September.

91.     On November 18, 2013, defendants William Carillo, Raul Pacheco and Walter Casasola, as representatives of the Church, transmitted, via telephone facsimile (fax), a letter on Church stationery signed by each of them, addressed to Town of Islip Parks Commissioner Joseph Montuori.  The fax was delivered to Parks Secretary Brett Robinson.  The letter was dated October 22, 2013.

92.     The letter stated that the congregation of Iglesia De Jesucristo Palabra Miel has been working on the "Ball Field" at Roberto Clemente Park, without pay, since April 2013.  This statement was false, as work performed by members of the Church congregation had ceased in May 2013, and the Park had been used as a dumping ground for C&D debris, contaminated fill and other solid wastes delivered by the Datre defendants from June to mid-September.

93.     The October 22, 2013 letter also stated that work had stopped due to the concern of the Church that grass would not grow without irrigation of the field.  The letter proposed that the Church would resume work and provide "an estimate" if the Town would agree to provide water to the site.

94.     At the time that this letter was transmitted to Parks Secretary Robinson, the approved budget of the Department of Parks, Recreation and Cultural Affairs contained no funding or authorization for the provision of an irrigation system at Roberto Clemente Park, and at no time was any contract or work order issued by the Town for any such system.  The October 22, 2013 letter from the Church defendants threatened that work at the soccer field would not be resumed.  Had this threat been carried out, the soccer field would have not have been usable in 2014 without funds appropriated by the Town Board, and to secure those funds, the unauthorized acts of

Montuori and Robinson would have been exposed.  Shortly after the transmission of this letter, on November 18, 2013, dumping of C&D debris, contaminated fill and other solid wastes at the Park resumed, and expanded to a new area in the Park, without any Town Board authorization.

95.     On November 21, 2013, Park Ranger Brendan Kearns observed that approximately 70 piles of "rocky dirt" had been deposited on the soccer field.  Public Safety Field Report TI-002745-13 indicates that the dirt was unscreened and contained large boulders.  After interviewing a driver, PR Kearns determined that the driver was employed by "Datre," "telephone number 676-7200."  The report indicates that the driver stated that he was told by his boss to drop the aforementioned fill at the Park.  The report also stated that "Per a coles directory search, telephone number 631-676-7200 is an Optimum Lightpath business number issued to defendant corporation "Datre Family Farms."  According to New York State Department of State, Division of Corporations, Datre Family Farms shares an address with defendant Daytree At Cortland Square Inc., 2150 5th Avenue, Ronkonkoma, New York, and has the same Chief Executive Officer, defendant Clara Datre.

96.     On November 30, 2013, Park Ranger Kearns observed that additional debris had been deposited in the "recharge" area in Roberto Clemente Park, to the south of the soccer field.  The "recharge" area was originally graded and landscaped as an "amphitheater" for entertainment purposes when the Park was designed and constructed in the early 1980s.  Despite its designation as a "recharge area," it provides no drainage function to any other area of the Park.  This area had not been the site of any previous dumping, and had not been referenced in the Town Board resolution of September 10, 2013, or the Land Clearing and Grading permit issued to the Department of Parks, Recreation and Cultural Affairs on September 12, 2013, as the site of any "donated" labor, improvement or rehabilitation.

97.     In mid-January 2014, the Town began to receive reports from parents and elected officials advising of dangerous conditions for children attempting to sled on the slopes of the "recharge area" after a snowfall.  Parents reported the presence of brick, metal, rebar and other debris in the basin.  Town personnel confirmed the presence of these materials, as well as heavy earth moving equipment in the basin on January 23, 2014, and the Park was closed on that date.

98.     On January 24, 2014, defendant Montuori met with other Town officials with respect to the conditions at Roberto Clemente Park.  Defendant Montuori denied knowledge of debris or fill in the basin at the Park, but stated that he would contact the persons responsible to remove the material.  Following this meeting, the Office of the Islip Town Attorney issued a letter to Marco Lopez and the Church ordering that the Church cease and desist all work in the recharge area on the south side of Roberto Clemente Park, and immediately remove all fill material deposited in the recharge area.  Although the Town Attorney addressed its direction to the Church, the Datre defendants mobilized at the recharge area to commence removal on the same day.

99.     On January 24-25, 2014, in an operation directed personally by Christopher Grabe and witnessed by Town of Islip personnel, the Datre defendants removed over 27 truckloads of C&D debris, contaminated fill and other solid wastes from the recharge area at Roberto Clemente Park.  January 26, 2014 Facebook postings with color photographs indicate a "Richie Daytree," on information and belief defendant Richard Datre Jr., present upon the grounds of Roberto Clemente Park seated in the cab of a light green truck with the letters "DATRE" drawn on the driver's side door of the truck's cab.  Additional photographs indicate an Amber Weiss (believed to be "Richie Daytree's" girlfriend) operating an excavator within the recharge basin of Roberto Clemente Park.

100.    Upon information and belief, the Datre defendants transported a portion of the solid waste from RC Park to a nearby location at 1625 Route 111, Brentwood, New York, which is a site leased and/or occupied by defendant Thomas Datre Jr.  Other material removed from the basin was transported to property owned by defendants Atlas Asphalt and Ronald Cianciulli at 117 Brook Avenue, Deer Park, New York.  On information and belief, the material taken from Roberto Clemente Park was moved by defendants Atlas Asphalt and Ronald Cianciulli from 117 Brook Avenue to other property used and occupied by Atlas Asphalt and Ronald Cianciulli (the "Maisie Property" referred to in the indictment of Ronald Cianciulli) at 175 Brook Avenue, Deer Park, New York in April 2014.   Defendants did not have the permission of the owner to deposit this material at 175 Brook Avenue.

101.    On January 27, 2014, defendant Montuori reported to the Office of the Town Supervisor that all dumped material had been removed from the basin at the Park.  However, not all C&D debris, contaminated fill and other solid wastes were removed from the recharge area.  Surveys subsequently indicated that approximately 3,000 cubic yards of C&D debris, contaminated fill and other solid wastes remained after removal on January 24-25 2013.

102.    On February 3, 2014, defendant Christopher Grabe again telephoned architect Jose Tavares.  In this communication, Grabe requested Tavares to prepare another drawing of Roberto Clemente Park, this to show a layout of two (2) additional soccer fields located over the recharge area, fields which could only be constructed if the basin were filled.  Grabe did not inform Tavares that the basin was partially filled with debris.  Mr. Tavares prepared the drawing without visiting the site, and delivered the drawing to defendant Grabe on or about February 7, 2014, with the understanding that Grabe would submit the drawing to the Town of Islip.  It is not known whether, or when, the drawing was submitted to any department or individual in the Town.  As of the date

of this complaint, the drawing is in the possession of the Office of the Suffolk County District Attorney.

103.    On March 24, 2014, while Park Ranger Brendan Kearns was opening gates to Roberto Clemente Park he observed five (5) "Datre" tractor trailers waiting on the road outside the Park.  After opening the gates, the trucks entered the Park and proceeded to drop what appeared to be topsoil on the soccer fields.  The soil dropped was being spread on top of existing material that had been delivered previously.  The previously-deposited material contained large quantities of broken glass, crushed cement, large stones and clay.  Surveillance video recorded by the Town on March 24, 2014 by a camera at the entrance to Roberto Clemente Park, shows at least three (3) separate tractor trailers with a "DATRE" logo on the driver's side door of the cab, entering the Park.

104.    On April 9, 2014 at 4:30 p.m., New York State Department of Environmental Conservation Officer Hull observed Daytree At Cortland Square Inc. employee Oscar H. Ventura operating a 2000 Ford Dump Truck bearing New York license plate number 25673MD at Roberto Clemente Park.  Per New York State Department of Motor Vehicles, this dump truck is green in color and registered to "Daytree At Courtland," 2150 5th Avenue, Ronkonkoma, New York  11779. Daytree At Cortland Square Inc. vehicles were also observed by Town employees being operated at the Park on the same date.  As per the New York State Department of State, Division of Corporations, defendant Clara Datre is the Chief Executive Officer of Daytree At Cortland Square Inc.

105.    In April of 2014, the Office of the Suffolk County District Attorney commenced an investigation into the unlawful dumping of C&D debris and illegal fill at Roberto Clemente Park and other locations in the County of Suffolk, including properties located in Central Islip, the Village of Islandia and Deer Park.

106.    Soil tests of samples taken from the Park, conducted at the direction of the Suffolk County District Attorney, revealed the presence of hazardous substances, including, but not limited to, asbestos, pesticides and heavy metals in the materials deposited by defendants in Roberto Clemente Park, in amounts in excess of allowable concentrations in soil under New York law.

107.    In response to the findings that hazardous substances were found in the fill materials disposed of at Roberto Clemente Park, the Town of Islip undertook a removal action under the supervision of the New York State Department of Environmental Conservation (NYSDEC), in accordance with the provisions of 40 CFR §300.415.  In its removal action, the Town prepared a Material Removal Work Plan which was published and posted on the Town website, together with regular community updates and other information in accordance with the National Contingency Plan.  The NYSDEC solicited and accepted comments on the Material Removal Work Plan, held a public hearing on the Plan in October 2014, and approved the Plan on January 13, 2015.  The Plan called for the removal of all materials delivered to the site over the May 2013-May 2014 period, and identified portions of the material that required disposal at landfills located outside of Long Island and materials that could be disposed of at the Blydenburgh Landfill owned and operated by the Islip Resource Recovery Agency.

108.    Prior to the commencement of removal activity, additional samples of the material deposited at the soccer field and recharge basin at Roberto Clemente Park were taken on behalf of the Town.  Tests conducted on these samples revealed the presence of hazardous substances listed in 40 CFR §302.4(a), as set forth in paragraph 158, below.

109.    Removal activities were commenced in June 2015 by a contractor engaged by the Town, under supervision of the NYSDEC, in accordance with the health and safety provisions established in the Work Plan.  The contractor proceeded in accordance with topographical surveys provided by the Town and updated by the contractor to remove all materials deposited above the original elevation of the soccer field and recharge area.  On reaching the original elevation area, end point samples were taken to confirm that all contaminated fill had been removed.  End-point sampling was taken at stages of removal in July and August 2015, and removal activities were completed in September 2015.  The Town's consultants prepared a Removal Action Report which was submitted to the NYSDEC on September 29, 2015.  NYSDEC directed the Town to prepare a restoration plan for the Park, including continued groundwater monitoring and other measures, which is in preparation as of the date of this action.

110.    Overall, a total of 38,932.44 tons of C&D debris and unacceptable fill were removed from the Park in the Removal Action.  The Town continues to take actions called for in the Removal Work Plan, and expects to take further action in accordance with a final Restoration Plan to be approved by the NYSDEC.  As a result of these activities, the Town has incurred response costs in excess of $4,000,000.00, and additional costs to be established at trial, for which defendants are liable, as set forth below.

111.    On May 27, 2014, the Town Board for the Town of Islip adopted a resolution, subject to a permissive referendum, to issue up to $6,000,000.00 in bonds, the proceeds of which would be used for remediation and restoration at Roberto Clemente Park.

112.    The Town has also paid no less than $192,000.00 for the retention of environmental consultants to test and outline remediation plans in RC Park, as well as an additional $50,150.00 for said consultants to assess the presence of environmental contaminants at all 118 Town parks.

## VI.

## CLAIMS

### AS AND FOR A FIRST CLAIM

**RICO; 18 U.S.C. § 1964(c)**
*Against All Defendants*

113.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

114.    Each and all of the named defendants herein are "persons" within the meaning of 18 U.S.C.§1961(3).

**A.    The Enterprise**

115.    The Enterprise consists of individuals, partnerships, corporations, associations and other entities and/or groups associated in fact although not a legal entity in and of itself.  The subject Enterprise consists of the below named defendants and together they functioned as a continuing unit through an ongoing organization with a common unlawful purpose.

116.    At all relevant times, defendants comprised an association in fact with a structure and existence separate and distinct from the racketeering activity alleged herein, which association in fact was an enterprise within the meaning of 18 U.S.C. § 1961(4) which is engaged in, or the

activities of which affect, interstate or foreign commerce, all in violation of 18 U.S.C. § 1962(c). The Enterprise functioned as an association in fact during a period beginning not later than May 2013 and continued at least until the cessation of dumping and the closure of Roberto Clemente Park in April 2014.

117.    In their pleas of guilty on March 30, 2016 to the crimes of Endangering Public Health Safety and the Environment in the Third Degree, and operating a solid waste facility without a permit in violation of Environmental Conservation Law § 71-2712 and § 71-2703(2)(c)(i) at Roberto Clemente Park, defendants Thomas Datre Jr. and Christopher Grabe admitted to acting in concert with others in the commission of those crimes.  On information and belief, the persons and entities with whom they acted in concert are members of the Enterprise, whose racketeering activities are described below.

118.    The object of the Enterprise was to obtain access to locations in Long Island where solid wastes, including Construction and Demolition debris and fill materials contaminated with hazardous substances, could be disposed of without payment of disposal fees or compliance with environmental laws.  By securing, and thereafter concealing access to such locations, the Enterprise was able to obtain greater profit through fraud and misrepresentation to generators of solid wastes that the materials consigned to the Enterprise for disposal were, in fact, being disposed of lawfully, and through fraud and misrepresentation to the owners of such locations that activities conducted by the Enterprise were lawful.   The Enterprise conducted its operations, and concealed the illegal nature of its operations, through use of telephone and fax communications, in violation of 18 U.S.C. §1343.

119.     Defendants 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc., Datre Auto & Equipment Sales Inc., Daytree At Cortland Square Inc., Daytree Custom Builders Inc., Datre Family Farms Inc., Datre Farms Realty Co. Inc., Thomas Datre Jr., Thomas Datre Sr., Clara Datre, Gia Gatien and Richard Datre Jr (hereinafter the "Datre Group") are corporations and individuals controlled or employed by Thomas Datre Sr., Clara Datre and Thomas Datre Jr.   Acting in combination and in concert, the members of the Datre Group contributed the funds, equipment, labor and other assets of the individuals and corporations to advance the purposes of the Enterprise, as described below.

120.     Defendants Islandia Recycling Inc. and C.J. Site Development Inc. are corporations owned or controlled by individual defendant Christopher Grabe, hereinafter the "Grabe Group." Acting in combination and in concert, the members of the Grabe Group contributed the funds, equipment, labor and other assets of the individuals and corporations to advance the purposes of the Enterprise, as described below.

121.     Defendant Iglesia De Jesucristo Palabra Miel, is a non-profit corporation or association owned or controlled by individual defendants Marco Lopez, Nancy Alvarez, William Carillo, Raul Pachecho and Walter Casasola (hereinafter, collectively the "Church Group"). Acting in combination and in concert, the members of the Church Group contributed funds, equipment, labor and other assets of the individuals and non-profit corporation or association to advance the purposes of the Enterprise, and acted to conceal the involvement of other members of the Enterprise, as described below.

122.     Defendant Atlas Home Improvement Corp. of Long Island d/b/a Atlas Asphalt is a corporation owned or controlled by defendant Ronald Cianciulli (hereinafter, collectively the "Atlas Group").   Acting in combination and in concert with the other members of the Enterprise,

the Atlas Group contributed the funds, equipment, labor and other assets of the individual and corporation to advance the purposes of the Enterprise, as described below.

123.    Defendants Joseph Montuori and Brett Robinson are individuals who, at all relevant times, were employees of the Town of Islip and officers of the Town Department of Parks, Recreation and Cultural Affairs.  In said positions, they had direct control over access to Roberto Clemente Park and exercised such control, beyond the scope of their employment, to make Roberto Clemente Park available to the Enterprise for the purpose of illegal disposal of C&D, contaminated fill and other solid wastes, to advance the purposes of the Enterprise, and to conceal the involvement of other members of the Enterprise from the Town.

124.    Defendants IEV Trucking Corp. and the COD defendants acted as brokers to supply contaminated fill, C&D materials and other solid wastes to the Enterprise for disposal at Roberto Clemente Park.  The IEV and COD defendants arranged for trucks owned or directed by the Datre and Grabe defendants to pick up materials at various locations in Kings, Queens, Nassau or Suffolk counties which would be transported and disposed of at Roberto Clemente Park.  Business records of the Datre defendant corporations establish that during the period June 2013 through April 2014, the IEV and COD defendants paid over $600,000.00 to defendants DFF Farm Corp, Daytree At Cortland Square Inc., Datre Family Farms Inc. and other members of the Datre Group for the pickup and removal of materials from different location in the New York metropolitan area.  The IEV and COD defendants arranged for the pickup and removal of over 1,200 separate loads, which, if all loads averaged 35 cubic yards each, totaled over 43,000 cubic yards.  Of these transactions, IEV paid the Datre defendants over $417,000.00 for 759 loads of materials, and the COD defendants paid the Datre defendants over $245,000.00 for 476 loads of materials.  On information and belief, a very large proportion, if not all, of these materials were delivered to and deposited at

Roberto Clemente Park, or other locations at which the Enterprise was conducting racketeering activity, for the benefit of the Enterprise.  The IEV and COD defendants had knowledge of the disposal of the materials they arranged to transport, and acted to participate in the conduct of the Enterprise through a pattern of racketeering activity in violation of 18 U.S.C.§ 1962(c).

125.    Defendants John Doe No. 1 through John Doe No 10 (hereinafter the John Doe defendants) are individuals or partnerships or corporations or limited liability companies who assisted the other members of the Enterprise and received or generated contaminated fill, C&D debris and/or other solid wastes, and thereafter delivered or arranged to deliver such materials to the other members of the Enterprise for unlawful disposal at Roberto Clemente Park, and other locations.  Datre invoices to IEV Trucking Corp. identify third-party entities referred to as "All Island," "Luciano," "Empire," "Bayport," "Carpio," "KCD," "Dio" and "Sam's Construction," among others.  These references identify potential "John Doe" defendants who generated or arranged the disposal of contaminated fill, C&D material and other solid wastes by the named defendants at Roberto Clemente Park.  Datre invoices to COD Services Corp. refer to streets and neighborhoods which are, on information and belief, locations at which services were rendered. Owners or contactors at such locations are potential "John Doe" defendants who generated or arranged the disposal of contaminated fill, C&D material and other solid wastes by the named defendants at Roberto Clemente Park.  The actual identities of the John Doe defendants for whom services were performed are unknown to plaintiff, but are known to defendants.

## B.    Racketeering Activity

126.    Based on the allegations set forth below, the named defendants acted to participate in the conduct of the Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

127.    The purpose of the enterprise was to arrange and facilitate the unlawful disposal of contaminated fill, C&D debris and other solid wastes at multiple locations in Suffolk County, New York, including, but not limited to, sites at 1625 Islip Avenue, Central Islip, New York, 175 Brook Avenue, Deer Park, New York, a housing development on Veteran's Way, Islandia, New York and Roberto Clemente Park.  The racketeering activity that is the subject of this action is the illegal disposal of contaminated fill, C&D debris and other solid wastes at Roberto Clemente Park.

128.    The Church Group defendants initially secured permission from the Town Parks Department to perform a purported "volunteer" rehabilitation of the soccer field at Roberto Clemente Park.  Having gained access to the Park, the Church Group turned that access over to the Datre Group and the Grabe Group, who commenced the large scale delivery of contaminated fill, C&D debris and other solid wastes supplied by other members of the Enterprise to the Park. The Church Group committed at least two (2) predicate acts of wire fraud in violation of 18 U.S.C. § 1343, through the transmission on August 29, 2013 and November 18, 2013, by telephone facsimile, of letters signed by defendant Marco Lopez (August 29, 2013) and defendants William Carrillo, Raul Pachecho and Walter Casasola (November 18, 2013), intended to mislead the Town of Islip as to the real purposes of the disposal activities then underway at Roberto Clemente Park. Defendant Nancy Alvarez conducted 22 separate telephone calls with defendant Christopher Grabe between January 1, 2013 and December 31, 2014.  On information and belief, these telephone calls were made to maintain the façade that the Church membership, and no others, were conducting work at Roberto Clemente Park, and each constitutes a predicate act of wire fraud in violation of 18 U.S.C. § 1343.  In addition, on information and belief, members of the Church Group conveyed false and misleading information through telephone calls with Town officials, including, but not

limited to, a telephone conversation with Brett Robinson, Secretary to Parks Commissioner Montuori, on or after October 22, 2013, in violation of 18 U.S.C. § 1343.

129.     Defendants Montuori and Robinson, through their positions as Commissioner and Secretary to the Commissioner of the Town of Islip Department of Parks, Recreation and Cultural Affairs, exercised control over access to Roberto Clemente Park.  Defendants Montuori and Robinson misused their authority to control access to the Park by granting access to the Park to the Church defendants, and later to the Datre Group, without a contract, and without any plan, specifications or standards for the ostensible purpose of repair of the soccer field at the Park. Montuori and Robinson became aware of the involvement of the Datre Group, and of the delivery of thousands of tons of fill materials during the summer of 2013.  In response to inquiries from members of the Town Board and other Town officials after August 24, 2013, Montuori and Robinson concealed the involvement of the Datre and Grabe Groups in the delivery of fill material, induced the Town Board to adopt a resolution on September 10, 2013 to accept labor, services and materials to repair the soccer field, and induced the Planning Department to grant a Land Clearing and Grading permit to the Parks Department for repair of the field.  Montuori and Robinson continued to conceal the involvement of the Datre and Grabe Groups from other Town officials through the fall of 2013, with knowledge that the Enterprise had resumed deliveries of fill in November 2013, and that this fill was deposited in the recharge area, which had not been authorized for receipt of any material or for any work to be done by any person.  Montuori falsely represented to the Town on January 27, 2014, that all material had been removed from the recharge area.  Montuori and Robinson continued to allow the Datre and Grabe Groups to have access to the Park and permitted the disposal of additional fill on the soccer field in April 2014, before the operation was halted by order of the Town after inspection by the New York State Department of

Environmental Conservation.   On information and belief, defendants Montuori and Robinson committed multiple acts of wire fraud in violation of 18 U.S.C. § 1343 through the use of telephone, fax and email transmissions to other Town personnel to conceal the unlawful dumping of fill materials, and to circulate the false statements made by the Church defendants, which were intended to conceal the involvement of the Datre and Grabe Group defendants in the dumping of fill.

130.    Individual defendant Christopher Grabe and the Grabe Group acted as intermediary between the Church Group and the other members of the Enterprise in directing the placement of contaminated fill, C&D debris and other solid wastes in the Park.   Christopher Grabe acted as a dispatcher on behalf of the Enterprise in placing telephone calls to the IEV and COD defendants to arrange the delivery of contaminated fill, C&D debris and other solid wastes to the Park. Christopher Grabe committed at least two (2) predicate acts of racketeering activity (wire fraud) in violation of 18 U.S.C. § 1343, by making telephone calls to architect Jose Tavares on or about August 26, 2013 and on or about February 3, 2014, in each case to induce Mr. Tavares to prepare a site drawing of soccer fields intended to disguise the unlawful placement of contaminated fill, C&D debris and other solid wastes, in order to mislead the Town as to the activities underway at the Park.

131.    Christopher Grabe, Thomas Datre Jr. and the IEV and COD defendants committed multiple predicate acts of racketeering activity (wire fraud) in violation of 18 U.S.C § 1343 during the period June 2013 to May 2014, by making telephone calls to dispatch contaminated fill, C&D debris and other solid wastes to Roberto Clemente Park.   Telephone logs for two (2) cell phones used by Christopher Grabe and Thomas Datre Jr. establish that 1,331 telephone calls were made between Grabe and IEV Trucking Corp., 825 calls between Grabe and COD Services Corp. and

160 calls between Grabe and Thomas Datre Jr. during the period January 1, 2013 to December 31, 2014.  On information and belief, a substantial portion, if not all of these calls, were made to arrange pickup and delivery of contaminated fill, C&D or other solid waste to Roberto Clemente Park, or to conceal or otherwise advance the activities of the Enterprise.

132.    The Datre Group defendants arranged for the receipt and delivery of contaminated fill, C&D Debris and other solid wastes to the Park, and contributed labor and equipment to the storage and movement of the material in order to advance the purposes of the Enterprise.  Business records of the Datre defendant corporations establish that during the period June 2013 through April 2014, invoices and other communications were transmitted by telephone facsimile between the IEV and COD defendants and the Datre Group corporations DFF Farm Corp., Daytree At Cortland Square Inc. and Datre Family Farms Inc., for the pickup and removal of materials from different location in the New York metropolitan area.  On information and belief, the Datre Group made arrangements with the IEV and COD defendants and the John Doe defendants to obtain contaminated fill, C&D debris and other solid wastes through telephone and fax communications, in violation of 18 U.S.C § 1343.  Telephone logs for the cell phone used by Thomas Datre Jr. establish 151 telephone calls were made between Thomas Datre Jr. and IEV Trucking Corp., 163 calls between Thomas Datre Jr. and COD Services Corp. and 160 calls between Grabe and Thomas Datre Jr., during the period January 1, 2013 to December 31, 2014.  On information and belief, a substantial portion, if not all of these calls, were made to arrange pickup and delivery of contaminated fill, C&D or other solid waste to Roberto Clemente Park, or to conceal or otherwise advance the activities of the Enterprise.

133.    The Datre Group obtained control of the properties at 1625 Islip Avenue, Central Islip, New York and 175 Brook Avenue, Deer Park, New York, and used those properties as

delivery and storage areas for waste obtained from the IEV, COD and John Doe defendants before transport to Roberto Clemente Park.  The Datre Group defendants participated in the unlawful purpose of the Enterprise by obtaining, delivering, moving and storing the contaminated debris and, in doing so, concealed its unlawful acts and knowingly facilitated said unlawful activities. On information and belief, the Datre Group defendants engaged in numerous instances of wire fraud in violation of 18 U.S.C. § 1343 via telephone calls with the named defendants and the John Doe defendants in an effort to organize and conceal the pattern and practice of obtaining, delivering, storing and burying the thousands of tons of C&D debris and other solid wastes in the public park.

134.    On information and belief, the Datre defendants and the IEV and COD defendants engaged in predicate racketeering activity through the transmission of over $600,000.00 in proceeds from the operation of the Enterprise through the U.S. Mail in violation 18 U.S.C § 1341.

135.    The Atlas Group defendants assisted the Enterprise by contributing equipment and accepting contaminated fill material removed from the recharge area of Roberto Clemente Park by the Datre and Grabe Groups on January 25-26, 2014, at property owned and controlled by the Atlas Group at 117 Brook Avenue, Deer Park, New York.  This material was later moved to and dumped at other property leased by the Atlas Group defendants at 175 Brook Avenue, Deer Park, New York, in a separate racketeering activity.  The Atlas Group defendants participated in the unlawful purpose of the Enterprise by accepting or otherwise storing the contaminated debris and thereby, on information and belief, joined in the concealment of its unlawful acts and knowingly facilitated said unlawful activities.  On information and belief, the Atlas Group defendants engaged in wire fraud in violation of 18 U.S.C. § 1343 through telephone calls with the Datre, Grabe and

John Doe Group defendants in furtherance of the unlawful activities, all of which helped the Enterprise succeed.

136.    In violation of 18 U.S.C. § 1962(c) each of the defendants conducted or participated directly or indirectly in the conduct of the affairs of the Enterprise identified above through a pattern of racketeering activity as set forth herein.

137.    Defendants have engaged in a pattern of racketeering activity involving the predicate acts of wire fraud (18 U.S.C. § 1343) and mail fraud (18 U.S.C. § 1341).  Said predicate acts of wire fraud and mail fraud occurred, on information and belief, during a period beginning not later than May 2013 and continued to, and through, the arraignment of defendants on the criminal charges described above on December 8, 2014.  The substantial number of predicate acts perpetrated by the above defendants over a period of at least one (1) year amounted to continuous stream of acts of racketeering.

138.    Defendants, acting jointly and in concert, devised and intended to devise a scheme or artifice to defraud in order to save a significant sum of money that would be associated with the proper dumping of thousands of tons of C&D debris in accordance with the law by means of false or fraudulent pretenses, representations and promises as set forth above, and for the purposes of executing such scheme or artifice or attempting to do so, transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce, writings, signs, signals, pictures and sounds, for the purposes of executing and in furtherance of said schemes or artifices to defraud set forth herein in violation of 18 U.S.C. § 1343.

139.    On information and belief, defendants, acting jointly and in concert, used wire communications in furtherance of said scheme or artifice to defraud to ultimately save a significant sum of money that would be associated with the proper dumping of thousands of tons of C&D debris in accordance with the law.

140.    Defendants engaged in said willful acts with the intent to deceive or cheat for the purpose of getting a financial gain.  But for the unlawful dumping of thousands of tons of C&D debris in the public park, defendants would have paid a significant sum of money to lawfully dispose of the materials dumped at the Park.  The predicate acts of wire fraud illustrate a pattern of continued criminal activity with the ultimate end goal of unlawfully depositing thousands of tons of C&D debris and solid wastes in the public park.

141.    In addition to the racketeering activity whose object was the unlawful disposal of C&D debris and contaminated fill at Roberto Clemente Park, the Enterprise engaged in at least three (3) other schemes consisting of acts of racketeering through unlawful disposal of C&D debris and contaminated fill at (i) the Veterans Homes development property located in the Village of Islandia, Town of Islip, New York; (ii) the "Maisie" property located at 117 Brook Avenue, Deer Park, New York; and (iii) the property located at 1625 Islip Avenue, Central Islip, New York.  The schemes undertaken by the Enterprise were inter-related, as materials could be moved from one site to another, and the continued flow of materials from the IEV, COD and John Doe members of the Enterprise could be sustained whenever one (1) or more locations became temporarily unavailable.

142.    The pattern of racketeering activity engaged in by the Enterprise occurred at multiple sites, was open-ended, and would have continued but for the indictment and arrest of the individual defendants as described above.

143.    The racketeering activity became the regular way of operating the business and enterprise for the aforementioned defendants.

144.    The multiple predicate acts set forth above occurred from April of 2013 to May of 2014, and such acts constitute a continuous and related pattern of racketeering activity, or implied a threat of continued criminal activity, within the meaning of 18 U.S.C. § 1961(5).

145.    By reason of the foregoing, plaintiff sustained damages in an amount exceeding $4,000,000.00, plus such other amount to be determined at trial, to which plaintiff is entitled as well as treble damages, attorney's fees and punitive damages.

## AS AND FOR A SECOND CLAIM

### RICO; 18 U.S.C. §1962(d)
### *Against All Defendants*

146.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

147.    Defendants and their contractors, agents, associates and representatives conspired to commit the many predicate acts set forth above, with knowledge that such acts were in furtherance of their pattern of racketeering activity.  The substantial number of predicate acts perpetrated by the above defendants over a period of at least one (1) year amounted to continuous stream of acts of racketeering.

148.    Defendants, acting individually and in concert, shared a common motive in order to violate 18 U.S.C. § 1962(c).  As alleged above and throughout, each named defendant played a role in the dumping activity, through gaining or granting access to the Park, conducting and facilitating the dumping activity, obtaining and transporting the materials, concealing the nature of the activity from Town officers, and supplying the materials disposed of at the Park.  Pursuant

to ¶¶ 126 to 145 above, there were numerous instances of wire fraud committed by and among the defendants in order to advance the unlawful activities of the Enterprise.

149.   Defendants combined with the intent and purpose to devise, and with the intent to devise, a scheme or artifice to defraud in order to save a significant sum of money that would be associated with the proper dumping of thousands of tons of C&D debris in accordance with the law by means of false or fraudulent pretenses, representations and promises as set forth above, and for the purposes of executing such scheme or artifice or attempting to do so, transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce, writings, signs, signals, pictures and sounds, for the purposes of executing and in furtherance of said schemes or artifices to defraud, set forth herein in violation of 18 U.S.C. § 1343.

150.   By reason of the foregoing, plaintiff sustained damages in an amount exceeding $4,000,000.00, plus such other amounts to be determined at trial, to which plaintiff is entitled as well as treble damages, attorney's fees and punitive damages.

## AS AND FOR A THIRD CLAIM

### Comprehensive Environmental Response Compensation and Liability Act (Response Costs CERCLA 42 U.S.C. § 9601 et seq.)
### *Against All Defendants*

151.   Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

152.   Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section:

(1)  the owner and operator of a vessel or a facility;

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of;

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances; and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for:

(A) all costs of removal or remedial action incurred by the United States Government or a state or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary cost of response incurred by any such person consistent with the national contingency plan.

153.    Each defendant is a "person" within the meaning of § 101(21) of CERCLA, 42 U.S.C. § 9601(21).

154.    The site is a "facility" within the meaning of § 101(9) of CERCLA, 42 U.S.C. § 9601(9).

155.    There has been a "release" or "threatened release" of "hazardous substances" at the site within the meaning of § 101(22) and (14) of CERCLA, 42 U.S.C. § 9601(22) and (14).

156.    Samples of the materials disposed of by defendants at Roberto Clemente Park were taken by consultants engaged by the Suffolk County District Attorney on May 17, 2014, and by consultants engaged on behalf of the Town of Islip on April 20 and April 21, 2015.  Laboratory tests conducted on these samples showed the presence of hazardous substances listed in 40 CFR § 302.4(a), and within the meaning of 42 U.S.C. § 9601(14), including, but not limited to, mercury,

lead, nickel, zinc, arsenic, beryllium, cadmium, arochlor, chlordane, benzo[a]anthracene, benzo[a]pyrene, benzo[b]fluorathene, bis(2-Ethylhexyl)phthalate, and Dibenzo[a,h]anthracene.

157.    As a result of the release or threatened release of hazardous substances at the site, plaintiff has incurred and will continue to incur necessary costs of response consistent with the National Contingency Plan.

158.    Defendants C.J. Site Development Inc., Iglesia De Jesucristo Palabra Miel, Thomas Datre Jr., Christopher Grabe, Joseph Montuori, Brett Robinson, Nancy Alvarez, William Carillo, Raul Pachecho, Walter Casasola and Marco Lopez, are each strictly, jointly and severally liable under § 107(a)(l) of CERCLA, 42 U.S.C. § 9607(a)(l), as operators of the site at the time that hazardous substances were disposed of at the site.

159.    Defendants 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc., Datre Auto & Equipment Sales Inc., Daytree At Cortland Square Inc., Daytree Custom Builders Inc., Datre Family Farms Inc., Datre Farms Realty Co. Inc., Islandia Recycling Inc., C.J. Site Development Inc., Thomas Datre Jr., Thomas Datre Sr., Clara Datre, Richard Datre Jr., Christopher Grabe and Gia Gatien are each strictly, jointly and severally liable under § 107(a)(4) of CERCLA, 42 U.S.C. § 9607(a)(4), as persons who accepted hazardous substances for transport to the site.

160.    Defendants IEV Trucking Corp., COD Services Corp., 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc., Datre Auto & Equipment Sales Inc., Daytree At Cortland Square Inc., Daytree Custom Builders Inc., Datre Family Farms Inc., Datre Farms Realty Co. Inc., Islandia Recycling Inc., C.J. Site Development Inc., Thomas Datre Jr., Thomas Datre Sr., Clara Datre, Richard Datre Jr., Christopher Grabe, Gia Gatien, Atlas Home Improvement Corp. of Long Island and Ronald Cianciulli are each strictly, jointly and severally

liable under § 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), as persons who arranged for transport for disposal or treatment, of materials containing hazardous substances owned or possessed by such person, or by any other party or entity, at the site.

161.    John Doe defendants 1-10 are each strictly, jointly and severally liable under § 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), as persons who arranged for transport for disposal or treatment, of materials containing hazardous substances owned or possessed by such person, or by any other party or entity, at the site.

162.    The Town has also paid no less than $192,000.00 for the retention of environmental consultants to test and outline remediation plans in RC Park, as well as an additional $50,150.00 for said consultants to assess the presence of environmental contaminants at all 118 Town parks.

163.    On May 27, 2014, the Town Board for the Town of Islip adopted a resolution, subject to a permissive referendum, to issue up to $6,000,000.00 in bonds, the proceeds of which would be used for remediation and restoration at Roberto Clemente Park.

164.    Overall a total of 38,932.44 tons of C&D debris and unacceptable fill were removed from the Park in the Removal Action.  The Town continues to take actions called for in the Removal Work Plan, and expects to take further action in accordance with a final Restoration Plan to be approved by the NYSDEC.  As a result of these activities, the Town has incurred response costs in excess of $4,000,000.00, and additional costs to be established at trial, for which the defendants are liable.

165.    Subsequent to filing and service of the within complaint, pursuant to 42 U.S.C. § 9613, a copy of said complaint shall be provided to the Attorney General of the United States and to the Administrator of the Environmental Protection Agency.

166. By reason of the foregoing, plaintiff sustained damages in an amount exceeding $4,000,000.00, plus such other amounts to be determined at trial, to which plaintiff is entitled as well as attorney's fees and punitive damages.

## AS AND FOR A FOURTH CLAIM

### Comprehensive Environmental Response Compensation and Liability Act Contribution CERCLA 42 U.S.C. § 9613(f)(3)(b)
*Against All Defendants*

167. Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

168. The work undertaken and costs incurred by plaintiff Town of Islip in the removal of the contaminated fill, C&D material and other solid wastes deposited by defendants at Roberto Clemente Park, was done pursuant to a certain Revised Material Removal Work Plan approved by the New York State Department of Environmental Conservation on January 13, 2015, which constitutes an administrative settlement within the meaning of 42 U.S.C. § 9613(f)(3)(b).

169. In the alternative to plaintiff's claims for response costs pursuant to 42 U.S.C. § 9607(a) et seq., set forth above, defendants named in ¶¶ 158-161 above, on the conduct of said defendants as alleged above, are liable to plaintiff for contribution to the costs incurred by plaintiff in compliance with the Revised Material Removal Work Plan approved by the New York State Department of Environmental Conservation for the removal of materials contaminated with hazardous substances, and for the restoration of Roberto Clemente Park, pursuant to the provisions of 42 U.S.C. § 9613(f)(3)(b).

170. On May 27, 2014, the Town Board for the Town of Islip adopted a resolution, subject to a permissive referendum, to issue up to $6,000,000.00 in bonds, the proceeds of which would be used for remediation and restoration at Roberto Clemente Park.

171.    The Town has also paid no less than $192,000.00 for the retention of environmental consultants to test and outline remediation plans in RC Park, as well as an additional $50,150.00 for said consultants to assess the presence of environmental contaminants at all 118 Town parks.

172.    Overall, a total of 38,932.44 tons of C&D debris and unacceptable fill were removed from the Park in the Removal Action.  The Town continues to take actions called for in the Removal Work Plan, and expects to take further action in accordance with a final Restoration Plan to be approved by the NYSDEC.  As a result of these activities, the Town has incurred response costs in excess of $4,000,000.00, and additional costs to be established at trial, for which defendants are liable.

173.    Subsequent to filing and service of the within complaint, pursuant to 42 U.S.C. § 9613, a copy of said complaint shall be provided to the Attorney General of the United States and to the Administrator of the Environmental Protection Agency.

174.    By reason of the foregoing, plaintiff sustained damages in an amount exceeding $4,000,000.00, plus such other amounts to be determined at trial, to which plaintiff is entitled as well as attorney's fees, and punitive damages.

## AS AND FOR A FIFTH CLAIM

### PUBLIC NUISANCE
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367
### *Against All Defendants*

175.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

176.    Roberto Clemente Park is a public place, open to all members of the public, and is regularly used by a significant number of people, particularly the residents of Brentwood in the surrounding neighborhood.

177.    The actions of defendants resulted in the dumping of approximately 40,000 tons of contaminated fill, C&D debris and other solid wastes into Roberto Clemente Park, causing the closure of the Park for a significant period of time, and creating a condition threatening public health and safety.

178.    Defendants' actions have created, contributed to, and maintained a public nuisance, in that they have offended, interfered with, or caused damage to the public in the exercise of rights common to all in a manner such as to offend public morals, interfere with the use by the public of a public place, or endanger or injure the property, health, safety or comfort of a considerable number of persons.

179.    On May 27, 2014, the Town Board for the Town of Islip adopted a resolution, subject to a permissive referendum, to issue up to $6,000,000.00 in bonds, the proceeds of which would be used for remediation and restoration at Roberto Clemente Park.

180.    The Town has also paid no less than $192,000.00 for the retention of environmental consultants to test and outline remediation plans in RC Park, as well as an additional $50,150.00 for said consultants to assess the presence of environmental contaminants at all 118 Town parks.

181.    Overall, a total of 38,932.44 tons of C&D debris and unacceptable fill were removed from the Park in the Removal Action.  The Town continues to take actions called for in the Removal Work Plan, and expects to take further action in accordance with a final Restoration Plan to be approved by the NYSDEC.  As a result of these activities, the Town has incurred response costs in excess of $4,000,000.00, and additional costs to be established at trial, for which defendants are liable.

182.    By reason of the foregoing, defendants are liable to plaintiff for public nuisance in an amount to be determined at trial.

## AS AND FOR A SIXTH CLAIM

### PRIVATE NUISANCE
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367
### *Against All Defendants*

183. Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

184. Roberto Clemente Park is owned and operated by the Town of Islip, a municipal corporation of the State of New York.

185. The actions of defendants resulted in the dumping of approximately 40,000 tons of contaminated fill, C&D debris and other solid wastes into Roberto Clemente Park, causing the closure of the Park for a significant period of time, and causing the Town of Islip to expend significant sums of money to remove the material deposited by defendants, and thereby significantly interfered with the rights of the Town and its residents to use the Park for its intended purposes.

186. The actions of defendants caused a substantial interference in the use of Roberto Clemente Park, were intentional in origin and unreasonable in nature, and thereby created a private nuisance for which the Town of Islip is entitled to recover damages.

187. In the alternative, and solely to the extent that any defendant was engaged only in the construction or rehabilitation of soccer fields at Roberto Clemente Park, the actions of such defendants in the construction or rehabilitation of soccer fields were negligent, resulted in injury to the Town of Islip, and thereby created a private nuisance for which the Town of Islip is entitled to recover damages.

188.   On May 27, 2014, the Town Board for the Town of Islip adopted a resolution, subject to a permissive referendum, to issue up to $6,000,000.00 in bonds, the proceeds of which would be used for remediation and restoration at Roberto Clemente Park.

189.   The Town has also paid no less than $192,000.00 for the retention of environmental consultants to test and outline remediation plans in RC Park, as well as an additional $50,150.00 for said consultants to assess the presence of environmental contaminants at all 118 Town parks.

190.   Overall a total of 38,932.44 tons of C&D debris and unacceptable fill were removed from the Park in the Removal Action.  The Town continues to take actions called for in the Removal Work Plan, and expects to take further action in accordance with a final Restoration Plan to be approved by the NYSDEC.  As a result of these activities, the Town has incurred response costs in excess of $4,000,000.00, and additional costs to be established at trial, for which defendants are liable.

191.   By reason of the foregoing, defendants are liable to plaintiff for private nuisance in an amount to be determined at trial.

### AS AND FOR A SEVENTH CLAIM

**TRESPASS**
**Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367**
***Against All Defendants***

192.   Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

193.   Roberto Clemente Park is real property owned and used by the Town of Islip.

194.   No defendant herein was granted any right or permission to enter upon the land of the Town of Islip for the purpose of depositing contaminated fill, C&D debris and other solid wastes.

195.    No defendant herein was granted any right or permission to enter upon that portion of Roberto Clemente Park known as the "recharge basin" in the southwest quadrant of said Park for any purpose.

196.    Defendants, knowing they had no such rights or permission or justification, intentionally entered upon the land of plaintiff and deposited approximately 40,000 tons of contaminated fill, C&D debris and other solid wastes, knowing such deposition would cause damage and injury to plaintiff.

197.    On May 27, 2014, the Town Board for the Town of Islip adopted a resolution, subject to a permissive referendum, to issue up to $6,000,000.00 in bonds, the proceeds of which would be used for remediation and restoration at Roberto Clemente Park.

198.    The Town has also paid no less than $192,000.00 for the retention of environmental consultants to test and outline remediation plans in RC Park, as well as an additional $50,150.00 for said consultants to assess the presence of environmental contaminants at all 118 Town parks.

199.    Overall, a total of 38,932.44 tons of C&D debris and unacceptable fill were removed from the Park in the Removal Action.  The Town continues to take actions called for in the Removal Work Plan, and expects to take further action in accordance with a final Restoration Plan to be approved by the NYSDEC.  As a result of these activities, the Town has incurred response costs in excess of $4,000,000.00, and additional costs to be established at trial, for which defendants are liable.

200.    By reason of the foregoing, defendants are liable to plaintiff for trespass in an amount to be determined at trial.

## AS AND FOR AN EIGHTH CLAIM

### INJURY TO PROPERTY
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367
### *Against All Defendants*

201.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

202.    Roberto Clemente Park is real property owned and used by the Town of Islip.

203.    Defendants intentionally entered upon the land of plaintiff and deposited approximately 38,000 tons of contaminated fill, C&D debris and other solid wastes, knowing such deposition would cause damage and injury to plaintiff.

204.    The property of plaintiff at Roberto Clemente Park has been damaged as a result of the actions of defendants.

205.    On May 27, 2014, the Town Board for the Town of Islip adopted a resolution, subject to a permissive referendum, to issue up to $6,000,000.00 in bonds, the proceeds of which would be used for remediation and restoration at Roberto Clemente Park.

206.    The Town has also paid no less than $192,000.00 for the retention of environmental consultants to test and outline remediation plans in RC Park, as well as an additional $50,150.00 for said consultants to assess the presence of environmental contaminants at all 118 Town parks.

207.    Overall a total of 38,932.44 tons of C&D debris and unacceptable fill were removed from the Park in the Removal Action.  The Town continues to take actions called for in the Removal Work Plan, and expects to take further action in accordance with a final Restoration Plan to be approved by the NYSDEC.  As a result of these activities, the Town has incurred response costs in excess of $4,000,000.00, and additional costs to be established at trial, for which the defendants are liable.

208.    Defendants are liable to plaintiff for injury to property in an amount to be determined at trial.

## AS AND FOR A NINTH CLAIM

**JOINT TORTFEASORS**
**Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367**
*Against All Defendants*

209.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

210.    Section 1401 of the CPLR provides, in relevant part, that "two or more persons who are subject to liability for damages for the same…injury to property…may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.

211.    Each of the defendants is liable to the Town under CPLR 1401 for contribution with respect to any response or remediation costs that the Town incurred or will incur in connection with the claim set forth herein.

212.    By reason of the foregoing, defendants are liable to plaintiff as joint tortfeasors in an amount to be determined at trial.

## AS AND FOR A TENTH COUNT

### FRAUD AND DECEIT
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367
### *Against All Defendants*

213.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

214.    By reason of the course of conduct described above, defendants intentionally, or with reckless disregard for the truth, made misrepresentations and omissions of material facts and participated in a scheme to defraud plaintiff by representing to plaintiff that they would donate services in good faith when, in fact, they intended to engage in illegal dumping of C&D debris in RC Park for their own gain and advantage.

215.    At the time these defendants, their contractors, agents and employees, volunteered to rehabilitate to the soccer fields at RC Park, submitted a land clearing permit application to the Town, and offered to donate labor and materials, defendants intended to engage in such a scheme to defraud plaintiff and further misrepresented and omitted material facts in order to induce plaintiff to accept said volunteer labor and materials.

216.    When defendants made the misrepresentations and omissions, they knew or should have known that plaintiff would rely upon them.  Defendants further made the misrepresentations with the intent to induce Plaintiff to rely thereon. Defendants reasonably foresaw or should have foreseen that plaintiff would act in reliance on the information and would be injured if the representations were not accurate.

217.    After the aforementioned application and donations were submitted, approved or promised, defendants continued to misrepresent and conceal facts which enabled them to continue their unlawful conduct.

218.     Defendants had a duty to disclose their intent to use Roberto Clemente Park for the unlawful dumping of waste, and had a duty to disclose their activities in relation to same.

219.     Plaintiff justifiably relied on the false statements, misrepresentations and omissions of defendants in approving the application and permitting defendants to continue donating services and materials to rehabilitate to the soccer fields at Roberto Clemente Park.

220.     By reason of the foregoing, defendants are liable to plaintiff for fraud and deceit in an amount to be determined at trial.

<u>**AS AND FOR AN ELEVENTH CLAIM**</u>

**RESTITUTION**
**Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367**
*Against All Defendants*

221.     Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

222.     Roberto Clemente Park is real property owned and used by the Town of Islip.

223.     Defendants intentionally entered upon the land of plaintiff and deposited approximately 38,000 tons of contaminated fill, C&D debris and other solid wastes, knowing such deposition would cause damage and injury to plaintiff.

224.     The property of plaintiff at Roberto Clemente Park has been damaged as a result of the actions of defendants.

225.     Defendants, acting jointly and in concert, devised and intended to devise a scheme or artifice to defraud in order to save a significant sum of money that would be associated with the proper dumping of thousands of tons of C&D debris.

226.     Defendants failed to abate the public nuisance and/or remediate the Park after the unlawful conduct was discovered and, thus, became unjustly enriched.

227.     On May 27, 2014, the Town Board for the Town of Islip adopted a resolution, subject to a permissive referendum, to issue up to $6,000,000.00 in bonds, the proceeds of which would be used for remediation and restoration at Roberto Clemente Park.

228.     The Town has also paid no less than $192,000.00 for the retention of environmental consultants to test and outline remediation plans in Roberto Clemente Park, as well as an additional $50,150.00 for said consultants to assess the presence of environmental contaminants at all 118 Town parks.

229.     Overall a total of 38,932.44 tons of C&D debris and unacceptable fill were removed from the Park in the Removal Action.  The Town continues to take actions called for in the Removal Work Plan, and expects to take further action in accordance with a final Restoration Plan to be approved by the NYSDEC.  As a result of these activities, the Town has incurred response costs in excess of $4,000,000.00, and additional costs to be established at trial, for which defendants are liable.

230.     Defendants are liable to plaintiff for restitution in an amount to be determined at trial.

## VII.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff respectfully prays for judgment against defendants as follows:

a)     Judgment in an amount of Four Million ($4,000,000.00) Dollars, plus such other amounts to be determined at trial, including treble damages pursuant to 18 U.S.C.§ 1964(c) and compensatory and punitive damages authorized pursuant to law against all defendants, jointly and severally;

b)     Judgment in an amount of Four Million ($4,000,000.00) Dollars, plus such other amounts to be determined at trial, including treble damages pursuant to 18 U.S.C.§ 1962(d) and compensatory and punitive damages authorized pursuant to law against all defendants, jointly and severally

c)     Judgment in an amount of Four Million ($4,000,000.00) Dollars, plus such other amounts to be determined at trial, for response costs and/or contribution pursuant to 42 U.S.C. §§ 9607(a) and 9613(f)(3)(b);

d)     Judgment in an amount of Four Million ($4,000,000.00) Dollars, plus such other amounts to be determined at trial, for damages suffered as a result of the creation and the cost of abatement of a public nuisance;

e)     Judgment in an amount of Four Million ($4,000,000.00) Dollars, plus such other amounts to be determined at trial, for damages suffered as a result of the creation and the cost of abatement of a private nuisance;

f)     Judgment in an amount of Four Million ($4,000,000.00) Dollars, plus such other amounts to be determined at trial, for trespass and damage to property of the Town;

g)     Judgment in an amount of Four Million ($4,000,000.00) Dollars, plus such other amounts to be determined at trial, for intentional injury to property;

h)     Judgment in an amount of Four Million ($4,000,000.00) Dollars, plus such other amounts to be determined at trial, for fraud and deceit;

i)     Judgment in an amount of Four Million ($4,000,000.00) Dollars, plus such other amounts to be determined at trial, for restitution;

j)     Judgment in an amount of Four Million ($4,000,000.00) Dollars, plus such other amounts to be determined at trial, for contribution to the costs incurred by plaintiff for the removal of construction and demolition debris, contaminated fill and hazardous substances from the lands of the Town at Roberto Clemente Park;

k)      Pre- and post-judgment interest, to the fullest extent assessable at law or in equity, on all amount of damages;

l)      Judgment declaring each defendant's liability for future response costs regarding the Park pursuant to 28 USC § 2201 and CPLR 3001;

m)      Reasonable attorney's fees, costs and expenses pursuant to 18 U.S.C. § 1964(c) and otherwise to the extent permitted by law; and

n)      Such other relief this Court deems just and proper.

**JURY TRIAL DEMANDED**


**DATED:**      April 29, 2016
               Holbrook, NY


                                GERMANO & CAHILL, P.C.


                                By:    Michael J. Cahill
                                       G. William Germano, Jr.
                                       *Attorneys for Plaintiff*
                                       4250 Veterans Memorial Highway
                                       Suite 275
                                       Holbrook, NY  11741
                                       (631) 588-8778