UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
TOWN OF ISLIP,

                                 Plaintiff,

                     -against-

THOMAS DATRE JR., THOMAS DATRE SR., CLARA
DATRE, CHRISTOPHER GRABE, IGLESIA DE
JESUCRISTO PALABRA MIEL, MARCO LOPEZ,
NANCY ALVAREZ, WILLIAM CARILLO, RAUL
PACHECHO, WALTER CASASOLA, 5 BROTHERS
FARMING CORP., DFF FARM CORP., DATRE
TRUCKING & FARMING INC., DATRE AUTO &
EQUIPMENT SALES INC., DAYTREE AT CORTLAND
SQUARE INC., DAYTREE CUSTOM BUILDERS INC.,
DATRE FAMILY FARMS INC., ISLANDIA
RECYCLING INC., C.J. SITE DEVELOPMENT INC.,
IEV TRUCKING CORP., COD SERVICES CORP.
JOSEPH MONTUORI, 96 WYTHE ACQUISITION LLC,
LOUISIANA PURCHASE LLC, 61 PARK PLACE LLC,
MD KOHN REALTY II LLC, 4111 18TH AVENUE LLC,
COOPER AND 6TH PROPERTY LLC, THE CLASSON
IN CLINTON LLC, CHEN 867 REALTY LLC, STAHAV
REALTY CORP., BRONXCARE HEALTH SYSTEM,
CENTRAL BUSHWICK LLC, JOHN KHANI, SUSAN
KHANI, and John Does No. 1 through John Doe No. 10,

                               Defendants.

------------------------------------------------------------------------X

**Index No.:**   **16-CV-2156
(MKB)(LB)**

**SECOND
AMENDED COMPLAINT**

      The TOWN OF ISLIP, by and through its attorneys, Germano & Cahill, P.C., for its

Complaint against Thomas Datre Jr., Thomas Datre Sr., Clara Datre, Christopher Grabe, Iglesia

De Jesucristo Palabra Miel, Marco Lopez, Nancy Alvarez, William Carrillo, Raul Pachecho,

Walter Casasola, 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc.,

Datre Auto & Equipment Sales Inc., Daytree At Cortland Square Inc., Daytree Custom Builders

Inc. Datre Family Farms Inc., Islandia Recycling Inc., C.J. Site Development Inc., IEV Trucking

Corp., COD Services Corp., 96 Wythe Acquisition LLC,  Louisiana Purchase LLC, 61 Park Place

LLC, MD Kohn Realty II LLC, 4111 18th Avenue LLC, Cooper And 6th Property LLC, The

Classon In Clinton LLC, Chen 867 Realty LLC, Bronxcare Health System, Stahav Realty Corp.,

John Khani, Susan Khani, Central Bushwick LLC, and John Does Nos. 1 through 10 allege on

information and belief as follows:

## I.

## PRELIMINARY STATEMENT

1.      This is a civil action for the recovery of money damages, fees and costs, and special

damages pursuant to the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962,

1964, et al.), the Comprehensive Environmental Response, Compensation and Recovery Act (42

U.S.C. § 9601, et seq.) and the laws of the State of New York and common law.  Plaintiff seeks to

recover costs that it has incurred and will incur to remediate property in response to the unlawful

dumping of construction and demolition (C&D) debris and fill contaminated with hazardous

substances, as defined in 42 U.S.C. § 9601(14), in Roberto Clemente Park, located in the Town of

Islip, County of Suffolk, State of New York (hereinafter the "Park" or "Site").  Plaintiff also seeks

a judgment declaring each defendant's liability for future response costs regarding the Park,

pursuant to 28 USC § 2201 and § 3001 of the Civil Practice Laws and Rules of the State of New

York.

2.      The within action is brought by the Town of Islip pursuant to New York Town Law

§ 65, authorizing the Town Board for the Town of Islip to bring an action or special proceeding

for the Town's benefit or protection, to enforce any liability created, or to recover damages for any

injury to property or rights for which defendants are liable.

3.      Roberto Clemente Park is located at 400 Broadway Avenue, Brentwood, New

York, and is owned by the Town of Islip.  Commencing in or about May 2013, and continuing

through on or about May 2014, the named defendants engaged in a course of conduct to obtain, transport, deliver and unlawfully dispose of approximately 38,000 tons of C&D debris, contaminated fill and other solid wastes at Roberto Clemente Park.  The course of conduct engaged in by defendants gives rise to liability under the various counts set forth below.  Each of the named defendants played a role in the dumping activity, through gaining or granting access to the Park, conducting the dumping activity, arranging and transporting the materials, concealing the nature of the activity from Town officers and supplying the materials disposed of at the Park.  As a result of the defendants' course of conduct, the plaintiff Town incurred over $4 million in costs to remove the material and will incur additional expense to restore and repair the damage done to the Park. As a result of defendants' activity, the Park has been closed and its use denied to the public for a period of more than three (3) years.

4.     The Town now seeks to recover its costs to remove contaminated materials from the Park, remediate environmental injuries caused by defendants, repair damage to the Park caused by defendants and to restore the Park to its previous condition pursuant to the statutory and common law claims described below.

## II.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b).

6.     Plaintiff further invokes supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a) to hear and decide any and all related claims arising under State law.

7.     Venue in the Eastern District of New York is proper because the real property is located within this district and the acts alleged occurred within this district.

8.      The claims for violations of 18 U.S.C. §§ 1961-1965 arose within this district, in that, among other things, defendants conspired to act and acted in this district, causing injury to plaintiff.

9.      A copy of the initial complaint was provided to the Attorney General of the United States and to the Administrator of the United States Environmental Protection Agency (EPA), pursuant to 42 U.S.C. § 9613(1).

## III.

## PARTIES

10.      Plaintiff Town of Islip was and is a municipal corporation duly organized under the laws of the State of New York.  The Town of Islip owns the subject parklands known as Roberto Clemente Park, located at 400 Broadway Avenue, Brentwood, NY 11717.

11.      Defendant Thomas Datre Jr. was and is, upon information and belief, an officer and owner of 5 Brothers Farming Corp., Datre Auto & Equipment Sales Inc., Datre Trucking & Farming Inc. and DFF Farm Corp. He resides, upon information and belief, at 168 Jefferson Avenue, Saint James, NY 11780.

12.      Defendant Thomas Datre Sr. was and is, upon information and belief, an officer and owner of DFF Farm Corp., Daytree Custom Builders Inc. and Daytree at Cortland Square Inc. He resides, upon information and belief, at 3 Gianna Court, Hauppauge, NY 11788.

13.      Defendant Clara Datre was and is, upon information and belief, an officer and owner of DFF Farm Corp., Daytree Custom Builders Inc. and Daytree at Cortland Square Inc. She resides, upon information and belief, at 3 Gianna Court, Hauppauge, NY 11788.

14.      Defendant Christopher Grabe was and is, upon information and belief, an officer and owner of Islandia Recycling Inc. and C.J. Site Development Inc.  He resides, upon information and belief, at 28 Howard Drive, Coram, NY 11727.

15.     Defendant Iglesia De Jesucristo Palabra Miel is, upon information and belief, a non-profit entity and religious organization located at 155 Alkier Street, Brentwood, NY 11717, whose officers, members and representatives include defendants Nancy Alvarez, William Carillo, Raul Pachecho, Walter Casasola and Marco Lopez.

16.     Defendant Marco Lopez was and is, upon information and belief, the pastor for Iglesia De Jesucristo Palabra Miel.  Defendant Lopez resides at 11 Cinnamon Street, Central Islip, NY 11722.

17.     Defendant Nancy Alvarez was and is, upon information and belief, an officer, representative and/or member of the congregation of defendant Iglesia De Jesucristo Palabra Miel. Defendant Alvarez resides at 3 Prospect Street, Central Islip, NY 11722.

18.     Defendant William Carillo was and is, upon information and belief, an officer, representative and/or member of the congregation of defendant Iglesia De Jesucristo Palabra Miel. Defendant Carillo resides at 4405 Expressway Drive N., Ronkonkoma, NY 11779.

19.     Defendant Raul Pachecho was and is, upon information and belief, an officer, representative and/or member of the congregation of defendant Iglesia De Jesucristo Palabra Miel. The location of his residence is not yet known.

20.     Defendant Walter Casasola was and is, upon information and belief, an officer, representative and/or member of the congregation of defendant Iglesia De Jesucristo Palabra Miel. The location of his residence is not yet known.

21.     Defendants Iglesia De Jesucristo Palabra Miel, Nancy Alvarez, Raul Pachecho, William Carillo, Walter Casasola and Marco Lopez (hereinafter referred to collectively as the "Church Defendants") each acted in concert with each other and with other defendants herein to

unlawfully dispose, or cause or permit the unlawful disposal, of C&D debris, contaminated fill and other solid wastes at Roberto Clemente Park, as more fully set forth below.

22.     Defendant 5 Brothers Farming Corp. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 1442 Clauverie Road, Middleburgh, NY 12122.

23.     Defendant DFF Farm Corp. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 1442 Clauverie Road, Middleburgh, NY 12122.

24.     Defendant Datre Trucking & Farming Inc. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 1442 Clauverie Road, Middleburgh, NY 12122.

25.     Defendant Datre Auto & Equipment Sales Inc. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 1442 Clauverie Road, Middleburgh, NY 12122.

26.     Defendant Daytree At Cortland Square Inc. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 2150 5th Avenue, Suite C, Ronkonkoma, NY 11779.

27.     Defendant Daytree Custom Builders Inc. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 2150 5th Avenue, Suite C, Ronkonkoma, NY 11779.

28.     Defendant Datre Family Farms Inc. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 2459 Ocean Avenue, Suite B, Ronkonkoma, NY 11779.

29.     Defendants 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc., Datre Auto & Equipment Sales Inc., Daytree At Cortland Square Inc., Daytree Custom Builders Inc., Thomas Datre Jr., Thomas Datre Sr., and Clara Datre (hereinafter referred to collectively as the "Datre Defendants") each acted in concert with each other and with other defendants herein to unlawfully dispose, or cause or permit the unlawful disposal, of C&D debris, contaminated fill and other solid wastes at Roberto Clemente Park, as more fully set forth below.

30.     Defendant Islandia Recycling Inc. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 161 Grand Boulevard, Brentwood, NY 11717.  Islandia Recycling Inc. is owned or controlled by defendant Christopher Grabe.

31.     Defendant C.J. Site Development Inc. is, upon information and belief, a corporation organized under the laws of the State of New York with an office located at 28 Howard Drive, Coram, NY 11727.

32.     Defendants Islandia Recycling Inc., C.J. Site Development Inc., and Christopher Grabe (hereinafter collectively referred to as the "Grabe Defendants") each acted in concert with each other and with other defendants herein to unlawfully dispose, or cause or permit the unlawful disposal, of C&D debris, contaminated fill and other solid wastes at Roberto Clemente Park, as more fully set forth below.

33.     Defendant IEV Trucking Corp. is, on information and belief, a New York corporation with offices located at 14 Jackson Avenue, Brentwood, NY 11717, and additionally maintained offices at 36-2 Rice Court, Medford, NY 11763, during the time period relevant to this action.

34.     Defendant COD Services Corp. is, on information and belief, a New York corporation with offices at 21 Claridge Circle, Manhasset, NY 11030.

35.     Defendant 96 Wythe Acquisition LLC (d/b/a The Williamsburg Hotel) is a New York limited liability company with a last known address of 1274 49th Street, Unit 184, Brooklyn, NY 11219, with hotel operations at 96 Wythe Street Brooklyn, NY, and was, at all relevant times, the owner of real property located at 96 Wythe Street, Brooklyn, NY, also known as 59 North 10th Street, Brooklyn, NY, Tax Block 2295, Tax Lots 21, 28, and 29.  Defendant 96 Wythe Acquisition LLC acquired title to 96 Wythe Street by deed dated June 29, 2012, and undertook to demolish an existing warehouse on the property through a permit obtained from the New York Department of Buildings on September 21, 2012, and thereafter to erected a commercial building used as a hotel on the property through a permit obtained from the New York Department of Buildings on May 30, 2013.  GPS records of Datre vehicles show 64 trips from 96 Wythe Street to Roberto Clemente Park over the period August 2013 through April 2014. On information and belief, the source being the statements of Thomas Datre Jr. and Christopher Grabe, these trips were for the purpose of collecting waste materials at 96 Wythe Street and disposing of said wastes at Roberto Clemente Park.

36.     Defendant Louisiana Purchase LLC is a  New York limited liability company with offices at 158-13 72nd Avenue, Flushing, NY, and was, at all relevant times, the owner of real property located at 636 Louisiana Avenue, Brooklyn, NY, Tax Block 8235, Tax Lot 140. Defendant Louisiana Purchase LLC acquired title to 636 Louisiana Avenue by confirmatory deed dated June 29, 2012, and undertook to erect a four story, 174-unit assisted living facility on the property through a permit obtained from the New York Department of Buildings on June 3, 2013. GPS records of Datre vehicles show 25 trips from 636 Louisiana Avenue to Roberto Clemente

Park over the period August 2013 through April 2014. On information and belief, the source being the statements of Thomas Datre Jr. and Christopher Grabe, these trips were for the purpose of collecting waste materials at 636 Louisiana Avenue and disposing of said wastes at Roberto Clemente Park.

37.     Defendant 61 Park Place LLC is a New York limited liability company with offices at 124 Amity Street, Suite 1, Brooklyn, NY 11201 and was, at all relevant times, the owner of real property located at 65 Park Place, Brooklyn, NY, Tax Block 938, Tax Lot 1401-1402.  Defendant 61 Park Place LLC acquired title to 61-65 Park Place by deed dated June 14, 2012, and undertook to erect a five story, residential condominium structure on the property through a permit obtained from the New York Department of Buildings on August 5, 2013.  GPS records of Datre vehicles show 31 trips from 61-65 Park Place to Roberto Clemente Park over the period August 2013 through April 2014. On information and belief, the source being the statements of Thomas Datre Jr. and Christopher Grabe, these trips were for the purpose of collecting waste materials at 61-65 Park Place and disposing of said wastes at Roberto Clemente Park.

38.     Defendant MD Kohn Realty II LLC is a New York limited liability company with offices at 13 Christopher Avenue, Brooklyn, NY 11212 and was, at all relevant times, the owner of real property located at 121 Liberty Avenue, Brooklyn, NY, Tax Block 3676, Tax Lot 30. Defendant MD Kohn Realty II LLC acquired title to 121 Liberty Avenue by deed dated June 10, 2009, and undertook to erect a one-story, mercantile warehouse structure on the property through a permit obtained from the New York Department of Buildings on August 6, 2013.  GPS records of Datre vehicles show 13 trips from 121 Liberty Avenue to Roberto Clemente Park over the period August 2013 through April 2014. On information and belief, the source being the statements of

Thomas Datre Jr. and Christopher Grabe, these trips were for the purpose of collecting waste materials at 121 Liberty Avenue and disposing of said wastes at Roberto Clemente Park.

39.     Defendant 4111 18th Avenue LLC is a New York limited liability company with offices at 5301 and/or 5310 17th Avenue, Brooklyn, NY 11218 and was, at all relevant times, the owner of real property located at 158 Franklin Avenue, Brooklyn, NY, Tax Block 1912, Tax Lot 35.  Defendant 4111 18th Avenue LLC acquired title to 158 Franklin Avenue by deed dated November 22, 2010, and undertook to excavate a foundation for, and construct a five-story residential building on the property through permits obtained from the New York City Department of Buildings on April 4, 2012 and thereafter.  GPS records of Datre vehicles show 5 trips from 158 Franklin Avenue to Roberto Clemente Park over the period August 2013 through April 2014. On information and belief, the source being the statements of Thomas Datre Jr. and Christopher Grabe, these trips were for the purpose of collecting waste materials at 158 Franklin Avenue and disposing of said wastes at Roberto Clemente Park.

40.     Defendant Cooper and 6th Property LLC is a New York limited liability company with offices c/o 40 Arun Bhatia Development Organization, 500 West 43rd Street, Suite 39A, New York, NY, 10036, and was, at all relevant times, the owner of real property located at 35 Cooper Square, New York, NY, Tax Block 461, Tax Lot 6.  Defendant Cooper and 6th Property LLC acquired title to 35 Cooper Square by deed dated October 20, 2010, and undertook to erect a 13-story, residential structure on the property through a permit obtained from the New York Department of Buildings on December 5, 2013.  GPS records of Datre vehicles show 17 trips from 35 Cooper Square to Roberto Clemente Park over the period August 2013 through April 2014. On information and belief, the source being the statements of Thomas Datre Jr. and Christopher Grabe,

these trips were for the purpose of collecting waste materials at 35 Cooper Square and disposing of said wastes at Roberto Clemente Park.

41.     Defendant The Classon in Clinton LLC is a New York limited liability company with offices at 101 Broadway, Suite 501  Brooklyn, NY 11211, and/or 109 South 5th Street, Suite 400, Brooklyn, N.Y. 11249 and was, at all relevant times, the owner of real property located at 516 Classon Avenue, Brooklyn, NY, Tax Block 1993, Tax Lot 33.  Defendant The Classon in Clinton LLC acquired title to 516 Classon Avenue by deed dated May 29, 2013, and undertook to erect eight three-story, residential structures on the property through permits obtained from the New York Department of Buildings in November 2013 and subsequent dates. GPS records of Datre vehicles show two trips from 516 Classon Avenue to Roberto Clemente Park over the period August 2013 through April 2014. On information and belief, the source being the statements of Thomas Datre Jr. and Christopher Grabe, these trips were for the purpose of collecting waste materials at Classon Avenue and disposing of said wastes at Roberto Clemente Park.

42.     Defendant Chen 867 Realty LLC is a New York limited liability company with offices at 148-25 59th Avenue, Flushing, NY 10036, and was, at all relevant times, the owner of real property located at 867 45th Street, Brooklyn, NY, Tax Block 742, Tax Lot 48.  Defendant Chen 867 Realty LLC acquired title to 867 45th Street by deed dated February 1, 2013, and undertook to demolish an existing house and garage, and thereafter erect a four-story residential structure on the property through a demolition permit and new building permits obtained from the New York Department of Buildings on July 11, 2013 and thereafter.  GPS records of Datre vehicles show two trips from 867 45th Street to Roberto Clemente Park over the period August 2013 through April 2014. On information and belief, the source being the statements of Thomas Datre Jr. and

Christopher Grabe, these trips were for the purpose of collecting waste materials at 35 Cooper Square and disposing of said wastes at Roberto Clemente Park.

43.     Defendants John Khani and Susan Khani are the owners of 32 Sinclair Drive (Section 1, Block 150; Lot 17) in Kings Point, New York.  Defendants acquired title to 32 Sinclair Drive prior to July 2013, and on July 2, 2013 received permits from the Village of Kings Point to demolish an existing residential structure and build a new residential structure together with a new sanitation system.  During the course of construction an underground oil tank was removed.  GPS records of Datre vehicles show 70 trips from 32 Sinclair Drive to Roberto Clemente Park over the period August 2013 through April 2014. On information and belief, the source being the statements of Thomas Datre Jr. and Christopher Grabe, these trips were for the purpose of collecting waste and fill materials at 32 Sinclair Drive and disposing of said wastes and fill at Roberto Clemente Park.

44.     Defendant Bronxcare Health System is a New York not-for-profit corporation, formerly known as the Bronx Lebanon Hospital Center Corp. with offices at 1650 Grand Concourse, Bronx, NY 10457, and was, at all relevant times, the owner of real property located at 199 Mt. Eden Parkway, Bronx NY, Tax Block 2824, Tax Lot 19.  Defendant Bronxcare Health System, formerly known as Bronx Lebanon Hospital Center Corp., acquired title to 199 Mt Eden Parkway by deed dated August 10, 1981 and undertook to construct a nine-story medical facility on the property through permits and other approvals obtained from the New York City Department of Buildings on July 16, 2009 and thereafter.  On information and belief, the source being the New York City Department of Buildings website, work performed between May 2013 and May 2014 included boiler and fuel storage construction. GPS records of Datre vehicles show two trips from 199 Mt. Eden Parkway to Roberto Clemente Park over the period August 2013 through April 2014.

On information and belief, the source being the statements of Thomas Datre Jr. and Christopher Grabe, these trips were for the purpose of collecting waste materials at 199 Mt. Eden Parkway and disposing of said wastes at Roberto Clemente Park.

45.    Defendant Stahav Realty Corp. is a New York domestic corporation with offices located at 210-08 Northern Blvd, Bayside, NY 11361, and a Department of State process address of 862 68th Street, Brooklyn, NY 11220, and was, at all relevant times, the owner of real property located at 210-04 Northern Blvd, also known as 209-43 45th Road, Queens, NY, Tax Block 7309, Tax Lots 21, 22, and 39.  Defendant Stahav Realty Corp. acquired title to 210-04 Northern Blvd, also known as 209-43 45th Road, by deed dated January 28, 1993 and undertook to construct a two-story extension to an existing building through permits and other approvals obtained from the New York City Department of Buildings on April 15, 2013 and thereafter.  GPS records of Datre vehicles show nine trips from 210-04 Northern Blvd, also known as 209-43 45th Road, Queens, to Roberto Clemente Park over the period August 2013 through April 2014. On information and belief, the source being the statements of Thomas Datre Jr. and Christopher Grabe, these trips were for the purpose of collecting waste materials at 210-04 Northern Blvd, also known as 209-43 45th Road, Queens, and disposing of said wastes at Roberto Clemente Park.

46.    Defendant Central Bushwick LLC is a New York limited liability company with offices at 329 Hewes Street, Brooklyn, NY, 11211, and was, at all relevant times, the owner of real property located at 587-599  Central Ave. Brooklyn, N.Y. Tax Block 3423, Tax Lots 3, 4, 5, 6, 7, 8, 9, 10, 110, and 12. Defendant Central Bushwick LLC acquired title to 587-599 Central Avenue, Brooklyn, NY by deed dated May 29 2013, and undertook to construct 10 three-story residential apartment structures on the property through permits  and approvals obtained from the New York City Department of Buildings on June 24, 2013 and thereafter.  GPS records of Datre

vehicles show 16 trips from 587-599 Central Ave to Roberto Clemente Park over the period August 2013 through April 2014. On information and belief, the source being the statements of Thomas Datre Jr. and Christopher Grabe, these trips were for the purpose of collecting waste materials at 35 Cooper Square and disposing of said wastes at Roberto Clemente Park.

47. Defendants John Doe No. 1 through John Doe No. 10 are entities or individuals whose identities are currently unknown to plaintiff, but on information and belief, are known to defendants, who knowingly, negligently or otherwise generated and provided all or part of the C&D debris, contaminated fill or other solid wastes to the other defendants for unlawful disposal at Roberto Clemente Park, or arranged, aided or assisted the other defendants in the unlawful disposal of contaminated fill, C&D and other solid wastes at Roberto Clemente Park. The actual number of entities or individuals constituting the "John Doe" defendants is unknown at this time.

## IV.
## CRIMINAL ACTIONS

48. In April 2014, a criminal investigation was commenced by the Suffolk County District Attorney's Office into the unlawful disposal of fill at Roberto Clemente Park and other locations within Suffolk County. On or about December 8, 2014, a Suffolk County Grand Jury returned indictments (Suffolk County Court Case Numbers I-2708A-2014 through I-2708J-2014) charging defendants 5 Brothers Farming Corp., Daytree At Cortland Square Inc., Datre Family Farms Inc., DFF Farms Corporation, Datre Jr., Datre Sr., and Grabe, with a variety of criminal offenses.

49. Defendants 5 Brothers Farming Corp. and Daytree at Cortland Square, Inc. were each charged with 27 different crimes, including five (5) counts of Criminal Mischief in the Third Degree (NYS Penal Law § 145.10), a Class D Felony for damage to Roberto Clemente Park (2

counts), and damage to property located at 1625 Islip Avenue, Central Islip, New York, property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York, and property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York; 14 counts of Endangering Public Health Safety or the Environment in the Third Degree (NYS ECL § 71-2712), a Class E Felony for release to the environment of an acutely hazardous substance at Roberto Clemente Park (5 counts) and similar releases at property located at 1625 Islip Avenue, Central Islip, New York (3 counts), property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York (3 counts) and property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York (3 counts); four (4) counts of Endangering Public Health Safety or the Environment in the Fourth Degree (NYS ECL § 71-2711), a Class A Misdemeanor for release to the environment of an acutely hazardous substance at Roberto Clemente Park (2 counts), and similar releases at property located at 1625 Islip Avenue, Central Islip, New York (1 count), and property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York (1 count); four (4) counts of Operating An Illegal Solid Waste Management Facility Without a Permit (NYS ECL § 71-2703(2)(c)(i), a Class A Misdemeanor at Roberto Clemente Park and property located at 1625 Islip Avenue, Central Islip, New York, property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York, and property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York.

50.     Defendant Thomas Datre Jr. was charged with 29 different crimes, including five (5) counts of Criminal Mischief in the Third Degree (NYS Penal Law § 145.10), a Class D Felony for damage to Roberto Clemente Park (2 counts), and damage to property located at 1625 Islip

Avenue, Central Islip New York (1 count), property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York (1 count), and property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York (1 count); 14 counts of Endangering Public Health Safety or the Environment in the Third Degree (NYS ECL § 71-2712), a Class E Felony for release to the environment of an acutely hazardous substance at Roberto Clemente Park (5 counts), and property located at 1625 Islip Avenue, Central Islip, New York (3 counts), property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York (3 counts), and property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York (3 counts); four (4) counts of Endangering Public Health Safety or the Environment in the Fourth Degree (NYS ECL § 71-2711), a Class A Misdemeanor for release to the environment of an acutely hazardous substance at Roberto Clemente Park (2 counts), and property located at 1625 Islip Avenue, Central Islip, New York (1 count), property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York (1 count); four (4) counts of Operating An Illegal Solid Waste Management Facility Without a Permit (NYS ECL § 71-2703(2)(c)(i), a Class A Misdemeanor at Roberto Clemente Park (2 counts) and property located at 1625 Islip Avenue, Central Islip, New York (1 count), property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York (1 count), and property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York (1 count); and one (1) count of engaging in regulated activity without a fresh water wetlands permit in violation of NYS ECL § 71-2303(2), a violation if a first offense, at property known to the Grand Jury as the "Masie Property" located in the Town of Babylon, New York.

51.     Defendant Christopher Grabe was charged with 17 different crimes, including three (3) counts of Criminal Mischief in the Third Degree (NYS Penal Law § 145.10), a Class D Felony for damage to Roberto Clemente Park (2 counts), and damage to property at property located at 1625 Islip Avenue, Central Islip, New York;  eight (8) counts of Endangering Public Health Safety or the Environment in the Third Degree (NYS ECL § 71-2712), a Class E Felony for release to the environment of an acutely hazardous substance at Roberto Clemente Park (5 counts), and similar releases at property located at 1625 Islip Avenue, Central Islip, New York (3 counts); three (3) counts of Endangering Public Health Safety or the Environment in the Fourth Degree (NYS ECL § 71-2711), a Class A Misdemeanor for release to the environment of an acutely hazardous substance at Roberto Clemente Park (2 counts), and a similar release at property located at 1625 Islip Avenue, Central Islip, New York; three (3) counts of Operating An Illegal Solid Waste Management Facility Without a Permit (NYS ECL § 71-2703(2)(c)(i), a Class A Misdemeanor at Roberto Clemente Park (2 counts) and property located at 1625 Islip Avenue, Central Islip, New York (1 count).

52.     Defendant Datre Family Farms Inc. was charged with 11 different crimes, including two (2) counts of Criminal Mischief in the Third Degree (NYS Penal Law § 145.10), a Class D Felony for damage to Roberto Clemente Park; five (5) counts of Endangering Public Health Safety or the Environment in the Third Degree (NYS ECL § 71-2712), a Class E Felony for release to the environment of an acutely hazardous substance at Roberto Clemente Park; two (2) counts of Endangering Public Health Safety or the Environment in the Fourth Degree (NYS ECL § 71-2711), a Class A Misdemeanor for release to the environment of an acutely hazardous substance at Roberto Clemente Park; and two (2) counts of Operating An Illegal Solid Waste Management Facility Without a Permit (NYS ECL § 71-2703(2)(c)(i), a Class A Misdemeanor at Roberto

Clement Park.Defendant DFF Farms Corporation was charged with six (6) different crimes, including one (1) count of Criminal Mischief in the Third Degree (NYS Penal Law § 145.10), a Class D Felony, for damage to property located at 1625 Islip Avenue, Central Islip, New York; three (3) counts of Endangering Public Health Safety or the Environment in the Third Degree (NYS ECL § 71-2712), a Class E Felony for release to the environment of an acutely hazardous substance at property located at 1625 Islip Avenue, Central Islip, New York; one (1) count of Endangering Public Health Safety or the Environment in the Fourth Degree (NYS ECL § 71-2711), a Class A Misdemeanor for release to the environment of an acutely hazardous substance at property located at 1625 Islip Avenue, Central Islip, New York; and one (1) count of Operating An Illegal Solid Waste Management Facility Without a Permit (NYS ECL § 71-2703(2)(c)(i), a Class A Misdemeanor at property located at 1625 Islip Avenue, Central Islip, New York.

53.    Defendant Thomas Datre Sr. was charged with five (5 ) crimes, including one (1) count of Criminal Mischief in the Third Degree (NYS Penal Law §145.10), a Class D Felony for damage to property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York; three (3) counts of Endangering Public Health Safety or the Environment in the Third Degree (NYS ECL § 71-2712), a Class E Felony for release to the environment of an acutely hazardous substance at property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York; one (1) count of Endangering Public Health Safety or the Environment in the Fourth Degree (NYS ECL § 71-2711), a Class A Misdemeanor for release to the environment of an acutely hazardous substance at property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York; and one (1) count of Operating An Illegal Solid Waste Management Facility Without a Permit (NYS ECL § 71-2703(2)(c)(i)), a Class A Misdemeanor at

property known to the Grand Jury as the "Veteran's Way Property" located in the Village of Islandia, Town of Islip, New York.

54.     Joseph Montuori, former Town of Islip Commissioner of the Department of Parks, Recreation and Cultural Affairs, and Brett Robinson, former Secretary to the Town of Islip Commissioner of the Department of Parks, Recreation and Cultural Affairs, were each indicted and charged with 12 crimes, including  five (5) counts of Endangering Public Health Safety or the Environment in the Third Degree (NYS ECL §71-2712), a Class E Felony for release to the environment of an acutely hazardous substance at Roberto Clemente Park; two (2) counts of Endangering Public Health Safety or the Environment in the Fourth Degree (NYS ECL §71-2711), a Class A Misdemeanor for release to the environment of an acutely hazardous substance at Roberto Clemente Park; two (2) counts of Operating An Illegal Solid Waste Management Facility Without a Permit (NYS ECL §71-2703(2)(c)(i), a Class A Misdemeanor at Roberto Clemente Park; two (2) counts of Official Misconduct in violation of N.Y.S Penal Law §195.00 in unlawfully permitting, attempting to conceal and failing to take action to stop the unlawful disposal of solid waste and unsuitable materials in Roberto Clemente Park; and one (1) count of Conspiracy in the Sixth Degree in violation of NYS Penal Law §105.00, a Class B Misdemeanor,  in conspiring, each with the other, to conceal their commission of the offense of Official Misconduct in connection with the disposal of contaminated fill materials and C&D debris at Roberto Clemente Park.

55.     In addition, individual defendants Datre Sr., Clara Datre, Grabe and other corporate defendants were indicted and charged in December 2014 with a variety of financial crimes including failure to pay prevailing wages and income tax offenses not directly related to the dumping of contaminated fill at Roberto Clemente Park.

56.     Following arraignment of the defendants under Indictment No. 2708A-J-2014 before the Hon. Fernando Camacho in the County Court of Suffolk County, New York, Criminal Term on December 8, 2014, separate trials were ordered for different defendants.  On February 10, 2016, a jury trial was commenced on the charges against defendants Datre Sr., Datre Jr., 5 Brothers Farming Corporation., Daytree At Cortland Square Inc., Datre Family Farms Inc. and DFF Farms Corporation.

57.     On March 30, 2016, trial proceedings were halted and a disposition was reached.

58.     Defendant Datre Jr. pleaded guilty to four (4) Class E Felony counts and four (4) Class A Misdemeanor counts contained in Indictment No. 2708A-2014, specifically:

a.      to Count 6 of Indictment 2708A-2014, Endangering Public Health Safety and the Environment in the Third Degree, in violation of Environmental Conservation Law § 71-2712, a Class E Felony, in that, acting in concert with others, between May 2013 and April 2014, he recklessly disposed of more than 2,000 pounds of aggregate weight of a hazardous substance that he trucked to and deposited in the soccer field area at Roberto Clemente Park;

b.      to Count 10 of Indictment 2708A-2014, in violation of Environmental Conservation Law § 71-2703(2)(c)(i), a Class A Misdemeanor, that acting in concert with others, between May 2013 and April 2014, he commenced operation of a solid waste management facility in the soccer field area  at Roberto Clemente Park, without obtaining a permit for such facility from the New York State Department of Environmental Conservation, which activity resulted in the release of more than 70 cubic yards of solid waste into the environment;

c.      to Count 18 of Indictment 2708A-2014, Endangering Public Health Safety and the Environment in the Third Degree, in violation of Environmental Conservation Law § 71-2712, a Class E Felony, in that, acting in concert with others, between April 2013 and April 2014, he

recklessly disposed of more than 2,000 pounds of aggregate weight of a hazardous substance that he trucked to and deposited in a property located at 1625 Islip Avenue, Central Islip, New York;

      d.     to Count 20 of Indictment 2708A-2014, in violation of Environmental Conservation Law § 71-2703(2)(c)(i), a Class A Misdemeanor, that acting in concert with others, between April 2013 and April 2014, he commenced operation of a solid waste management facility, a property located at 1625 Islip Avenue, Central Islip New York without obtaining a permit for such facility from the New York State Department of Environmental Conservation, which activity resulted in the release of more than 70 cubic yards of solid waste into the environment;

      e.     to Count 24 of Indictment 2708A-2014, Endangering Public Health Safety and the Environment in the Third Degree, in violation of Environmental Conservation Law § 71-2712, a Class E Felony, in that, acting in concert with others, specifically with defendant Ronald Cianciulli, between March 2014 and April 2014, he recklessly disposed of more than 2,000 pounds of aggregate weight of a hazardous substance that he trucked to and deposited at a property known as the "Masie Property" located in the Town of Babylon, Suffolk County, New York;

      f.     to Count 26 of Indictment 2708A-2014, in violation of Environmental Conservation Law § 71-2703(2)(c)(i), a Class A Misdemeanor, that acting in concert with others, specifically with defendant Ronald Cianciulli, between March 2014 and April 2014, he commenced operation of a solid waste management facility at a property known as the "Masie Property" located in the Town of Babylon, Suffolk County, New York, without obtaining a permit for such facility from the New York State Department of Environmental Conservation, which activity resulted in the release of more than 70 cubic yards of solid waste into the environment;

g.      to Count 29 of Indictment 2708A-2014, Endangering Public Health Safety and the Environment in the Third Degree, in violation of Environmental Conservation Law § 71-2712, a Class E Felony, in that, acting in concert with others, between July 2013 and December 2013, he recklessly disposed of more than 2,000 pounds of aggregate weight of a hazardous substance that he trucked to and deposited at a property known as the "Veteran's Way Property" located in the Town of Islip, Suffolk County, New York; and

h.      to Count 32 of Indictment 2708A-2014, in violation of Environmental Conservation Law § 71-2703(2)(c)(i), a Class A Misdemeanor, that acting in concert with others, between July 2013 and December 2013, he commenced operation of a solid waste management facility at a property known as the "Veteran's Way Property" located in the Town of Islip, Suffolk County, New York, without obtaining a permit for such facility from the New York State Department of Environmental Conservation, which activity resulted in the release of more than 70 cubic yards of solid waste into the environment.

59.      Defendant 5 Brothers Farming Corp. entered pleas of guilty, through its counsel to counts 6, 8, 18, 24 and 31 of Indictment 2708G-2014.  These pleas were to four (4) counts (6, 18, 24 and 31) of Endangering Public Health Safety and the Environment in the Third Degree, in violation of Environmental Conservation Law §71-2712, each Class E Felonies, for reckless disposal of more than 2,000 pounds of aggregate weight of a hazardous substance at Roberto Clemente Park, 1625 Islip Avenue, Central Islip, the "Maisie Property" in the Town of Babylon and the "Veteran's Way Property" in the Town of Islip, and one (1) count of Endangering Public Health Safety and the Environment in the Fourth Degree, in violation of Environmental Conservation Law § 71-2711, a Class A Misdemeanor, for reckless disposal of a hazardous

substance, asbestos, at Roberto Clemente Park.  At the plea, defendant Thomas Datre Jr. identified himself as a principal of 5 Brothers Farming Corp.

60.     Defendant Christopher Grabe appeared in this disposition and entered pleas of guilty:

a.     to Count 6 of Indictment 2708B-2014, Endangering Public Health Safety and the Environment in the Third Degree, in violation of Environmental Conservation Law § 71-2712, a Class E Felony, in that, acting in concert with others, between May 2013 and April 2014, he recklessly disposed of more than 2,000 pounds of aggregate weight of a hazardous substance that he trucked to and deposited in the soccer field area at Roberto Clemente Park; and

b.     to Count 18 of Indictment 2708B-2014, Endangering Public Health Safety and the Environment in the Third Degree, in violation of Environmental Conservation Law § 71-2712, a Class E Felony, in that, acting in concert with others, between April 2013 and April 2014, he recklessly disposed of more than 2,000 pounds of aggregate weight of a hazardous substance that he trucked to and deposited at 1625 Islip Avenue, Central Islip, New York.

61.     Defendant Grabe also entered a plea of guilty at this time to Criminal Tax Fraud in the Fourth Degree under Indictment No 1300-2015.

62.     Defendant corporation Daytree At Cortland Square Inc. entered a plea of guilty to a charge in count 46 of Indictment 2716-2014 of willful failure to pay prevailing wage to workers in a contract unrelated to the dumping at Roberto Clemente Park.

63.     In entering pleas under Indictment 2708A and B-2014, counsel for defendants stipulated to the laboratory reports indicating the presence of hazardous substances in the materials dumped at Roberto Clemente Park, and the other locations identified in the indictment.

64.     In remarks to the court, the District Attorney stated that under the terms of the dispositions, the People would move to dismiss the remaining charges against these defendants and the other defendants named in Indictment 2708-2014 at sentencing, in satisfaction of the guilty pleas.

65.     On August 17, 2016 Joseph Montuori pleaded guilty to one count of Endangering Public Health Safety and the Environment in the Third Degree, in violation of Environmental Conservation Law § 71-2712, a Class E Felony, and one count of Conspiracy in the 6th degree, a Class B misdemeanor in satisfaction of all charges. The court agreed to reduce the felony conviction entered by Montuori to a misdemeanor at sentencing if he cooperated in the rehabilitation of Roberto Clemente Park.

66.     On August 17, 2016 Brett Robinson pleaded guilty to one count of creating a hazardous or physically offensive condition by any act under Penal Law § 240.20(7), a violation. He was sentenced to a conditional discharge.

67.     Upon information and belief, sentencing occurred on April 27, 2017 before Judge Camacho with the following results:

a.      Datre Jr. pleaded guilty to four counts of Endangering the Public Health Safety or Environment, all Class E Felonies, in connection with dumping debris at four sites, including Roberto Clemente Park. He was sentenced to one year in jail;

b.      Christopher Grabe pleaded guilty to two felonies in connection with his role in the dumping scheme alleged herein. He was sentenced to 30 days in jail, five months of community service, and five years of probation;

c.      5 Brothers Farming Corp. pleaded guilty to four felonies. It was sentenced to pay a fine in the sum of $600,000.00;

     d.     Ronald Cianciulli's sentencing was deferred to a later date; and

     e.     the charges lodged against Thomas Datre Sr. were dropped in satisfaction of the pleas outlined above.

## V.

## <u>FACTUAL ALLEGATIONS</u>

**A.**    **Sources of Factual Allegations Alleged on Information and Belief**

68.    In the course of the investigation by the Office of the Suffolk County, New York, District Attorney, into illegal dumping at Roberto Clemente Park, the District Attorney executed search warrants and seized business records from the office of defendants named in the indictment described above.  In addition, the District Attorney obtained, via judicial subpoena, records and logs of telephone calls made and received on specific telephone numbers used by defendants Thomas Datre Jr., Christopher Grabe, Joseph Montuori and Brett Robinson.  Copies of some or all of these records were provided to defendants in the criminal case described above.

69.    On April 22, 2015, defendants Thomas Datre Sr., Clara Datre and Daytree At Cortland Square Inc. filed an action in the United States District Court for the Eastern District of New York against the Town of Islip and individual officers and employees of the Town, for deprivation of civil rights under color of state law, pursuant to 42 U.SC. §1983, case number CV-15 2298.

70.    In the course of discovery in that matter, the plaintiffs responded to the Town defendants' document requests by providing materials, including business records, phone logs, Global Positioning System (GPS) data for vehicles used to collect waste materials, and statements of individual criminal defendants, that had been provided to them as defendants in the criminal case by the Suffolk County District Attorney.  The records so provided are the basis, among other

sources, for the factual allegations contained herein.  Other sources of factual allegations herein are statements and interviews with Town employees and other individuals, laboratory test results, reports and information of consulting engineers and the public records of the State of New York, the County of Suffolk and the Town of Islip.

71.    Additional sources of information herein are the plea allocutions of defendants Thomas Datre Jr. and Christopher Grabe, and the trial testimony of witnesses who were called at the trial of defendants Thomas Datre Jr., Thomas Datre Sr., 5 Brothers Farming Corporation, Daytree At Cortland Square Inc., DFF Farms Inc. and Datre Family Farms Inc.

72.    Further information as to the factual allegations herein was provided to counsel for plaintiff by Thomas Datre Jr., Christopher Grabe, and Joseph Montuori in sworn statements made in interviews conducted in July, November and December 2016.

73.    Notwithstanding the substantial amount of information acquired in the preparation of this complaint, other information relevant and supportive of the allegations contained herein remains exclusively within the control and custody of defendants, or within the custody of the Suffolk County District Attorney, but is expected to be produced in discovery or upon the conclusion of the criminal proceedings.

**B.    Delivery of Construction and Demolition Debris and Contaminated Fill to the Park**

74.    Roberto Clemente Park, formerly known as Timberline Park, is designated parkland owned by the Town of Islip in Brentwood, New York.

75.    For several years prior to May 2013, the Town of Islip had granted permission to various persons and organizations to host soccer games on weekends at a field located in the northwest quadrant of Roberto Clemente Park.  These games were popular in the local community

and drew significant numbers of spectators and participants.  As a result, the condition of the field deteriorated due to regular use and resultant wear and tear.

76.     In or around April 2013, Iglesia De Jesucristo Palabra Miel (the "Church"), through defendants Nancy Alvarez and Marco Lopez, reached out to the Town of Islip (the "Town") and requested permission to rehabilitate the soccer fields in the northwest quadrant of Roberto Clemente Park through placement of topsoil and grass seed on the existing surface.  At that time, the Church Defendants represented that the rehabilitation would be performed by volunteer members of the Church congregation and users of the field.

77.     Acting on the ostensible representations of the Church defendants, Joseph Montuori, then Commissioner of the Town of Islip Department of Parks, Recreation and Cultural Affairs (hereinafter "Parks Department"), permitted the Church to begin work in or around May 2013 at the Church's sole cost and expense.  This permission was granted without a written agreement, schedule, plans and specifications, insurance, performance bond or Town Board authorization.

78.     On April 20, May 6, and May 14, 2013 representatives of the Church purchased topsoil and clean fill from Stone Co Materials in Medford, N.Y. for delivery to the Park.  A total of 149 cubic yards of soil and fill were purchased for a total price of $1,990.00. On May 20, 2013 representatives of the Church purchased seventeen 25 pound bags of grass seed from DeLalio Sod Farms, Dix Hills N.Y. for $525.47 for use at the Park.  Both  Stone Co Materials and DeLalio Sod Farms are retail sellers of topsoil, clean fill and seed.

79.     On May 5, 2013, Islip Town Park Ranger Brendan Kearns reported that two individuals were observed spreading topsoil and grass seed over approximately two-thirds of the soccer field at Roberto Clemente Park.  Ranger Kearns also observed a dump truck and bobcat

present at the site.  One of the individuals identified himself to Ranger Kearns as Victor Garcia, who said he was with the Church and that he was told that the Church had permission to work there by defendant Nancy Alvarez.

80.     On May 13, 2013, defendant Nancy Alvarez sent a communication via email to Brett Robinson, Secretary to Parks Commissioner Joseph Montuori, stating that the Church had run out of topsoil, and asked if the Town could contribute approximately 60 cubic yards of topsoil to complete the project.  Robinson responded that he would inquire.

81.     Upon information and belief, the source being the statements of Christopher Grabe and Thomas Datre and trial testimony of William Carrillo, in or about May 2013, defendant William Carillo approached defendant Grabe at a site located at 1625 Islip Avenue, Central Islip, N.Y.  The Grabe and Datre defendants were at that time operating an illegal solid waste disposal facility at that site, using that site to receive waste materials from New York City, and to screen and store fill material which was later determined to contain hazardous substances.  Defendants Carillo and Grabe arranged for Grabe to personally deliver approximately 15 truckloads of fill material to Roberto Clemente Park, at no cost to the Church, in or about late May or June 2013, which the members of the Church spread on the soccer field.

82.     With this agreement to obtain 15 truckloads of fill at no cost, the Church defendants knew that the fill did not come from a legitimate seller of clean fill and topsoil, and knew, or should have known, that the materials contained or could contain solid waste and hazardous substances.  By receiving and spreading this material over the 149 cubic yards of topsoil and grass seed previously purchased and placed on the soccer field, the Church abandoned its purported project to improve the soccer field, and commenced an association with the Datre and Grabe defendants to unlawfully receive and dispose of solid wastes and contaminated fill materials on the field.

83.     Upon information and belief, the source being the statements of Grabe and Datre Jr., approximately two weeks after the delivery of 15 initial loads of fill, defendants Grabe and Datre Jr. met with members of the Church at the Park and agreed to provide additional fill materials, heavy equipment and labor to continue work on the field, all without cost to the Church. Shortly after this meeting, the Datre and Grabe defendants began direct deliveries to the Park of contaminated fill material, C&D debris, and other solid wastes obtained from Generator defendants through arrangements made by the Broker defendants (COD and IEV). In making this agreement with Datre Jr. and Grabe, the Church defendants knew or should have known that the materials to be provided by Datre Jr. and Grabe would be similar to the materials previously delivered by Grabe from the site at 1625 Islip Ave, Central Islip N.Y.

84.     Upon information and belief, the source being a statement given by Brett Robinson to the Suffolk County Police Department, defendant Nancy Alvarez called Brett Robinson in late June 2013 to say that the Church had engaged defendant Islandia Recycling to finish the work at the Park and that the soccer field would be broken into two fields, one for adults and one for the children of the Church to play on.

85.     Upon information and belief, the source being the statements of Christopher Grabe and Thomas Datre Jr., and invoices and business records of the Broker defendants, during the period June-August 2013, the Datre and Grabe defendants delivered thousands of tons of fill material to the Park, dumping and spreading said material over the topsoil and seed previously deposited by Church volunteers in May. As alleged in ¶ 106 below, the trucks used by the defendants to deliver the fill were registered to defendants Thomas Datre Sr., Clara Datre, and the corporations they owned and operated.

86.     Upon information and belief, in the period between May and September 2013, defendants Montuori and Robinson became aware that the Church defendants and the Datre defendants were acting in concert to deliver thousands of tons of fill material to Roberto Clemente Park.  Montuori and Robinson were, or should have been, aware that the Church and Datre defendants were no longer engaged in the repair and re-seeding of the former soccer field, but took no action to halt the activity, or to test or evaluate the material being delivered.

87.     On August 24, 2013, a press conference was held by the Parks Department and other Town officials to provide information to the public about the renovations being prepared for the Roberto Clemente Park Pool.  During the press conference, recorded through photographs and noted by the media, trucks marked "Datre" were observed delivering fill to the site of the soccer field at Roberto Clemente Park.

88.     Following the press conference and the observation of vehicles delivering fill, Town Board members and officers other than those employed by the Parks Department, made inquiries regarding the activity and were informed by Montuori and Robinson that a church group was volunteering to repair the soccer field at the Park.  It was determined by the Town Attorney and Planning Director that a permit was required for clearing and grading at the Park, and that the consent and approval of the Town Board would be necessary to accept any improvements to the Park performed by the Church defendants.  Montuori and Robinson, acting at the direction of the Town Attorney, requested the Church, though not the Datre defendants, to provide information for a land clearing permit, together with a letter from the Church offering its services and describing the work to be done at the site.

89.     Upon information and belief, the source being the statement of Brett Robinson to the Suffolk County Police Department, on the day after the press conference, Robinson met with

defendant Grabe, and a member of the Church working under the direction of Grabe, at the Park. At that meeting Robinson informed Grabe that a site plan would have to be prepared and submitted.

90.     Upon information and belief, the source being the statements of Christopher Grabe and an oral statement of Jose Tavares, following the Parks Department request to the Church for information in support of a land clearing permit, defendant Christopher Grabe contacted Jose Tavares, an architect, by telephone, and requested that Mr. Tavares prepare a site drawing of the soccer fields to submit to the Town with the land clearing permit information.

91.     In making the request for a site drawing, Mr. Grabe advised Mr. Tavares that he was doing *pro bono* work at Roberto Clemente Park on behalf of the Church, and that the Town needed a "layout" of the proposed soccer fields.

92.     On or about August 26, 2013, Mr. Tavares met with Mr. Grabe at Roberto Clemente Park and subsequently prepared a site drawing, dated August 30, 2013, indicating the proposed location of the soccer fields within the Park, as described by Mr. Grabe.  The drawing prepared by Mr. Tavares described an "adult" and a smaller "youth" soccer field in the northwest quadrant of Roberto Clemente Park.  The drawing did not indicate grades of elevation, specifications of fill material or stormwater drainage features.  Mr. Grabe paid Mr. Tavares $500.00 for the site drawing, which Mr. Tavares gave to Mr. Grabe, with the understanding that it would be submitted to the Town of Islip.

93.     On August 29, 2013, the Church transmitted to the Parks Department, by telephone facsimile (fax), a letter signed by defendant Marco Lopez and addressed to Town of Islip Parks Commissioner Joseph Montuori.  The letter was dated August 10, 2013.  The letter stated that the congregation of Iglesia De Jesucristo Palabra Miel has been working on the "Ball Field" at Roberto Clemente Park, without pay, since April 2013, and appreciated the opportunity to do so as an

improvement to the community.  Montuori and Robinson circulated this letter to the Office of the Town Attorney and other officials of the Town.

94.     The contents of the letter signed by defendant Marco Lopez dated August 10, 2013 and transmitted by fax to the Town on August 29, 2013 were false, and intended to mislead the Town into an assumption that improvements at the Park were being contributed solely by members of the Church congregation, and to conceal the nature and origin of the materials being deposited at the Park, and the  involvement of the Datre, Grabe, Broker and Generator defendants in supplying fill materials.

95.     On information and belief, the sources being the statements of Brett Robinson to the Suffolk County Police Department, and the statement of Thomas Datre Jr. the Church defendants continued to provide labor to the Datre and Grabe defendants at least through August 2013 and agreed to provide collars for drain covers on the soccer field.

96.     By August 2013, the Datre and Grabe defendants, acting in concert with the IEV, COD, Generator and Church defendants, were in the process of unlawfully delivering several thousand tons of contaminated fill, C&D debris and other solid wastes to Roberto Clemente Park.

97.     On August 30, 2013, Mr. Grabe submitted, on behalf of the Church, the site drawing prepared by Mr. Tavares to the Town, where it was circulated to the Planning Department and the Parks Department for use in the preparation of an application for a land clearing and grading permit.  The site drawing depicting future soccer fields as submitted by Mr. Grabe was false, and was intended by Mr. Grabe and the other defendants herein to mislead and induce the Town into accepting a purported gift of services from the Church for the rehabilitation of soccer fields at Roberto Clemente Park.  In fact, the site drawing was intended and used to conceal the continued

and future use of the Park as an illegal dumping ground for contaminated fill, C&D debris and other solid wastes delivered by or on behalf of defendants.

98.     On September 10, 2013, in reliance upon the letter of defendant Marco Lopez dated August 10, 2013 and transmitted August 29, 2013, and upon the site drawing prepared by Jose Tavares and submitted by defendant Christopher Grabe on August 30, 2013, and upon the representations of defendants Montuori and Robinson that the project was under the direction of the Church, the Town Board of the Town of Islip passed a Resolution permitting the Church to perform rehabilitation of the deteriorating soccer fields at Roberto Clemente Park.

99.     The Town Board Resolution limited the scope of work to spreading topsoil and re-seeding the adult and youth soccer fields, and accepted a donation from the Church consisting of labor and materials for the rehabilitations of the fields.

100.    On September 6, 2013, at the direction of Montuori and Robinson, in reliance upon the letter of defendant Marco Lopez dated August 10, 2013 and transmitted August 29, 2013, and upon the site drawing prepared by Jose Tavares and submitted by defendant Christopher Grabe on August 30, 2013, the Parks Department submitted an application for a Land Clearing and Grading permit to the Town of Islip Planning Department.

101.    On September 12, 2013, the Planning Department for the Town of Islip, in reliance upon the application submitted by the Department of Parks, Recreation and Cultural Affairs, and upon the site drawing prepared by Jose Tavares and submitted by defendant Christopher Grabe, issued a Land Clearing and Grading Permit for work at Roberto Clemente Park to the Parks Department.

102.    On September 6, 2013, defendant Christopher Grabe was photographed by Newsday photographer Joseph D. Sullivan, standing directly next to the soccer fields at Roberto

Clemente Park.  In the background are a bulldozer, pay loader and tractor, all located upon the Roberto Clemente Park soccer fields.  According to the Newsday article, Christopher Grabe was quoted as having donated approximately $70,000.00 in labor and materials to assist a local church (defendant Iglesia de Jesucristo Palabra Miel) in leveling and seeding the field.

103.    At or about the time of the Town Board's Resolution of September 10, 2013, and the Planning Department's issuance of a Land Clearing and Grading permit on September 12, 2013, deliveries of fill material to the Park temporarily ceased.  As of September 13, 2013, as seen in an aerial photograph taken on that date and posted on the Google Earth website, the entire area of the soccer field is buried under a layer of new fill material, and this fill material is extended into the wooded areas bordering the soccer field to the north and west.  No work was performed to seed or otherwise restore the area for use as a soccer field.

104.    Defendant Nancy Alvarez testified at the criminal trial of defendants Thomas Datre Sr. and Thomas Datre Jr. on February 26, 2016, that she and another Church member named "Roberto" met with defendants Joseph Montuori and Brett Robinson of the Parks Department in October 2013.  The subject of the meeting was the work at the soccer field at Roberto Clemente Park.  Defendant Alvarez testified that a problem with the work was a lack of irrigation to allow grass to grow on the field, but that she was "shocked" at the materials placed on the field by Grabe and that no work had been performed since September.

105.    On November 18, 2013, defendants William Carillo, Raul Pacheco and Walter Casasola, as representatives of the Church, transmitted, via telephone facsimile (fax), a letter on Church stationery signed by each of them, addressed to Town of Islip Parks Commissioner Joseph Montuori.  The fax was delivered to Parks Secretary Brett Robinson.  The letter was dated October 22, 2013.

106.    The letter stated that the congregation of Iglesia De Jesucristo Palabra Miel has been working on the "Ball Field" at Roberto Clemente Park, without pay, since April 2013.  The October 22, 2013 letter also stated that work had stopped due to the concern of the Church that grass would not grow without irrigation of the field.  The letter proposed that the Church would resume work and provide "an estimate" if the Town would agree to provide water to the site.

107.    At the time that this letter was transmitted to Parks Secretary Robinson, the approved budget of the Parks Department contained no funding or authorization for the provision of an irrigation system at Roberto Clemente Park, and at no time was any contract or work order issued by the Town for any such system.  The October 22, 2013 letter from the Church defendants threatened that work at the soccer field would not be resumed. Had this threat been carried out, the soccer field would have not have been usable in 2014 without funds appropriated by the Town Board, and to secure those funds, the unauthorized acts of Montuori and Robinson would have been exposed.  Shortly after the transmission of this letter, on November 18, 2013, dumping of C&D debris, contaminated fill and other solid wastes at the Park resumed, and expanded to a new area in the Park, without any Town Board authorization.

108.    On November 21, 2013, Park Ranger Brendan Kearns observed that approximately 70 piles of "rocky dirt" had been deposited on the soccer field.  Public Safety Field Report TI-002745-13 indicates that the dirt was unscreened and contained large boulders.  After interviewing a driver, Park Ranger Kearns determined that the driver was employed by "Datre," "telephone number 676-7200."  The report indicates that the driver stated that he was told by his boss to drop the aforementioned fill at the Park.  The report also stated that "Per a coles directory search, telephone number 631-676-7200 is an Optimum Lightpath business number issued to defendant corporation "Datre Family Farms." According to New York State Department of State, Division

of Corporations, Datre Family Farms shares an address with defendant Daytree At Cortland Square Inc., 2150 5th Avenue, Ronkonkoma, New York, and, on information and belief has the same president and officers, including defendants Clara Datre and Thomas Datre Sr.

109.     On November 30, 2013, Park Ranger Kearns observed that additional debris had been deposited in the "recharge" area in Roberto Clemente Park, to the south of the soccer field. The "recharge" area was originally graded and landscaped as an "amphitheater" for entertainment purposes when the Park was designed and constructed in the early 1980s.  Despite its designation as a "recharge area," it provides no drainage function to any other area of the Park.  This area had not been the site of any previous dumping, and had not been referenced in the Town Board resolution of September 10, 2013, or the Land Clearing and Grading permit issued to the Parks Department on September 12, 2013, as the site of any "donated" labor, improvement or rehabilitation.

110.     In mid-January 2014, the Town began to receive reports from parents and elected officials advising of dangerous conditions for children attempting to sled on the slopes of the "recharge area" after a snowfall.  Parents reported the presence of brick, metal, rebar and other debris in the basin.  Town personnel confirmed the presence of these materials, as well as heavy earth moving equipment in the basin on January 23, 2014, and the Park was closed on that date.

111.     On January 24, 2014, Montuori met with other Town officials with respect to the conditions at Roberto Clemente Park.  Montuori denied knowledge of debris or fill in the basin at the Park, but stated that he would contact the persons responsible to remove the material. Following this meeting, the Office of the Islip Town Attorney issued a letter to Marco Lopez and the Church ordering that the Church cease and desist all work in the recharge area on the south side of Roberto Clemente Park, and immediately remove all fill material deposited in the recharge

area.  Although the Town Attorney addressed its direction to the Church, the Datre defendants mobilized at the recharge area to commence removal on the same day.

112.    On January 24-25, 2014, in an operation directed personally by Christopher Grabe and witnessed by Town of Islip personnel, the Datre defendants removed over 27 truckloads of C&D debris, contaminated fill and other solid wastes from the recharge area at Roberto Clemente Park.

113.    Upon information and belief, the Datre defendants transported a portion of the solid waste from Roberto Clemente Park to a nearby location at 1625 Route 111, Brentwood, New York, which is a site leased and/or occupied by defendant Datre Jr.  Other material removed from the basin was transported to property owned by Atlas Asphalt and Ronald Cianciulli at 117 Brook Avenue, Deer Park, New York.  On information and belief, the material taken from Roberto Clemente Park was moved by Atlas Asphalt and Ronald Cianciulli from 117 Brook Avenue to other property used and occupied by Atlas Asphalt and Ronald Cianciulli (the "Maisie Property" referred to in the indictment of Ronald Cianciulli) at 175 Brook Avenue, Deer Park, New York in April 2014.   Defendants did not have the permission of the owner to deposit this material at 175 Brook Avenue.

114.    On January 27, 2014, Montuori reported to the Office of the Town Supervisor that all dumped material had been removed from the recharge basin at the Park.  However, not all C&D debris, contaminated fill and other solid wastes were removed from the recharge area.  Surveys subsequently indicated that approximately 3,000 cubic yards of C&D debris, contaminated fill and other solid wastes remained after removal on January 24-25, 2013.

115.    On information and belief, the source being an oral statement of Jose Tavares and information provided by the Suffolk County Police Department, on February 3, 2014, defendant

Christopher Grabe again telephoned architect Jose Tavares.  In this communication, Grabe requested Tavares to prepare another drawing of Roberto Clemente Park, showing a layout of two (2) additional soccer fields located over the recharge area, fields which could only be constructed if the basin were filled.  Grabe did not inform Tavares that the basin was partially filled with debris. Mr. Tavares prepared the drawing without visiting the site, and delivered the drawing to defendant Grabe on or about February 7, 2014, with the understanding that Grabe would submit the drawing to the Town of Islip.  It is not known whether, or when, the drawing was submitted to any department or individual in the Town.  As of the date of this complaint, the drawing is in the possession of the Office of the Suffolk County District Attorney.

116.    On March 24, 2014, while Park Ranger Brendan Kearns was opening gates to Roberto Clemente Park he observed five (5) "Datre" tractor trailers waiting on the road outside the Park.  After opening the gates, the trucks entered the Park and proceeded to drop what appeared to be topsoil on the soccer fields.  The soil dropped was being spread on top of existing material that had been delivered previously.  The previously-deposited material contained large quantities of broken glass, crushed cement, large stones and clay.  Surveillance video recorded by the Town on March 24, 2014 by a camera at the entrance to Roberto Clemente Park, shows at least three (3) separate tractor trailers with a "DATRE" logo on the driver's side door of the cab, entering the Park.

117.    On April 9, 2014 at 4:30 p.m., New York State Department of Environmental Conservation Officer Hull observed Daytree At Cortland Square Inc. employee Oscar H. Ventura operating a 2000 Ford dump truck bearing New York license plate number 25673MD at Roberto Clemente Park.  Per New York State Department of Motor Vehicles, this dump truck is green in color and registered to "Daytree At Courtland," 2150 5th Avenue, Ronkonkoma, New York  11779.

Daytree at Cortland Square Inc. vehicles were also observed by Town employees being operated at the Park on the same date. On information and belief, defendants Clara Datre and Thomas Datre Sr. are the presiding officers and/or president of defendant Daytree at Cortland Square Inc.

118.    In April 2014, the Office of the Suffolk County District Attorney commenced an investigation into the unlawful dumping of C&D debris and illegal fill at Roberto Clemente Park and other locations in the County of Suffolk, including properties located in Central Islip, the Village of Islandia and Deer Park.

## C.    Clean-up of the Park

119.    Soil tests of samples taken from the Park, conducted at the direction of the Suffolk County District Attorney, revealed the presence of hazardous substances, including, but not limited to, asbestos, pesticides and heavy metals in the materials deposited by defendants in Roberto Clemente Park, in amounts in excess of allowable concentrations in soil under New York law.

120.    In response to the findings that hazardous substances were found in the fill materials disposed of at Roberto Clemente Park, the Town of Islip undertook a removal action under the supervision of the New York State Department of Environmental Conservation (NYSDEC), in accordance with the provisions of 40 CFR § 300.415.  In its removal action, the Town prepared a Material Removal Work Plan which was published and posted on the Town website, together with regular community updates and other information in accordance with the National Contingency Plan.  The NYSDEC solicited and accepted comments on the Material Removal Work Plan, held a public hearing on the Plan in October 2014, and approved the Plan on January 13, 2015.  The Plan called for the removal of all materials delivered to the site over the May 2013-May 2014 period, and identified portions of the material that required disposal at landfills located outside of

Long Island and materials that could be disposed of at the Blydenburgh Landfill owned and operated by the Islip Resource Recovery Agency.

121.    Prior to the commencement of removal activity, additional samples of the material deposited at the soccer field and recharge basin at Roberto Clemente Park were taken on behalf of the Town.  Tests conducted on these samples revealed the presence of asbestos and hazardous substances listed in 40 CFR § 302.4(a), as set forth in paragraph 185, below.

122.    Removal activities were commenced in June 2015 by a contractor engaged by the Town, under supervision of the NYSDEC, in accordance with the health and safety provisions established in the Work Plan.  The contractor proceeded in accordance with topographical surveys provided by the Town and updated by the contractor to remove all materials deposited above the original elevation of the soccer field and recharge area.  On reaching the original elevation area, end point samples were taken to confirm that all contaminated fill had been removed.  End-point sampling was taken at stages of removal in July and August 2015, and removal activities were completed in September 2015.  The Town's consultants prepared a Removal Action Report which was submitted to the NYSDEC on September 29, 2015.  NYSDEC directed the Town to prepare a restoration plan for the Park, including continued groundwater monitoring and other measures, which is in preparation as of the date of this action.

123.    Overall, a total of 38,932.44 tons of C&D debris and unacceptable fill were removed from the Park in the Removal Action.  The Town continues to take actions called for in the Removal Work Plan, and expects to take further action in accordance with a final Restoration Plan to be approved by the NYSDEC.  As a result of these activities, the Town has incurred response costs in excess of $4,000,000.00, and additional costs to be established at trial, for which defendants are liable, as set forth below.

124.     On May 27, 2014, the Town Board for the Town of Islip adopted a resolution, subject to a permissive referendum, to issue up to $6,000,000.00 in bonds, the proceeds of which would be used for remediation and restoration at Roberto Clemente Park.

125.     The Town has also paid no less than $192,000.00 for the retention of environmental consultants to test and outline remediation plans in the Park, as well as an additional $50,150.00 for said consultants to assess the presence of environmental contaminants at all 118 Town parks.

**D.     Sources and Delivery of the Materials Disposed of at the Park**

126.     The sources of the contaminated C&D debris and fill disposed of in Roberto Clemente Park were the properties owned and controlled by 96 Wythe Acquisition LLC, Louisiana Purchase LLC, 61 Park Place LLC, MD Kohn Realty II LLC, 4111 18th Avenue LLC, Cooper And 6th Property LLC, The Classon In Clinton LLC,, Chen 867 Realty LLC, Bronxcare Health System, Stahav Realty Corp., 4111 18th Avenue, LLC., John and Susan Khani, and John Doe #1 -10.  (hereinafter referred to collectively as the "Generator" defendants).  The properties of each of the Generator defendants that were sources of materials delivered to the Park are described in paragraphs 36-49, above.

127.     The identities of the sites and owners of the properties became known to the plaintiff following an investigation performed by the office of the Attorney General of the State of New York.  The results of that investigation were revealed with the filing of a complaint by Basil Seggos as Commissioner of the New York State Department of Environmental Conservation and the State of New York against defendants Thomas Datre Jr., Christopher Grabe, Five Brothers Farming Corp., Datre at Cortland Square, IEV Trucking Corp, COD Services Corp and twenty-eight building and/or excavation contractors for natural resource damages arising from the illegal disposal of  solid waste and contaminated fill at Roberto Clemente Park in violation of 42 U.S.C

§§ 9601-9675 (CERCLA).  This complaint was filed in the U.S. District Court for the Eastern District of New York on May 4, 2017 and is entitled  *Seggos, et al v Datre, et al*  Case Number 2:17-cv-2684. It remains pending before Judge Sandra J. Feuerstein of this court.

128.   Prior to the filing of this action, plaintiff was unable to identify the owners or contractors who had contracted with the IEV and COD defendants for waste service.  Customer lists were not provided by the IEV and COD defendants in discovery, no testimony as to origin of the material was presented in the criminal trial of Datre Jr., Grabe and Datre Sr., and statements given to plaintiff by Thomas Datre Jr. and Christopher Grabe following that trial were not specific enough to identify either specific contractors or property owners.  However, the State complaint identified property locations and contractors and plaintiffs were able to research New York City and Village of Kings Park building department and property records to identify the Generator defendants named in this complaint.

129.   Materials delivered to the Park were transported by the Datre defendants through arrangements made by the Generator defendants with Broker defendants IEV Trucking Corp. and COD Services Corp.  The Broker defendants arranged for the Datre defendants to collect the materials at the Generator properties and dispose of that material for a fee paid by the Broker defendants to the Datre defendants.   On information and belief, the Generator defendants paid a fee to the Broker defendants for the services arranged with the Datre defendants.    The fee paid by the Generator defendants is unknown to plaintiff,  but is known by the Broker and Generator defendants.

130.   Records of the IEV, COD and Datre defendant corporations establish that during the period June 2013 through April 2014, the IEV and COD defendants paid over $600,000.00 to Datre related entities DFF Farm Corp, Datre Trucking & Farming Inc., Daytree At Cortland Square

Inc., Datre Family Farms Inc., 5 Brothers Farming Corp., other persons or entities, and variants of the names of such entities, for the pickup and removal of materials from different locations in the New York metropolitan area.

131. On information and belief, the sources being the statements of Thomas Datre Jr. and Christopher Grabe, the invoices sent by the Datre defendants to the Broker defendants for the collection of the materials delivered to the Park did not include any cost for lawful disposal. In rare instances where the Datres were directed to deliver loads to NYSDEC permitted landfills, disposal charges were paid directly by the Broker who arranged the transaction.

132. Checks were made out by IEV Trucking and COD Services to numerous entities to satisfy invoices prepared by the Datre defendants for pick-ups made. Entities or persons receiving checks in satisfaction of invoices included "DFF" (4 checks for a total of $62,500.00); "DFF Inc." (5 checks for a total of $65,879.00) "DFF Corp." (1 check for $8.925.00); "DFF Farm Corp" (14 checks for a total of $225,797.51); "DFF Farm Inc." (1 check for $12,950.00); "DFF Farm" (12 checks for a total of $106,475.00); "Datre at Courtland Square" (1 check for $7,430.00); "Daytree at Cortland Square" (2 checks for a total of $21,800.00); "Datre Trucking and Farming" (5 checks for a total of $30,200.00), and simply "Datre" (11 checks for a total of $138,728.00).

133. The records indicate that Defendant 5 Brothers Farming Corp began billing both IEV Trucking and COD Services Corp for loads picked up in New York City after August 1, 2014, and after deliveries of materials to Roberto Clemente Park had ceased. However, on information and belief, the source being the statements of Thomas Datre Jr., four of the trucks which made deliveries to Roberto Clemente Park were registered to 5 Brothers Farming Corp, and "two or three" to Daytree at Cortland Square Inc. In addition, one truck observed dumping material at the Park on November 21, 2013 by Park Ranger Kearns carried the telephone number of defendant

Datre Family Farms on its doors.  Defendant 5 Brothers Farming Corp., as set forth above, entered pleas of guilty to unlawful dumping at Roberto Clemente Park.

134.    Corporate defendants 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc., Datre Auto & Equipment Sales Inc., Daytree At Cortland Square Inc., Daytree Custom Builders Inc., and Datre Family Farms Inc. are owned or controlled by defendants Thomas Datre Jr., Thomas Datre Sr. and Clara Datre and maintain offices and operate from the same two addresses at 1442 Clauverie Road, Middleburgh, NY 12122 and 2459 Ocean Avenue, Ronkonkoma, NY 11779.

135.    The corporate defendants owned or controlled by defendants Thomas Datre Jr., Thomas Datre Sr. and Clara Datre acted in concert to collect C&D debris and fill materials in New York City and King's Point, NY under arrangements made with IEV Trucking Corp and COD Services Corp, to invoice IEV Trucking Corp and COD Services Corp for those services, and to receive payment from IEV Trucking Corp and COD Services Corp for those services. In total, IEV paid the Datre defendants over $417,000.00 for 759 loads of materials, and the COD defendants paid the Datre defendants over $245,000.00 for 476 loads of materials.

136.    The Datre defendants sent IEV and COD invoices for the pickup and removal of over 1,200 separate loads, which, if all loads averaged 35 cubic yards each, totaled over 43,000 cubic yards.  On information and belief, the source being the statements of Thomas Datre Jr., all of the materials that were delivered to and deposited at Roberto Clemente Park were obtained through arrangements made through IEV Trucking Corp and COD Services Corp.

# VI.

## APPLICABLE LAW, REGULATION AND STANDARD OF CARE GOVERNING THE COLLECTION, TRANSPORT AND DISPOSAL OF SOLID WASTE IN THE STATE AND CITY OF NEW YORK.

137.     On information and belief, the source being statements of defendants Thomas Datre, Jr. and Christopher Grabe, the sources of the waste materials disposed of at Roberto Clemente Park were originally under the control of the Generator defendants, as owners of the sites, or contractors responsible for the disposal of waste at the sites where the wastes were generated. The Generator defendants made agreements with the Broker defendants to supply transport and disposal for the wastes at the sites, and the Broker defendants made arrangements with the Datre and Grabe defendants to provide transport and disposal services to the Generator defendants.  The laws and regulations of the City of New York and the State of New York governing the collection, transport and disposal of solid wastes were applicable to the activities of the Generator defendants, Broker defendants and Datre and Grabe defendants.

138.     The collection and disposal of solid wastes, including C&D debris and fill materials, particularly those containing hazardous substances,  are subject to a comprehensive regulatory system governed by City and State law, administered by the New York City Department of Sanitation (DSNY), the New York City Business Integrity Commission (BIC), and the New York State Department of Environmental Conservation (NYSDEC).

139.     Persons engaged in the collection of trade wastes, including C&D debris, soils and fill generated within the City of New York are required to obtain a license or a registration from BIC in order to do so. Persons acting as brokers for solid waste collection services must also obtain a license.  Pursuant to Title 16-A of the New York City Code, it is unlawful for any person to engage in the collection of trade wastes without having obtained a license or registration from BIC.

Applications for registrations require disclosure of previous investigations for violation of law, and intended points of disposal of waste collected, among many other things, and false statements may result in denial of the application or make the applicant subject to criminal prosecution.

140.    Persons licensed or registered with BIC for the authorized collection of trade waste in the City of New York must display on each vehicle used in such collection a license plate issued by BIC for such vehicle. The use or hiring of a vehicle without such a license plate is unlawful. None of the Datre or Grabe defendant corporations or individuals, or the vehicles used by them to collect trade wastes from Generator defendants in the City of New York, were licensed or registered with BIC, except 5 Brothers Farming Corp.   As set forth below, the application submitted to BIC by individual defendants Thomas Datre Jr. and Christopher Grabe on behalf of 5 Brothers Farming Corp. contained false statements intended to fraudulently induce BIC to issue that registration.

141.    Persons acting as a "Trade Waste Broker" within the meaning set forth in Title 17 §1-01 of the Rules of the City of New York are required by §16-505(b) and §16-507 of the New York City Administrative Code to obtain a registration from the Business Integrity Commission. Defendants IEV Trucking Corp and COD Services Corp acted as Trade Waste Brokers in their transactions with the Generator and Datre defendants as described herein, but did not register with BIC as required by law.

142.    Under the Environmental Conservation Law and regulations of the State of New York, C&D debris, soils, and clean fill may be disposed of at four types of locations and facilities. Clean fill and soils which are not contaminated by hazardous substances or asbestos may be used as grade adjustment fill at locations, such as homes and building sites,  that are exempt from regulation under 6 NYCRR Part 360.  To obtain such an exemption, the owner of the receiving

site must comply with the provisions of 6 NYCRR 360-8 (b)(2), and notify the NYSDEC and the town clerk of the town in which the site is located, of the intention to receive and use such material, together with the nature, volume, use, source, schedule, contractor's identity, aerial extent and future use of the property. The NYSDEC must approve the exemption before any such use is authorized. Recognizable concrete, rock, brick, asphalt and soils that have not been in contact with hazardous waste or petroleum spills may be disposed of at fill station facilities registered with the NYSDEC pursuant to 6 NYCRR 360-16.1(d)(1)(i). C&D debris, together with other materials authorized for acceptance, may be accepted at construction and demolition debris processing stations transfer stations pursuant to 6 NYCRR 360-16, or at C&D landfills pursuant to 6 NYCRR 360-7. It is unlawful to dispose of C&D debris or fill materials except at facilities or locations authorized pursuant to regulation, or at locations recognized as exempt pursuant to 6 NYCRR 360-8 (b)(2). These regulations are applicable throughout the State of New York, including both New York City and Kings Point, N.Y.

143. All of the facilities authorized by regulation to accept C&D debris, soils and clean fill in the City of New York and elsewhere on Long Island charge fees for the acceptance of different types of material, except locations that are exempt pursuant to 6 NYCRR 360.8(b)(2), and those exempt locations may not accept fees. Fees vary based upon the nature of the materials. On information and belief, the sources being oral conversations with personnel of the DSNY, NYSDEC and information provided to plaintiff by H2M Engineers, during the period 2013 -2014 market fees for acceptance of clean fill and soil ranged from $10 to $15 per cubic yard, and fees for mixed rock, concrete and soils and C&D debris ranged between $20 to $30 per cubic yard at authorized facilities.

144.    Within the City of New York, waste materials consisting of C&D wastes and excavation wastes are served by C&D transfer stations and fill stations licensed or registered by the NYSDEC where they can be delivered for processing, recycling and disposal.  On information and belief, the source being the DSNY, the vast majority of property owners, building and demolition contractors, and waste haulers working in the City utilize these facilities and abide by local law and regulation, evidenced by the fact that the City's C&D transfer stations accept approximately 8,000 tons of C&D debris per day, and the City's fill stations accept approximately 16,000 tons of soils and excavated materials per day.

145.    The detection, identification, and proper disposal of hazardous substances in structures and on lands within New York City is a significant concern to the City and State of New York. Hazardous substances are commonly found in construction, demolition and excavation wastes generated in New York City.  Large areas of the City of New York have, over its history, been developed for industrial purposes, demolished, and redeveloped for the same or other purposes.  Large areas of waterfront and other areas have been filled with the debris of such re-development, and many areas of the City have been determined to contain "historic fill" which commonly contains hazardous substances present in demolition material from metal foundries and other uses.

146.    Inquiry as to the presence of hazardous materials and asbestos is required by the laws and rules of the City of New York before a parcel of land can be developed, or a building can be demolished or constructed.  Initial inquiry is required through the City Environmental Quality Review (CEQR) process when any application relating to project development is filed. When hazardous substances are identified, the lead agency under CEQR may refer the project to the

City's Office of Environmental Remediation (OER) which can confer an E-Designation on the project and exercise jurisdiction over the remediation and clean-up of the property affected.

147.    In addition, the removal, transport and disposal of asbestos wastes in New York City is regulated through permits issued by the NYSDEC through ECL §27-305 and by Title 16 of the Rules of the City of New York (RNYC), enforced by DSNY.

148.    Identification of the presence of hazardous substances in soils or buildings can lead to remediation under the direction of the NYC OER or the NYSDEC,  and in addition to the cost of disposal at authorized facilities, the owner of the property can incur other substantial costs for engineering and other professional services, sampling, air and soil vapor monitoring and other items, depending upon the nature and amount of the substances found.

149.    All C&D transfer stations and fill stations licensed or registered with the NYSDEC are required to keep records and log books of the users of such facilities, and all materials delivered are subject to at least visual inspection by both the facility the NYSDEC.

A.      **Knowledge Imputed to the Defendants**

150.    All persons engaged in the construction, demolition, and development of lands and buildings, and all persons engaged in the collection and disposal of wastes at such projects in the City of New York are charged with knowledge of the law. Compliance with applicable law and regulation, and a duty to exercise of good care in the performance of construction, demolition, and development of lands and buildings, and in the collection and disposal of wastes within the City of New York,  is imputed  to the Generator defendants, the Broker defendants, the Datre and Grabe defendants and the Church defendants. Compliance with law and exercise of due care would have revealed that the collection, transport and disposal of wastes by the Datre and Grabe defendants at

any site, including Roberto Clemente Park, was not lawful, and that such wastes did contain, or were likely to contain, hazardous substances and/or asbestos materials.

151.    No materials collected from construction, demolition or excavation sites in New York City or Kings Point, N.Y., whether containing hazardous substances or not, could have been lawfully disposed at Roberto Clemente Park, because the park was not an approved exempt facility pursuant to 6 NYCRR 360-8(b)(2), and no attempt had been made by any person to secure such an exemption.

152.    None of the vehicles used for transport of the materials collected by the Datre and Grabe defendants from Generator defendant sites in New York City during the period May 2013 through December 31, 2013 were owned or operated by any person or entity licensed or registered by the Business Integrity Commission.   No vehicle used by the Datre and Grabe defendants, dispatched by the Broker defendants, or loaded by the Generator defendants during this period carried the license plates required as a condition of registration by the BIC.   The absence of such identification provided notice to all parties that the vehicles used were operating unlawfully.

153.    On information and belief, the sources being the statements of Datre Jr. and Grabe, the fees charged by the Datre defendants to the Broker defendants did not include the cost of disposal.   The Datre defendants charged, and the Broker defendants paid between $450 to $750 per load, which covered the cost of transport and screening of the material before it was deposited at Roberto Clemente Park.   Had the cost of disposal at a lawful facility been included in the Datre pricing, the cost per load would have been between $300 and $1000 per load higher.   The low price would have indicated to any person familiar with the costs of collection and disposal in New York City or Long Island, including the Broker and Generator defendants, that actual disposal was not occurring at a lawful facility.

154.    The prices charged by the Broker defendants to the Generator defendants for the transport and disposal services provided by the Datre defendants is unknown to the plaintiff but known to the Broker and Generator defendants.  However, even if the Generator defendants were charged prices commensurate with market rates for disposal, the Generator defendants had knowledge that the disposal of the material was unlawful because unlicensed and unregistered vehicles were used.  The Generator defendants knew or should have known of the presence of hazardous substances in the waste at their jobsites.  By acting in concert with the Broker and Datre defendants to dispose of these wastes at unlawful sites, the Generator defendants would save considerable other costs in avoidance of remediation procedures due to the presence of hazardous substances and asbestos at their jobsites.

155.    The IEV and COD defendants had knowledge that the materials they arranged to transport were intended for disposal, and knew, or should have known, i) that their own activities in operating as Trade Waste Brokers in the City of New York were unlawful without an approved registration with the Business Integrity Commission;  ii) that the Datre defendants also lacked an approved registration with the BIC and were not authorized to collect trade waste in  New York City; iii) that the waste materials they arranged for the Datre defendants to transport, whether or not containing hazardous substances, was solid waste intended for disposal; iv) that the waste materials they arranged for the Datre defendants to transport was not intended for lawful disposal; and v) because the service they offered would not subject waste from Generator sites to scrutiny at any legitimate disposal facility, the wastes they were hired to transport were likely to contain hazardous substances.

156.    The Church defendants obtained the consent of the Town to apply topsoil and fill to grade the soccer field at Roberto Clemente Park through representations made to Joseph

Montuori and Brett Robinson.  With this consent, they gained control of the soccer field and the ability deposit and spread fill on its surface.  The Church defendants initially purchased 149 cubic yards of topsoil and fill and 17 bags of seed from retail dealers in Suffolk County, and thereby knew the costs of such items. After spreading that material, the defendant Nancy Alvarez  of the Church informed Robinson at the Town that an additional 60 yards of topsoil was needed to complete the work.

157.    Thereafter, the Church made an agreement with Christopher Grabe to deliver 15 truckloads of fill materials from the dumpsite at 1625 Islip Ave, at no charge.  The lot occupied by Grabe and Datre at 1625 Islip Ave was an open and notorious dump site, operating without any pretense as a lawful retail seller of fill or other materials.  Following delivery of the first 15 truckloads, the Church defendants agreed to the delivery of more materials by the Datres, and the presence and use of Datre equipment at the Park, also at no cost.   In late June, the defendant Nancy Alvarez informed Robinson that defendant Island Recycling would be engaged as a sub-contractor by the Church to finish the Park project.  The Datre and Grabe defendants could not have gained access to the Park without the express agreement and cooperation of the Church defendants.  Having obtained this agreement and consent, and acting in concert with the Church, the Datre and Grabe defendants then delivered 43,000 cubic yards of contaminated debris and fill to the Park.  The Church defendants continued to represent themselves as the entity undertaking the work at the Park in letters to the Town and continued to supply labor to the field during the deliveries of fill by the Datre defendants.

158.    The decision by the Church defendants in May 2013 to cease purchasing of topsoil when only 60 yards were needed to complete the project begun a month before, and instead make an arrangement with Grabe for delivery of 15 truckloads of highly questionable fill was a knowing

abandonment of the original project.  The motivation for this reversal is unknown to the plaintiff but is known by the defendants.   However, the Church defendants, in soliciting and accepting 15 truckloads of fill from the 1625 Islip Avenue site, were fully aware of the nature and quality of the fill delivered and spread on the soccer field, and knew or should have known that the materials delivered to the Park were solid wastes intended for disposal, and likely to contain hazardous substances and asbestos.

159.    Each of the defendants herein knowingly and consciously failed to comply with applicable law and regulation, aided or assisted other defendants in such failure to comply, and intentionally or negligently failed to exercise due care in the performance of its actions as described herein.

## VII.

## CLAIMS

### AS AND FOR A FIRST CLAIM

### - RICO; 18 U.S.C. § 1964(c) -

*Against Thomas Datre Jr., Thomas Datre Sr., Clara Datre, Christopher Grabe, 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc., Datre Auto & Equipment Sales Inc., Daytree At Cortland Square Inc., Daytree Custom Builders Inc., Datre Family Farms Inc., Islandia Recycling Inc., C.J. Site Development Inc., IEV Trucking Corp., and COD Services Corp.*

160.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

161.    Each and all of the named defendants herein are "persons" within the meaning of 18 U.S.C. § 1961(3).

A.       **The Enterprise**

162.     The Enterprise consists of individuals, partnerships, corporations, associations and other entities and/or groups associated in fact although not a legal entity in and of itself.  The subject Enterprise consists of the below named defendants and together they functioned as a continuing unit through an ongoing organization with a common unlawful purpose.

163.     At all relevant times, defendants comprised an association in fact with a structure and existence separate and distinct from the racketeering activity alleged herein, which association in fact was an enterprise within the meaning of 18 U.S.C. § 1961(4) which is engaged in, or the activities of which affect, interstate or foreign commerce, all in violation of 18 U.S.C. § 1962(c). The Enterprise functioned as an association in fact during a period beginning not later than May 2013 and continued at least until the cessation of dumping and the closure of Roberto Clemente Park in April 2014.

164.     In their pleas of guilty on March 30, 2016 to the crimes of Endangering Public Health Safety and the Environment in the Third Degree, and operating a solid waste facility without a permit in violation of Environmental Conservation Law § 71-2712 and § 71-2703(2)(c)(i) at Roberto Clemente Park, defendants Datre Jr. and Grabe admitted to acting in concert with others in the commission of those crimes.  On information and belief, the sources being the allocution of the defendants placed on the record before the County Court of the County of Suffolk on March 30, 2016, and the statements of the defendants given to members of the Suffolk County Police Department and statements given under oath in July and December 2016, the persons and entities with whom they acted in concert are members of the Enterprise, whose racketeering activities are described below.

165.    The object of the Enterprise was to obtain access to properties in Suffolk County, where solid wastes originating in the City of New York and Long Island, including Construction and Demolition debris and fill materials contaminated with hazardous substances, could be disposed of without disclosure of their source or nature, and without payment of disposal fees or compliance with environmental laws. The Enterprise provided a means by which property owners or developers in New York City and Long Island could avoid costs involved in compliance with environmental laws by establishing a "no questions asked" method of disposal for wastes containing hazardous substances and asbestos.

166.    Defendants 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc., Datre Auto & Equipment Sales Inc., Daytree At Cortland Square Inc., Daytree Custom Builders Inc., Datre Family Farms Inc., Datre Jr., Datre Sr., and Clara Datre, (hereinafter the "Datre" defendants) are corporations and individuals controlled or employed by Datre Sr., Clara Datre and Datre Jr. Acting in combination and in concert, the Datre defendants contributed the trucks, funds, equipment, labor and other assets of the individuals and corporations to advance the purposes of the Enterprise, as described below.

167.    Defendants Islandia Recycling Inc. and C.J. Site Development Inc. are corporations owned or controlled by individual defendant Grabe (collectively, the "Grabe" defendants). Acting in combination and in concert, the members of the Grabe defendants contributed the funds, equipment, labor and other assets of the individuals and corporations to advance the purposes of the Enterprise, as described below.

168.    Defendants IEV Trucking Corp. and  COD Services Corp. (the "Broker" defendants) acted as brokers to arrange for trucks owned or directed by the Datre and Grabe defendants to pick up materials provided by the Generator defendants at various locations in the

City of New York and Long Island,  which were  transported and disposed of at Roberto Clemente Park.

169.    In order to act as brokers for trade waste services in New York City, defendants IEV and COD were businesses required by New York City Administrative Code §16-505 to obtain a registration with the New York City Business Integrity Commission.  Neither IEV nor COD obtained the registration required by Business by Administrative Code §16-505.  To the extent that IEV and  COD were not acting as brokers pursuant to §16-505, they were acting as contractors to the Generator defendants and the Datre defendants in providing the services described herein.

170.    Records of the Datre defendant corporations establish that during the period June 2013 through April 2014, the IEV and COD defendants arranged for the Datre defendants to collect and dispose of over 1200 loads of construction and demolition debris and fill materials from Generator sites in New York City and Long Island, and paid the Datre defendants fees for these services which did not include costs for lawful disposal of such wastes.

## B.    Racketeering Activity

171.    Based on the allegations set forth below, the named defendants acted to participate in the conduct of the Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).  The Enterprise conducted its operations, and concealed the illegal nature of its operations, through the use of the mails in violation of 18 U.S.C.§1341, and through the use of radio, and telephone communications, in violation of 18 U.S.C. §1343.

172.    The racketeering activity that is the subject of this action is the use of the mails to execute a fraudulent scheme and advance the objectives of the Enterprise in violation of 18 U.S.C §1341, and the use of radio and wire communication to execute a fraudulent scheme and advance the objectives of the Enterprise in violation of 18 U.S.C §1343.

**Mail Fraud**

173.    Defendants Thomas Datre Jr., Christopher Grabe and 5 Brothers Farming Corp committed at least two acts of predicate mail fraud through i) the use of the U.S. mails in June 2013 to file a fraudulent application with the New York City Business Integrity Commission for a registration to authorize defendant 5 Brothers Farming Corp. to collect construction and demolition debris within the City of New York,  and ii) to induce the Business Integrity Commission  to transmit correspondence related to this application through the U.S. mail, including but not limited to notice that a registration was granted to 5 Brothers Farming Corp,  in reliance on the fraudulent statements made in said application, on or about December 26, 2013.

174.    On information and belief, it is customary and the regular practice of the Business Integrity Commission to accept such applications by mail and continue to use U.S. mail to communicate with applicants thereafter.

175.    The Enterprise commenced the collection and disposal of C&D debris and fill from locations within the City of New York no later than May 2013.  At the time this activity was commenced, no individual or entity engaged in the collection of C&D debris or fill from such locations had obtained a lawful license or registration from the Business Integrity Commission, as required by law.  In order to protect and advance the purposes of the Enterprise, defendant Datre Jr. prepared and filed an application dated June 11, 2013 for Exemption From Licensing Requirement For Removal of Construction and Demolition debris (Class 2 Registration Application) with the Business Integrity Commission on behalf of defendant 5 Brothers Farming Corp.

176.    The application contained fraudulent statements intended to induce the Business Integrity Commission to grant the application.  Among the fraudulent statements were responses to the following questions in the Disclosure Form for Principal of a Trade Waste Business:

Question 22(a):   During the past ten (10) years, have you ever been found in violation of the administrative rules or regulations of any municipal state or federal agency where the violations resulted in the revocation or suspension of any license, permit or registration, or the imposition of a fine of $5,000 or more, or an injunction of six months or more?

Question 23: During the past ten (10) years, have you ever been

a)   Been the subject, party or target of any criminal or civil investigation by a federal state or local prosecutorial agency, investigative agency, regulatory agency, or committee?

b)   Been charged with any misdemeanor or felony criminal  offenses in any jurisdiction?

c)   Entered into a judicial consent decree, administrative order on consent or similar agreement, or been the subject of a default decree, receivership or any form of independent monitoring?

177.    Datre Jr. answered each of these questions by checking "NO" in the spaces provided.

178.    These answers were false because Datre Jr. had been the target of a civil investigation conducted by the New York State Department of Environmental Conservation in May 2008, in connection with the illegal mining of sand, and the illegal disposal of construction

debris and fill materials on lands owned by the New York State Department of Transportation at 25 Newton Place, Hauppauge, N.Y.

179.    This investigation revealed that Datre Jr., together with a corporation known as Exit 55 Construction Corp., owner of the land adjacent to the Department of Transportation property, and an individual known as Perry Stuart, an officer and operator of Exit 55 Construction Corp, had unlawfully mined and removed 20,000 cubic yards of sand from the Department of Transportation property.  They then established a stockpile of 10,000 cubic yards of construction and demolition debris and 1,500 cubic yards of tree debris and yard waste at the property, and were engaged in receiving and processing soil and C&D debris that included drywall, wood, roofing material, tiles and other materials, using said material as grade adjustment in violation of New York law.  The investigation resulted in the execution of a Consent Order in case # R1-20100430-38 by Datre, Jr., Exit 55 Construction Corp and Perry Stuart, in which they were fined $50,000 and ordered to remediate the property.  On information and belief, the source being the records of the New York State Department of Environmental Conservation, Datre Jr., through Datre Family Farms, Inc., incurred over $17,000.00 in costs for disposal of materials removed from the site in the remediation process.

180.    In addition, in the application for Class 2 Registration to the Business Integrity Commission for respondent 5 Brothers Farming Corp., in questions 20 through 23, the applicant was asked to describe (20) the nature of the work the applicant business plans to perform, (21) the types of waste the applicant business plans to remove, (22) the types of sites from which the applicant business plans to remove waste, and (23) how and where the applicant business will dispose of the waste collected.  In response to these questions, Datre Jr. described the nature of the work (20) as "pick up clean and mixed material, dirt, concrete, rock and brick from various

jobsites;  described the types of waste to be removed (21) as "dirt, concrete, rock and brick"; described the types of sites from which waste would be removed (22) as " various construction sites"; and described how and where the applicant will dispose of the waste collected (23)  as "at registered DEC dumping facilities." In question 24 of the application, the applicant was asked if the applicant would transport asbestos. Datre Jr. checked "No" on the line provided.

181.    The answers given to questions 23 and 24 were false, as Datre Jr. did not intend to, and did not actually dispose of the waste collected from New York City construction sites at registered DEC dumping facilities, and was then in the process of delivering C&D debris and fill contaminated with asbestos and hazardous substances to Roberto Clemente Park at the time the application was filed, and continued to do so until these  activities were stopped by his arrest. These false statements were made in order to fraudulently induce the Business Integrity Commission to grant a Class 2 Registration to 5 Brothers Farming Corp. and thereby advance the purposes of the Enterprise.

182.    On information and belief, the source being the personnel and records of the Business Integrity Commission of the City of New York, the customary practice of the Business Integrity Commission is to use the U.S. Mail to receive applications for licenses and registrations, to communicate with applicants, and to transmit decisions to grant or deny such applications.  The application for a Class 2 Registration for 5 Brothers Farming Corp. was filed with the Business Integrity Commission of the City of New York on June 17, 2013 and it is believed to have been sent through the U.S. Mail by, or at the direction of Datre Jr. on or about   June 11, 2013.  The filing of this application was intended and expected and did, on information and belief, result in the further use of the U.S. mail by the Business Integrity Commission to communicate with the applicant and to transmit to the applicant notice of a Registration Order dated December 17, 2013,

an approved Registration issued December 26, 2013, effective January 1, 2014, and a Commission Directive Regarding Vehicles Used in Trade Waste. The Registration Order and Commission Directive were acknowledged by employee Christopher Grabe on behalf of 5 Brothers Farming Corp. on January 14, 2014.

183.    Each use of the U.S. mail by Datre Jr., Grabe, and 5 Brothers Farming Corp., and each use of the U.S. mail by the Business Integrity Commission induced by the filing of the application, was made in furtherance of a fraudulent scheme to obtain a Class 2 registration from the Business Integrity Commission through the use of false statements presented in the application and supporting documents.

**Wire Fraud**

184.    The defendants engaged in further predicate acts of wire fraud in violation of 18 U.S.C. § 1343.  Defendants, acting jointly and in concert, executed a scheme or artifice to defraud by means of false or fraudulent pretenses, representations and promises as set forth above, and for the purposes of executing such scheme or artifice or attempting to do so, transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce, writings, signs, signals, pictures and sounds, for the purposes of executing and in furtherance of said schemes or artifices to defraud set forth herein in violation of 18 U.S.C. § 1343.

185.    As alleged below, the use of radio and wire communication by the defendants was interstate in nature because, on information and belief, the source being the Verizon Wireless carrier maintaining records of the cellular telephone calls and text messages of the defendants,  all cellular telephone signals involve the use of radio, as well as wire communication, and records indicate that signals in both telephone calls and text messages sent or received by the defendants in furtherance of the Enterprise were transmitted between the State of New York and the states of

Connecticut, New Jersey, Massachusetts and other states, even when re-routed to another number registered to a resident of New York.

186.     Defendant Grabe committed at least two (2) predicate acts of racketeering activity (wire fraud) in violation of 18 U.S.C. § 1343, by making telephone calls to architect Jose Tavares on or about August 26, 2013 and on or about February 3, 2014, in each case to induce Mr. Tavares to prepare a site drawing of soccer fields intended to disguise the unlawful placement of contaminated fill, C&D debris and other solid wastes, in order to mislead the Town as to the activities underway at the Park.

187.     Grabe, Datre Jr. and the IEV and COD defendants committed multiple predicate acts of racketeering activity (wire fraud) in violation of 18 U.S.C § 1343 during the period June 2013 to May 2014, by making telephone calls and sending text messages to dispatch contaminated fill, C&D debris and other solid wastes to Roberto Clemente Park.  Telephone logs for two (2) cell phones used by Grabe and Datre Jr. establish that 1,331 telephone calls were made between Grabe and IEV, 825 calls between Grabe and COD, and 160 calls between Grabe and Thomas Datre Jr. during the period January 1, 2013 to December 31, 2014.  Telephone logs establish that 782 text messages were sent between Grabe and COD, 135 text messages between IEV and Grabe, 126 texts between COD and Datre Jr, and 7 texts between IEV and Datre Jr during this period. On information and belief, the sources being the statements of Grabe and Datre, Jr., the purpose of these calls  and messages was to arrange pickup and delivery of contaminated fill, C&D or other solid waste to Roberto Clemente Park, or to conceal or otherwise advance the activities of the Enterprise.

188.     Defendants engaged in said willful acts with the intent to deceive or cheat for the purpose of getting a financial gain.  The Datre and Grabe defendants were compensated by the

Broker defendants because they offered low cost, "no questions asked" transport and disposal. The Broker defendants were compensated by the Generator defendants for making arrangements with the Datre defendants. The Generator defendants avoided applicable law and regulation through the use of an unlawful conduit for disposal of waste materials contaminated by hazardous substances, and avoided significant costs to lawfully remediate the hazardous substances present at their jobsites. The predicate acts of mail and wire fraud illustrate a pattern of continued criminal activity to evade the regulatory system governing identification and remediation of sites contaminated by hazardous substances in New York City, and unlawfully dispose of thousands of tons of C&D debris and solid wastes in the public park.

189.    In addition to the racketeering activity involving the unlawful disposal of C&D debris and contaminated fill at Roberto Clemente Park, the Enterprise engaged in at least three (3) other schemes consisting of acts of racketeering through unlawful disposal of C&D debris and contaminated fill at (i) the Veterans Homes development property located in the Village of Islandia, Town of Islip, New York; (ii) the "Maisie" property located at 117 Brook Avenue, Deer Park, New York; and (iii) the property located at 1625 Islip Avenue, Central Islip, New York. The schemes undertaken by the Enterprise were inter-related, as materials could be moved from one site to another, and the continued flow of materials collected from Generator sites by the members of the Enterprise could be sustained whenever one (1) or more locations became temporarily unavailable.

190.    The pattern of racketeering activity engaged in by the Enterprise occurred at multiple sites, was open-ended, and would have continued but for the indictment and arrest of the individual defendants as described above.

191.     Each of the defendants aided, abetted, counseled, commanded, induced or procured the above acts of mail fraud and wire fraud in violation of  18 U.S.C. § 1341 and § 1343 performed by other individual members of the Enterprise, and each would be liable as a principal in the violation of such statutes pursuant to  18 U.S.C. § 2.

192.     The racketeering activity became the regular way of operating the business and enterprise for the aforementioned defendants.

193.     The multiple predicate acts set forth above occurred from April of 2013 to May of 2014, and such acts constitute a continuous and related pattern of racketeering activity, or implied a threat of continued criminal activity, within the meaning of 18 U.S.C. § 1961(5).

194.     By reason of the foregoing, plaintiff sustained damages in an amount exceeding $4,000,000.00, plus such other amount to be determined at trial, to which plaintiff is entitled as well as treble damages, attorney's fees and punitive damages.

## AS AND FOR A SECOND CLAIM

### - RICO; 18 U.S.C. § 1962(d) -

***Against Thomas Datre Jr., Thomas Datre Sr., Clara Datre, Christopher Grabe, 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc., Datre Auto & Equipment Sales Inc., Daytree At Cortland Square Inc., Daytree Custom Builders Inc., Datre Family Farms Inc., Islandia Recycling Inc., C.J. Site Development Inc., IEV Trucking Corp., and COD Services Corp.***

195.     Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

196.     Defendants and their contractors, agents, associates and representatives conspired to commit the many predicate acts set forth above, with knowledge that such acts were in furtherance of the goals of the enterprise.   The substantial number of predicate acts perpetrated by

the above defendants over a period of at least one (1) year amounted to continuous stream of acts of racketeering.

197.    Defendants, acting individually and in concert, shared a common motive in order to violate 18 U.S.C. § 1962(c).  As alleged above and throughout, each named defendant played a role in establishing a means by which property owners or contractors in New York City could evade their lawful responsibilities with respect to the identification and management of hazardous substances in solid wastes, by creating a means for disposal of such wastes without disclosure or disposal cost in Suffolk County. Pursuant to ¶¶ 147 to 182 above, there were numerous instances of mail and wire fraud committed by and among the defendants in order to advance the unlawful activities of the Enterprise.

198.    Defendants combined with the intent and purpose to devise, and with the intent to devise, a scheme or artifice to defraud as described above, and for the purposes of executing such scheme or artifice or attempting to do so, utilized the U.S. Mails in violation of 18 U.S.C. § 1341, and transmitted or caused to be transmitted by means of wire communications in interstate or foreign commerce, writings, signs, signals, pictures and sounds, for the purposes of executing and in furtherance of said schemes or artifices to defraud, set forth herein in violation of 18 U.S.C. § 1343.

199.    By reason of the foregoing, plaintiff sustained damages in an amount exceeding $4,000,000.00, plus such other amounts to be determined at trial, to which plaintiff is entitled as well as treble damages, attorney's fees and punitive damages.

## AS AND FOR A THIRD CLAIM

**- Comprehensive Environmental Response Compensation and
Liability Act (Response Costs CERCLA 42 U.S.C. § 9601 et seq.) -**

*Against Thomas Datre Jr., Thomas Datre Sr., Clara Datre, Christopher Grabe, Iglesia De Jesucristo Palabra Miel, Marco Lopez, Nancy Alvarez, William Carrillo, Raul Pachecho, Walter Casasola, 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc., Datre Auto & Equipment Sales Inc., Daytree At Cortland Square Inc., Daytree Custom Builders Inc., Datre Family Farms Inc., Islandia Recycling Inc., C.J. Site Development Inc., IEV Trucking Corp., COD Services Corp., 96 Wythe Acquisition LLC, Louisiana Purchase LLC, 61 Park Place LLC, MD Kohn Realty II LLC, 4111 18th Avenue LLC, Cooper And 6th Property LLC, The Classon In Clinton LLC, Chen 867 Realty LLC, Bronxcare Health System, Stahav Realty Corp., John Khani, Susan Khani , and John Doe No. 1 through John Doe No. 10*

200.     Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

201.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section:

(1)     the owner and operator of a vessel or a facility;

(2)     any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of;

(3)     any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances; and

(4)     any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for:

(A) all costs of removal or remedial action incurred by the United States Government or a state or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary cost of response incurred by any such person consistent with the national contingency plan.

202.   Each defendant is a "person" within the meaning of § 101(21) of CERCLA, 42 U.S.C. § 9601(21).

203.   The site is a "facility" within the meaning of § 101(9) of CERCLA, 42 U.S.C. § 9601(9).

204.   There has been a "release" or "threatened release" of "hazardous substances" at the site within the meaning of § 101(22) and (14) of CERCLA, 42 U.S.C. § 9601(22) and (14).

205.   Samples of the materials disposed of by defendants at Roberto Clemente Park were taken by consultants engaged by the Suffolk County District Attorney on May 17, 2014, and by consultants engaged on behalf of the Town of Islip on April 20 and April 21, 2015.  Laboratory tests conducted on these samples showed the presence of hazardous substances listed in 40 CFR § 302.4(a), and within the meaning of 42 U.S.C. § 9601(14), including, but not limited to, asbestos, mercury, lead, nickel, zinc, arsenic, beryllium, cadmium, arochlor, chlordane, benzo[a]anthracene, benzo[a]pyrene, benzo[b]fluorathene, bis(2-Ethylhexyl)phthalate, and Dibenzo[a,h]anthracene.

206.   As a result of the laboratory tests of the materials disposed of at the Park, a decision was made by the Town, after notice to the surrounding community, and under the direction of the NYSDEC,  to remove all such materials in order to address an immediate threat to the public health welfare and the environment, and to prevent or minimize further release of hazardous substances so they do not migrate to cause substantial danger to present or future public health or welfare. The physical undertaking of the removal of the materials disposed of at the Park commenced on

June 23, 2015 and was substantially completed in August 2015. Following removal of the contaminated materials the Town was directed to adhere to a Site Management and Restoration Plan (SMRP) including placement of soil and vegetative cover, continued groundwater and gas monitoring programs, and submission of covenants and restrictions on the site. Activities outlined in the SMRP continue and the NYSDEC retains jurisdiction to direct further remedial action if determined necessary.

207.   Defendants 5 Brothers Farming Corp., Datre Jr., Grabe, Iglesia De Jesucristo Palabra Miel, Alvarez, Carillo, Pachecho, Casasola and Lopez, are each strictly, jointly and severally liable under § 107(a)(l) of CERCLA, 42 U.S.C. § 9607(a)(l), as operators of the site at the time that hazardous substances were disposed of at the site.

208.   Defendants 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc., Daytree At Cortland Square Inc., Datre Family Farms Inc., Islandia Recycling Inc., Datre Jr., Datre Sr., Clara Datre, and Grabe are each strictly, jointly and severally liable under § 107(a)(4) of CERCLA, 42 U.S.C. § 9607(a)(4), as persons who accepted hazardous substances for transport to the site.

209.   Defendants IEV, COD, 96 Wythe Acquisition LLC, Louisiana Purchase LLC, 61 Park Place LLC, MD Kohn Realty II LLC, 4111 18th Avenue LLC, Cooper And 6th Property LLC, The Classon In Clinton LLC, Chen 867 Realty LLC, Bronxcare Health System, Stahav Realty Corp., and John Doe defendants 1 through 10 are each strictly, jointly and severally liable under § 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), as persons who arranged for transport for disposal or treatment, of materials containing hazardous substances owned or possessed by such person, or by any other party or entity, at the site.

210.    The Town has also paid no less than $192,000.00 for the retention of environmental consultants to test and outline remediation plans in RC Park, as well as an additional $50,150.00 for said consultants to assess the presence of environmental contaminants at all 118 Town parks.

211.    On May 27, 2014, the Town Board for the Town of Islip adopted a resolution, subject to a permissive referendum, to issue up to $6,000,000.00 in bonds, the proceeds of which would be used for remediation and restoration at Roberto Clemente Park.

212.    Overall a total of 38,932.44 tons of C&D debris and unacceptable fill were removed from the Park in the Removal Action.  The Town continues to take actions called for in the Removal Work Plan, and expects to take further action in accordance with a final Restoration Plan to be approved by the NYSDEC.  As a result of these activities, the Town has incurred response costs in excess of $4,000,000.00, and additional costs to be established at trial, for which the defendants are liable.

213.    Subsequent to filing and service of the within complaint, pursuant to 42 U.S.C. § 9613, a copy of said complaint shall be provided to the Attorney General of the United States and to the Administrator of the Environmental Protection Agency.

214.    By reason of the foregoing, plaintiff sustained damages in an amount exceeding $4,000,000.00, plus such other amounts to be determined at trial, to which plaintiff is entitled as well as attorney's fees and punitive damages.

## AS AND FOR A FOURTH CLAIM

### - Comprehensive Environmental Response Compensation and Liability Act Contribution CERCLA 42 U.S.C. § 9613(f)(3)(b) -

*Against Thomas Datre Jr., Thomas Datre Sr., Clara Datre, Christopher Grabe, Iglesia De Jesucristo Palabra Miel, Marco Lopez, Nancy Alvarez, William Carrillo, Raul Pachecho, Walter Casasola, 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc., Datre Auto & Equipment Sales Inc., Daytree At Cortland Square Inc., Daytree Custom*

*Builders Inc., Datre Family Farms Inc., Islandia Recycling Inc., C.J. Site Development Inc., IEV Trucking Corp., COD Services Corp., 96 Wythe Acquisition LLC, Louisiana Purchase LLC, 61 Park Place LLC, MD Kohn Realty II LLC, 4111 18th Avenue LLC, Cooper And 6th Property LLC, The Classon In Clinton LLC,  Chen 867 Realty LLC, Bronxcare Health System, Stahav Realty Corp., John Khani, Susan Khani, Central Bushwick LLC, and John Doe No. 1 through John Doe No. 10*

215.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

216.    The work undertaken and costs incurred by plaintiff Town of Islip in the removal of the contaminated fill, C&D material and other solid wastes deposited by defendants at Roberto Clemente Park, was done pursuant to a certain Revised Material Removal Work Plan approved by the New York State Department of Environmental Conservation on January 13, 2015, which constitutes an administrative settlement within the meaning of 42 U.S.C. § 9613(f)(3)(b).

217.    In the alternative to plaintiff's claims for response costs pursuant to 42 U.S.C. § 9607(a) et seq., set forth above, defendants named in herein, on the conduct of said defendants as alleged above, are liable to plaintiff for contribution to the costs incurred by plaintiff in compliance with the Revised Material Removal Work Plan approved by the New York State Department of Environmental Conservation for the removal of materials contaminated with hazardous substances, and for the restoration of Roberto Clemente Park, pursuant to the provisions of 42 U.S.C. § 9613(f)(3)(b).

218.    On May 27, 2014, the Town Board for the Town of Islip adopted a resolution, subject to a permissive referendum, to issue up to $6,000,000.00 in bonds, the proceeds of which would be used for remediation and restoration at Roberto Clemente Park.

219.     The Town has also paid no less than $192,000.00 for the retention of environmental consultants to test and outline remediation plans in RC Park, as well as an additional $50,150.00 for said consultants to assess the presence of environmental contaminants at all 118 Town parks.

220.     Overall, a total of 38,932.44 tons of C&D debris and unacceptable fill were removed from the Park in the Removal Action.  The Town continues to take actions called for in the Removal Work Plan, and expects to take further action in accordance with a final Restoration Plan to be approved by the NYSDEC.  As a result of these activities, the Town has incurred response costs in excess of $4,000,000.00, and additional costs to be established at trial, for which defendants are liable.

221.     Subsequent to filing and service of the within complaint, pursuant to 42 U.S.C. § 9613, a copy of said complaint shall be provided to the Attorney General of the United States and to the Administrator of the Environmental Protection Agency.

222.     By reason of the foregoing, plaintiff sustained damages in an amount exceeding $4,000,000.00, plus such other amounts to be determined at trial, to which plaintiff is entitled as well as attorney's fees, and punitive damages.

## AS AND FOR A FIFTH CLAIM

### - NEGLIGENCE -
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367

***Against Thomas Datre Jr., Christopher Grabe, Thomas Datre Sr., Clara Datre, 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc., Datre Auto & Equipment Sales Inc., Daytree At Cortland Square Inc., Daytree Custom Builders Inc., Datre Family Farms Inc., Islandia Recycling Inc., and C.J. Site Development Inc.***

223.     Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

224.     Defendants owed a duty of care to ensure that the C&D debris and other solid wastes were properly disposed in registered facilities or locations pursuant to regulation. The duty of said defendants extended to Plaintiff because, as a public park and not a registered facility or location for the deposition of waste, Plaintiff and its public park had a reasonable expectation not to become an illegal dumping ground of C&D debris and solid waste when regulations and guidelines had been created to protect the public from same.

225.     The laws and regulations of the City of New York and the State of New York governing the collection, transport and disposal of solid wastes were applicable to the activities of the defendants.

226.     Compliance with law and exercise of due care by the defendants would have revealed that the wastes they collected from the Broker defendants and deposited at Roberto Clemente Park was not lawful, and was likely to contain hazardous substances and/or asbestos materials.

227.     Said negligent actions of the defendants resulted in the dumping of 40,000 tons of contaminated fill, C&D debris and other solid wastes into Roberto Clemente Park, causing the closure of the Park for a significant period of time, creating a condition threatening public health and safety, and causing Plaintiff to incur response costs in excess of $4,000,000.00.

## AS AND FOR A SIXTH CLAIM

### - NEGLIGENCE -
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367

### *Against COD Services Corp. and IEV Trucking Corp.*

228.     Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

229.    Defendants owed a duty of care to ensure that the C&D debris and other solid wastes were properly disposed in registered facilities or locations pursuant to regulation. The duty of said defendants extended to Plaintiff because, as a public park and not a registered facility or location for the deposition of waste, Plaintiff and its public park had a reasonable expectation not to become an illegal dumping ground of C&D debris and solid waste when regulations and guidelines had been created to protect the public from same.

230.    The laws and regulations of the City of New York and the State of New York governing the collection, transport and disposal of solid wastes were applicable to the activities of the defendants.

231.    The exercise of due care by the defendants would have also revealed that the vehicles used by the Datre and Grabe defendants, dispatched by the Broker defendants, or loaded by the Generator defendants or their agents, were not carrying the license plates required as a condition of registration by the BIC.

232.    The Broker defendants knew or should have known of the presence of hazardous substances in the waste, and by acting in concert with the Generator defendants, Datre and Grabe defendants, saved considerable costs and expenses in tipping fees by unlawfully dumping the materials in the Park rather than a registered facility or location pursuant to regulation. The Broker defendants failed to exercise due care in the performance of its actions when it retained the Datre and Grabe defendants with the intent to have materials unlawfully dumped to evade and avoid lawful compliance with city and state regulation. In that, the payments made by the Broker defendants to the Datre defendants did not reflect proper disposal costs, but only transport and screening costs. The Broker defendants knew or should have known that the billing was inadequate

to compensate haulers, including the Datre defendants, for proper disposal of the material, which contained hazardous waste, in compliance with state and city regulation.

233.    Compliance with law and exercise of due care by the defendants would have revealed that the wastes they collected from the Broker defendants, transported and deposited at Roberto Clemente Park was not lawful, and was likely to contain hazardous substances and/or asbestos materials.

234.    The Broker defendants failed to ensure the proper removal of the wastes and failed to properly supervise the removal of the wastes.

235.    Said negligent actions of the defendants resulted in the dumping of 40,000 tons of contaminated fill, C&D debris and other solid wastes into Roberto Clemente Park, causing the closure of the Park for a significant period of time, creating a condition threatening public health and safety, and causing Plaintiff to incur response costs in excess of $4,000,000.00.

## AS AND FOR A SEVENTH CLAIM

### - NEGLIGENCE -
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367

*Against Iglesia De Jusecristo Palabra Miel, Marco Lopez, Nancy Alvarez, William Carillo, Raul Pachecho, and Walter Casasola*

236.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

237.    The Church defendants undertook responsibility of volunteering labor and other services to the Town of Islip in order to rehabilitate the soccer field at the Park and thus owed a duty of care to Plaintiff. In accordance with the agreement the Church defendants made with the Town, they had a duty to grade the soccer field, spread topsoil and make the field usable for

recreation use. In doing so, the Church defendants had a duty to ensure that nothing be unlawfully deposited in the Town's Park.

238.    The Church defendants knew or should have known by making a visual inspection that the materials delivered to the Park were solid wastes intended for disposal and likely to contain hazardous substances. The Church defendants failed to exercise due care in the performance of its actions, which resulted in the unlawful disposal of the hazardous wastes at the Park.

239.    Moreover, the Church defendants initially purchased 149 cubic yards of topsoil and fill and 17 bags of see from various retailers in 2013. Subsequently, after a request for an additional 60 yards of topsoil was rejected by the Town, the Church entered into an agreement with Grabe and Datre and 15 truckloads of highly questionable fill were accepted by the Church defendants and delivered to the Park. The decision by the Church defendants in May 2013 to cease purchasing of topsoil when only 60 yards were needed to complete the project begun a month before, and instead make an arrangement with Grabe for delivery of 15 truckloads of highly questionable fill was a knowing abandonment of the original project. The motivation for this reversal is unknown to the plaintiff but is known by the defendants. However, the Church defendants, in soliciting and accepting 15 truckloads of fill from the 1625 Islip Avenue site, were fully aware of the nature and quality of the fill delivered and spread on the soccer field, and knew or should have known that the materials delivered to the Park were solid wastes intended for disposal, and likely to contain hazardous substances and asbestos.

240.    Exercise of due care by the defendants would have revealed that the wastes they received by defendants and  deposited at Roberto Clemente Park was not lawful, and was likely to contain hazardous substances and/or asbestos materials.

241.    Said negligent actions of the defendants resulted in the dumping of 40,000 tons of contaminated fill, C&D debris and other solid wastes into Roberto Clemente Park, causing the closure of the Park for a significant period of time, creating a condition threatening public health and safety, and causing Plaintiff to incur response costs in excess of $4,000,000.00.

## AS AND FOR AN EIGHTH CLAIM

### - NEGLIGENCE -
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367

### *Against Joseph Montuori*

242.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

243.    Defendant Joseph Montuori, as Commissioner to the Parks Department, owed a duty of care to ensure that C&D debris and other solid wastes were not disposed of in Town parks. Plaintiff and its public park had a reasonable expectation not to become an illegal dumping ground of C&D debris and solid waste. Defendant Montuori recklessly or negligently failed to take proper care of the Park and manage and supervise his staff in relation to the Park.

244.    Montuori ultimately breached his duty of care to manage the Park and keep it free of C&D debris and other solid wastes. By negligently or recklessly failing to properly oversee the Parks Department in accordance with his duties and responsibilities as Commissioner, Montuori knew or should have known that his conduct may have been the likely cause of the unlawful disposal of C&D debris in the Park.

245.    Exercise of due care by the defendant would have (i) caused Montuori to ensure that authorization was obtained from the Town Board prior to allowing the Church defendants to begin working on Town property in May of 2013 without permits or insurance, and (ii) revealed

that the other named defendants were unlawfully depositing C&D debris and  at Roberto Clemente

Park, and was likely to contain hazardous substances and/or asbestos materials.

246.    Said negligent actions of the defendant resulted in the dumping of 40,000 tons of

contaminated fill, C&D debris and other solid wastes into Roberto Clemente Park, causing the

closure of the Park for a significant period of time, creating a condition threatening public health

and safety, and causing Plaintiff to incur response costs in excess of $4,000,000.00.

## AS AND FOR A NINTH CLAIM

### - NEGLIGENCE -
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367

***Against 96 Wythe Acquisition LLC,  Louisiana Purchase LLC, 61 Park Place LLC, MD Kohn Realty II LLC, 4111 18th Avenue LLC, Cooper And 6th Property LLC, The Classon In Clinton, LLC, Chen 867 Realty LLC, Bronxcare Health System, Stahav Realty Corp., John Khani, Susan Khani, Central Buwshwick LLC, Central Bushwick LLC and John Doe No. 1 through John Doe No. 10***

247.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth

herein.

248.    The materials deposited by the defendants at the Park were obtained at construction,

demolition, and excavation sites located within the City of New York and the Village of Kings

Point. The sources of these materials were under the control of the Generator  defendants, as

owners of the sites, or contractors responsible for the disposal of waste at the sites.  The Generator

defendants made agreements with demolition, building and excavation contractors who made

further agreements with the Broker defendants to supply transport and disposal for the wastes at

the sites, and the Broker defendants made arrangements with the Datre and Grabe defendants to

provide transport and disposal services to the Generator  defendants.  The laws and regulations of

the City of New York and the State of New York governing the collection, transport and disposal of solid wastes were applicable to the activities of the Generator  defendants.

249.   The Generator  defendants owed a duty of care to ensure that the C&D debris and other solid wastes were properly disposed in registered facilities or locations pursuant to regulation.

250.   Compliance with law and exercise of due care by the Generator defendants would have revealed that the wastes brokered to be removed from the sites was not lawful, and was likely to contain hazardous substances and/or asbestos materials. Moreover, exercise of due care by the Generator defendants would have also revealed that the vehicles used by the Datre and Grabe defendants, dispatched by the Broker defendants, or loaded by the Generator defendants or their agents, were not carrying the license plates required as a condition of registration by the BIC.

251.   The Generator defendants knew or should have known of the presence of hazardous substances in the waste, and by acting in concert with the Broker, Datre Jr. and Grabe defendants would have saved considerable other costs in avoidance of remediation procedures due to the presence of hazardous substances and asbestos at their jobsites.

252.   Exercise of due care by the defendants would have revealed that the wastes generated at the sites contained hazardous substances and were being hauled away by unregistered transporters and likely deposited C&D debris and  at Roberto Clemente Park, and was likely to contain hazardous substances and/or asbestos materials.

253.   The Generator defendants failed to ensure the proper removal of the wastes and failed to properly supervise the removal of the wastes.

254.   Said negligent actions of the defendant resulted in the dumping of 40,000 tons of contaminated fill, C&D debris and other solid wastes into Roberto Clemente Park, causing the

closure of the Park for a significant period of time, creating a condition threatening public health and safety, and causing Plaintiff to incur response costs in excess of $4,000,000.00.

## AS AND FOR A TENTH CLAIM

### - PUBLIC NUISANCE -
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367

*Against Thomas Datre Jr., Christopher Grabe, Thomas Datre Sr., Clara Datre, 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking Farming Inc., Datre Auto & Equipment Sales Inc., Daytree At Cortland Square Inc., Daytree Custom Builders Inc., Datre Family Farms Inc., Islandia Recycling Inc., C.J. Site Development Inc., Iglesia De Jusecristo Palabra Miel, Marco Lopez, Nancy Alvarez, William Carillo, Raul Pachecho, Walter Casasola, Joseph Montuori, 96 Wythe Acquisition LLC, Louisiana Purchase LLC, 61 Park Place LLC, MD Kohn Realty II LLC, 4111 18th Avenue LLC, Cooper And 6th Property LLC, The Classon In Clinton LLC, Chen 867 Realty LLC, Bronxcare Health System, Stahav Realty Corp., John Khani, Susan Khani, Central Bushwick LLC, and John Doe No. 1 through John Doe No. 10.*

255.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

256.    Roberto Clemente Park is a public place, open to all members of the public, and is regularly used by a significant number of people, particularly the residents of Brentwood in the surrounding neighborhood.

257.    The negligent and reckless conduct of the Datre and Grabe defendants, Generator defendants and Broker defendants, and the negligent and reckless conduct of the Church defendants and Joseph Montuori, as set forth in claims five through nine above, resulted in the dumping of approximately 40,000 tons of contaminated fill, C&D debris and other solid wastes into Roberto Clemente Park, causing the closure of the Park for a significant period of time, and creating a condition threatening public health and safety.

258.    The negligent and reckless actions of the defendants created, contributed to, and maintained a public nuisance, in that they have offended, interfered with, or caused damage to the

public in the exercise of rights common to all in a manner such as to offend public morals, interfere

with the use by the public of a public place, or endanger or injure the property, health, safety or

comfort of a considerable number of persons.

259.    Said negligent actions of the defendants resulted in the dumping of 40,000 tons of

contaminated fill, C&D debris and other solid wastes into Roberto Clemente Park, causing the

closure of the Park for a significant period of time, creating a condition threatening public health

and safety, and causing Plaintiff to incur response costs in excess of $4,000,000.00.

260.    By reason of the foregoing, defendants are liable to plaintiff for public nuisance in

an amount to be determined at trial.

## AS AND FOR AN ELEVENTH CLAIM

### - PRIVATE NUISANCE -
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367

*Against Thomas Datre Jr., Christopher Grabe, Thomas Datre Sr., Clara Datre, 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc., Datre Auto & Equipment Sales Inc., Daytree At Cortland Square Inc., Daytree Custom Builders Inc., Datre Family Farms Inc., Islandia Recycling Inc., C.J. Site Development Inc., Iglesia De Jusecristo Palabra Miel, Marco Lopez, Nancy Alvarez, William Carillo, Raul Pachecho, Walter Casasola, Joseph Montuori 96 Wythe Acquisition LLC, Louisiana Purchase LLC, 61 Park Place LLC, MD Kohn Realty II LLC, 4111 18th Avenue LLC, Cooper And 6th Property LLC, The Classon In Clinton LLC, Chen 867 Realty LLC, Bronxcare Health System, Stahav Realty Corp., John Khani, Susan Khani, Central Bushwick LLC, and John Doe No. 1 through John Doe No. 10*

261.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth

herein.

262.    Roberto Clemente Park is owned and operated by the Town of Islip, a municipal

corporation of the State of New York.

263.    The negligent and reckless conduct of the Datre and Grabe defendants, Generator

defendants and Broker defendants, and the negligent and reckless conduct of the Church

defendants and Joseph Montuori, as set forth in claims five through nine above, resulted in the dumping of approximately 40,000 tons of contaminated fill, C&D debris and other solid wastes into Roberto Clemente Park, causing the closure of the Park for a significant period of time, and causing the Town of Islip to expend significant sums of money to remove the material deposited by defendants, and thereby significantly interfered with the rights of the Town and its residents to use the Park for its intended purposes.

264.     The actions of defendants caused a substantial interference in the use of Roberto Clemente Park, were intentional, negligent, or with reckless disregard, in origin and unreasonable in nature, and thereby created a private nuisance for which the Town of Islip is entitled to recover damages.

265.     In the alternative, and solely to the extent that any defendant was engaged only in the construction or rehabilitation of soccer fields at Roberto Clemente Park, the actions of such defendants in the construction or rehabilitation of soccer fields were negligent and/or intentional, resulted in injury to the Town of Islip, and thereby created a private nuisance for which the Town of Islip is entitled to recover damages.

266.     Said negligent, intentional or reckless actions of the defendants resulted in the dumping of 40,000 tons of contaminated fill, C&D debris and other solid wastes into Roberto Clemente Park, causing the closure of the Park for a significant period of time, creating a condition threatening public health and safety, and causing Plaintiff to incur response costs in excess of $4,000,000.00.

267.     By reason of the foregoing, defendants are liable to plaintiff for private nuisance in an amount to be determined at trial.

## <u>AS AND FOR A TWELFTH CLAIM</u>

### - TRESPASS -
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367

#### *Against Christopher Grabe and Thomas Datre Jr.*

268.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

269.    Roberto Clemente Park is real property owned and used by the Town of Islip.

270.    No defendant herein was granted any right or permission to enter upon the land of the Town of Islip for the purpose of depositing contaminated fill, C&D debris and other solid wastes.

271.    No defendant herein was granted any right or permission to enter upon that portion of Roberto Clemente Park known as the "recharge basin" in the southwest quadrant of said Park for any purpose.

272.    Defendants, knowing they had no such rights or permission or justification, intentionally entered upon the land of plaintiff and deposited approximately 40,000 tons of contaminated fill, C&D debris and other solid wastes, knowing such deposition would cause damage and injury to plaintiff.

273.    Said negligent and/or intentional actions of the defendants resulted in the dumping of 40,000 tons of contaminated fill, C&D debris and other solid wastes into Roberto Clemente Park, causing the closure of the Park for a significant period of time, creating a condition threatening public health and safety, and causing Plaintiff to incur response costs in excess of $4,000,000.00.

274.    By reason of the foregoing, defendants are liable to plaintiff for trespass in an amount to be determined at trial.

## AS AND FOR A THIRTEENTH CLAIM

### - INJURY TO PROPERTY -
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367

*Against Thomas Datre Jr., Christopher Grabe, Thomas Datre Sr., Clara Datre, 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc., Datre Auto & Equipment Sales Inc., Daytree At Cortland Square Inc., Daytree Custom Builders Inc., Datre Family Farms Inc., Islandia Recycling Inc., C.J. Site Development Inc., Iglesia De Jusecristo Palabra Miel, Marco Lopez, Nancy Alvarez, William Carillo, Raul Pachecho, Walter Casasola, Joseph Montuori 96 Wythe Acquisition LLC, Louisiana Purchase LLC, 61 Park Place LLC, MD Kohn Realty II LLC, 4111 18th Avenue LLC, Cooper And 6th Property LLC, The Classon In Clinton LLC, Chen 867 Realty LLC, Bronxcare Health System, Stahav Realty Corp., John Khani, Susan Khani, Central Bushwick LLC, and John Doe No. 1 through John Doe No. 10*

275.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

276.    Roberto Clemente Park is real property owned and used by the Town of Islip.

277.    The negligent and reckless conduct of the Datre and Grabe defendants, Generator defendants and Broker defendants, and the negligent and reckless conduct of the Church defendants and Joseph Montuori, as set forth in claims five through nine above, resulted in the dumping of approximately 40,000 tons of contaminated fill, C&D debris and other solid wastes into Roberto Clemente Park, causing the closure of the Park for a significant period of time, and causing the Town of Islip to expend significant sums of money to remove the material deposited by defendants, and thereby significantly interfered with the rights of the Town and its residents to use the Park for its intended purposes.

278.    The property of plaintiff at Roberto Clemente Park has been damaged as a result of the actions of defendants.

279.    Defendants are liable to plaintiff for injury to property in an amount to be determined at trial.

## AS AND FOR A FOURTEENTH CLAIM

### - JOINT TORTFEASORS -
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367

*Against Thomas Datre Jr., Christopher Grabe, Thomas Datre Sr., Clara Datre, 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc., Datre Auto & Equipment Sales Inc., Daytree At Cortland Square Inc., Daytree Custom Builders Inc., Datre Family Farms Inc., Islandia Recycling Inc., C.J. Site Development Inc., Iglesia De Jusecristo Palabra Miel, Marco Lopez, Nancy Alvarez, William Carillo, Raul Pachecho,  Walter Casasola, Joseph Montuori and 96 Wythe Acquisition LLC,  Louisiana Purchase LLC, 61 Park Place LLC, MD Kohn Realty II LLC, 4111 18th Avenue LLC, Cooper And 6th Property LLC, The Classon In Clinton LLC, Chen 867 Realty LLC, Bronxcare Health System, Stahav Realty Corp., John Khani, Susan Khani, Central Bushwick LLC, and John Doe No. 1 through John Doe No. 10*

280.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

281.    Section 1401 of the CPLR provides, in relevant part, that "two or more persons who are subject to liability for damages for the same…injury to property…may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.

282.    Each of the defendants is liable to the Town under CPLR 1401 for contribution with respect to any response or remediation costs that the Town incurred or will incur in connection with the claim set forth herein.

283.    By reason of the foregoing, defendants are liable to plaintiff as joint tortfeasors in an amount to be determined at trial.

## AS AND FOR AN FIFTEENTH CLAIM

### - RESTITUTION -
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367

*Against Thomas Datre Jr., Christopher Grabe, Thomas Datre Sr., Clara Datre, 5 Brothers Farming Corp., DFF Farm Corp., Datre Trucking & Farming Inc., Datre Auto & Equipment*

*Sales Inc., Daytree At Cortland Square Inc., Daytree Custom Builders Inc., Datre Family Farms Inc., Islandia Recycling Inc., C.J. Site Development Inc., Iglesia De Jusecristo Palabra Miel, Marco Lopez, Nancy Alvarez, William Carillo, Raul Pachecho, Walter Casasola, Joseph Montuori, 96 Wythe Acquisition LLC, Louisiana Purchase LLC, 61 Park Place LLC, MD Kohn Realty II LLC, 4111 18th Avenue LLC, Cooper And 6th Property LLC, The Classon In Clinton LLC, Chen 867 Realty LLC, Bronxcare Health System, Stahav Realty Corp., John Khani, Susan Khani, Central Bushwick LLC, and John Doe No. 1 through John Doe No. 10*

284.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

285.    Roberto Clemente Park is real property owned and used by the Town of Islip.

286.    Defendants negligently, intentionally or with reckless disregard caused approximately 40,000 tons of contaminated fill, C&D debris and other solid wastes to be deposited into the Park, knowing such deposition would cause damage and injury to plaintiff.

287.    The property of plaintiff at Roberto Clemente Park has been damaged as a result of the actions of defendants.

288.    Defendants, acting jointly and in concert, devised and intended to devise a scheme or artifice to defraud in order to save a significant sum of money that would be associated with the proper dumping of thousands of tons of C&D debris.

289.    Defendants failed to abate the public nuisance and/or remediate the Park after the unlawful conduct was discovered and, thus, became unjustly enriched.

290.    Said unlawful actions of the defendants resulted in the dumping of approximately 40,000 tons of contaminated fill, C&D debris and other solid wastes into Roberto Clemente Park, causing the closure of the Park for a significant period of time, creating a condition threatening public health and safety, and causing Plaintiff to incur response costs in excess of $4,000,000.00.

291.    Defendants are liable to plaintiff for restitution in an amount to be determined at trial.

## AS AND FOR A SIXTEENTH CLAIM

### - CRIME VICTIM ACTION PURSUANT TO CPLR 213-B -
### Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367

*Against Thomas Datre Jr., Christopher Grabe, and 5 Brothers Farming Corp.*

292.    Plaintiff repeats and re-alleges each of the foregoing allegations as if fully set forth herein.

293.    Plaintiff is a crime victim due to the illegal conduct of Thomas Datre Jr., Christopher Grabe, and 5 Brothers Farming Corp.; in that, (i) Thomas Datre Jr. was convicted of four felonies related to and including the unlawful disposal of hazardous substances in the Park and the operation of a solid waste management facility at the Park without permits, which activity resulted in the release of more than 70 cubic yards of solid waste into the environment, (ii) 5 Brothers Farming Corp. was convicted of four felonies related to and including the unlawful disposal of hazardous substances in the Park, and (iii) Christopher Grabe was convicted of two felonies related to and including the unlawful disposal of hazardous substances in the Park.

294.    Said unlawful actions of the defendants resulted in the dumping of approximately 40,000 tons of contaminated fill, C&D debris and other solid wastes into Roberto Clemente Park, causing the closure of the Park for a significant period of time, creating a condition threatening public health and safety, and causing Plaintiff to incur response costs in excess of $4,000,000.00.

295.    Defendants are liable to plaintiff for restitution in an amount to be determined at trial.

## VII.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** plaintiff respectfully prays for judgment against defendants as follows:

a)      Judgment in an amount of Four Million ($4,000,000.00) Dollars, plus such other amounts to be determined at trial, including treble damages pursuant to 18 U.S.C.§ 1964(c) and compensatory and punitive damages authorized pursuant to law against all defendants, jointly and severally;

b)      Judgment in an amount of Four Million ($4,000,000.00) Dollars, plus such other amounts to be determined at trial, including treble damages pursuant to 18 U.S.C.§ 1962(d) and compensatory and punitive damages authorized pursuant to law against all defendants, jointly and severally;

c)      Judgment in an amount of Four Million ($4,000,000.00) Dollars, plus such other amounts to be determined at trial, for response costs and/or contribution pursuant to 42 U.S.C. §§ 9607(a) and 9613(f)(3)(b);

d)      Judgment in an amount of Four Million ($4,000,000.00) Dollars, plus such other amounts to be determined at trial, for damages suffered as a result of common law violations;

e)      Judgment in an amount of Four Million ($4,000,000.00) Dollars, plus such other amounts to be determined at trial, for contribution to the costs incurred by plaintiff for the removal of construction and demolition debris, contaminated fill and hazardous substances from the lands of the Town at Roberto Clemente Park;

f)      Pre- and post-judgment interest, to the fullest extent assessable at law or in equity, on all amount of damages;

g)      Judgment declaring each defendant's liability for future response costs regarding the Park pursuant to 28 USC § 2201 and CPLR 3001;

h)      Reasonable attorney's fees, costs and expenses pursuant to 18 U.S.C. § 1964(c) and otherwise to the extent permitted by law; and

i)      Such other relief this Court deems just and proper.

## <u>JURY TRIAL DEMANDED</u>

DATED:      May 24, 2019
            Holbrook, NY

                                    GERMANO & CAHILL, P.C.

                                    *Michael J. Cahill*

                        By:   Michael J. Cahill
                              G. William Germano, Jr.
                              4250 Veterans Memorial Highway
                              Suite 275
                              Holbrook, NY  11741
                              (631) 588-8778
                              *Attorneys for Plaintiff*